1  Alison Berry Wilkinson (SBN 135890)
   BERRY | WILKINSON | LAW GROUP
2  4040 Civic Center Drive, Suite 200
   San Rafael, CA 94903
3  Telephone/Facsimile:   415.259.6638
   Email:  alison@berrywilkinson.com
4
   Attorneys for
5  MARYSOL DOMENICI

6

7

8

9

10                  **UNITED STATES DISTRICT COURT**

11                **NORTHERN DISTRICT OF CALIFORNIA**

12

13  WANDA JOHNSON, individually and as            CASE NO.:  C09-00901 MHP
    personal representative of the ESTATE of
14  OSCAR J. GRANT III, the ESTATE OF             Consolidated Cases:
    OSCAR J. GRANT III, SOPHINA MESA as           C09-04014 MHP  (Oscar Grant, Jr.)
15  Guardian ad Litem of minor, T.G.,             C09-04835 MHP (Bryson, et al.)
                                                  C10-00005 MHP (Caldwell)
16
                    Plaintiffs,
17        vs.                                     DECLARATION OF MICHAEL SCHOTT IN
                                                  SUPPORT OF MOTIONS FOR SUMMARY
18  BAY AREA RAPID TRANSIT DISTRICT;              ADJUDICATION FILED BY DEFENDANTS
    GARY GEE, in his official capacity as CHIEF   DOMENICI AND PIRONE
19  OF POLICE for BAY AREA RAPID TRANSIT
    DISTRICT, JOHANNES MEHSERLE
20  individually and in his official capacity as a Date:
    police officer for BART; MARYSOL             Time:
21  DOMENICI, individually and in her official    Courtroom:    15, 18th Floor
    capacity as a police officer for BART,        Judge:        Hon. Marilyn Hall Patel
22  ANTHONY PIRONE, individually and in his
    personal capacity as a police officer for the Bay
23  Area Rapid Transit District; and DOES 1-50,
    inclusive
24
25
                    Defendants.
26

27

28
                                        1

1   I, Michael Schott, declare as follows:

2        1.      I am a forensic image analyst, and I also hold a private investigator's license.

3   I was retained as an expert in connection with the Fruitvale Platform incident that occurred on

4   January 1, 2009 in order to assist in conducting image analysis and to synchronize the five

5   known bystander videos as well as the platform video evidence; and, to the extent possible, to

6   establish a chronology and to resolve issues in controversy where the video evidence speaks to

7   the issue.   I was certified as an expert witness in these subjects by the Los Angeles County

8   Superior Court in during the criminal trial of Johannes Mehserle (*People v. Johannes Mesherle,*

9   Case No. 161210) that resulted from the January 1, 2009 incident.  I was also certified as an

10  expert witness in these subjects during proceedings held before Arbitrator William E. Riker, in

11  the dispute between the Bay Area Rapid Transit District and the BART Police Officers

12  Association (CSMCS Case No. 09-0644) regarding the allegations of misconduct brought against

13  Defendant Domenici that resulted from the January 1, 2009 incident.

14       2.      Forensic image analysis is defined as the application of image science and

15  subject matter expertise to interpret the content or elements within an image and/or the image

16  itself.  Interpretation, as used here, is the application of specific subject matter expertise to draw

17  conclusions about subjects or objects depicted in images.  In my work, the image science is

18  based on photography and mathematics, and the foundation of spatial image analysis is

19  essentially an exercise in projective geometry.   I have a bachelor's degree from the University of

20  California at Berkeley in theoretical mathematics.  The subject matter expertise comes from my

21  17 years with the Contra Costa County Sheriff's Department. It is the convergence of those two

22  disciplines, mathematics and law enforcement investigation, that is the foundation of the image

23  analysis performed.  Attached hereto as Exhibit A is a true and correct copy of my curriculum

24  vitae.

25       3.      In the course of my forensic image analysis of the video evidence in these

26  cases I relied upon the six video sources provided by the Alameda County District Attorney's

27  Office to the Mehserle defense in discovery: the bystander/witness videos recorded by Margarita

28

ANSWER OF DEFENDANT MARYSOL DOMENICI, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS A POLICE OFFICER
FOR THE BAY AREA RAPID TRANSIT DISTRICT, TO PLAINTIFFS' COMPLAINT

1   Carazo, Daniel Liu, Karina Vargas, Tommy Cross, Jamil Dewar, as well as the BART A20

2   platform camera.

3          4.       In addition, I also reviewed the audio tracks contained on each of the

4   bystander videos.  (The platform camera contained no audio track.)

5          5.       Other materials which I reviewed include the BART police and central

6   dispatch records, the autopsy photos and pathologist's report pertaining to Oscar Grant, scene

7   photos taken by BART PD, raw KTVU video of the shooting scene, and the investigative reports

8   of the BART Police Department and the Alameda County District Attorney's Office.

9          6.       I also inspected, measured and photographed the southbound platform of the

10  Fruitvale BART station where the underlying events occurred.

11         7.   The two key analytic tools/exhibits resulting from these efforts are:

12              a.      The 6-camera matrix of the primary video sources presents views

13  from multiple angles, generally synchronized to within about 13/100 of one second.  Due to the

14  low frame rate of the A20 platform recording, the synchronization with those images is generally

15  within about 26/100 of one second.  Each one of the matrix component videos features a text

16  overlay which displays the frame number native to that source.  Each of the matrix images also

17  features a text overlay which displays the time in hours, minutes, seconds, and milliseconds, in

18  addition to a relative frame number (RFN); and

19              b.      The TM-6.6.5 Master Timeline of Synchronized 6-Cam Video

20  (rev. 01/15/2011) is a chronological listing of dispatch audio transmissions synchronized to the

21  events occurring within the video matrix.  Each video entry describes specific movements which

22  may be found at a particular RFN, and where appropriate, the source camera and native frame

23  number.

24         8.       An examination aided by these analytic tools establishes that Defendant

25  Domenici arrived on the North End of the Fruitvale Station platform at 02:05:47, which is 32

26  seconds after Defendant Pirone began the radio transmission that summoned her to the platform.

27  That radio transmission began at 02:05:15.

28
                                            3

1    9.    I also examined the synchronized video images in light of the specific

2    allegations against Defendant Domenici, which were contained in Mr. Caldwell's Complaint for

3    Violation of Civil Rights and Damages, and prepared a report, a copy of which is attached hereto

4    as Exhibit B.  As part of that examination, I sought to trace the movements of both Officer

5    Domenici and JohnTue Caldwell during the event.  From that process, I was able to determine

6    that no image within the entire video record, from any of the six video cameras, shows anyone

7    touching Caldwell's head and/or face with a Taser.  With respect to Domenici, I was able to

8    determine that there were only four seconds during the entire incident during which she and

9    Caldwell were situated within a few feet of one another.  During part of that time Domenici was

10   moving away from Caldwell.  The only views of Domenici's Taser throughout the event show it

11   pointed downward.

12   10.    I also examined the synchronized video images to determine the locations of

13   Defendant Pirone relative to the locations of JohnTue Caldwell and/or Fernando Anicete, Jr.

14   during the event.  From that process, I was able to determine that upon Pirone's initial arrival on

15   the platform, he passed JohnTue Caldwell and Fernando Anicete, Jr. walking in the opposite

16   direction at about 02:04:14 to 02:04:18.  There was no apparent interaction of any kind at that

17   time.  During the balance of the incident there were only about ten seconds during which Pirone

18   was situated within the general proximity, defined in this case as about twenty feet or less, of

19   JohnTue Caldwell and/or Fernando Anicete.  There was no apparent interaction between Pirone,

20   Caldwell and/or Anicete during those seconds prior to 02:08:44, at which time Pirone can be

21   seen leaving the detention area and walking toward the front of the train.  In addition, the

22   analysis revealed that from the time Officer Knudtson took down Fernando Anicete, Jr., and

23   continuously through the time the train departed, Officer Pirone was not in the vicinity of either

24   JohnTue Caldwell or Fernando Anicete, Jr.

25   11.    The platform camera provides a continuous view of the train and its doors

26   from the time that it entered the station until it departed.  An examination of that video, along

27   with the entire video record, reveals that there is no image in which Defendant Domenici

28

4

ANSWER OF DEFENDANT MARYSOL DOMENICI, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS A POLICE OFFICER
FOR THE BAY AREA RAPID TRANSIT DISTRICT, TO PLAINTIFFS' COMPLAINT

1   grabbed the shirt of any person, pushed any person up against the side of the train, or pressed the

2   point of her Taser into any person's face.  The examination further reveals that there is no image

3   depicting Defendant Domenici pounding on the doors of the train car.

4          12.      One of the videos produced by the Alameda County District Attorney's

5   Office was taken by bystander Jamil Dewar.  Mr. Dewar began recording images at 02:10:13,

6   which was fifty seconds before the shot was fired, and continued recording continuously until the

7   train left the station.   Indeed, the shot, at about 02:11:03, is audible on the Dewar video.

8          I declare under penalty of perjury that the foregoing is true and correct.  Executed this

9    6th day of February 2011 in Fort Jones, California.

10

11

12

13

14   _____

     MICHAEL SCHOTT

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER OF DEFENDANT MARYSOL DOMENICI, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS A POLICE OFFICER
FOR THE BAY AREA RAPID TRANSIT DISTRICT, TO PLAINTIFFS' COMPLAINT