1  Michael L. Rains (SBN 091013)
   Lara Cullinane-Smith (SBN 268671)
2  **RAINS LUCIA STERN, PC**
   2300 Contra Costa Blvd., Suite 500
3  Pleasant Hill, CA 94523
   Tel:  (925) 609-1699
4  Fax:  (925) 609-1690

5
   Attorneys for Defendant
6  JOHANNES MEHSERLE

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  **JACK BRYSON, JR., NIGEL BRYSON,**      )   CASE NO.'s:
    **MICHAEL GREER, CARLOS REYES AND**      )   C 09-0901 MHP (Wanda Johnson)
12  **FERNANDO ANICETE, JR.,**               )   C 09-4014 MHP (Oscar Grant, Jr.)
                                             )   C 09-4835 MHP (Bryson, et al.)
13                 Plaintiffs,               )   C 10-0005 MHP (Caldwell)
                                             )
14                                           )
    vs.                                      )
15                                           )   **DEFENDANT JOHANNES**
                                             )   **MEHSERLE'S MOTION FOR**
16  **BAY AREA RAPID TRANSIT DISTRICT;**     )   **SUMMARY ADJUDICATION AND**
    **GARY GEE, in his official capacity as CHIEF** )   **MEMORANDUM AND POINTS OF**
17  **OF POLICE for BAY AREA RAPID**         )   **AUTHORITIES IN SUPPORT OF**
    **TRANSIT DISTRICT (BART); DOROTHY**     )   **HIS MOTION FOR SUMMARY**
18  **DUGGER, in her official capacity as**  )   **JUDGMENT, in his capacity as an**
    **GENERAL MANAGER for BART;**            )   **individual and in his official capacity**
19  **JOHANNES MEHSERLE, individually and**  )   **as a police officer for BART**
    **in his official capacity as a police officer for** )
20  **BART; ANTHONY PIRONE, individually**   )
    **and in his personal capacity as a police officer** )
21  **for BART; MARYSOL DOMENICI,**          )   Date:        March 14, 2011
    **individually and in her official capacity as a** )   Time:        2:00 p.m.
22  **police officer for BART; JON WOFFINDEN** )   Courtroom:   15, 18th Floor
    **individually and in his official capacity as a** )   Judge:       Hon. Marilyn Hall Patel
23  **police officer for BART; EMERY**       )
    **KNUDTSON individually and in his official** )   Trial Date:  May 2, 2011
24  **capacity as a police officer for BART; and** )
    **DOES 1-50, inclusive,**               )
25                                           )
                                             )
26                 Defendants.               )
                                             )
27  _____      )

28

i

Bryson et al. vs. Bay Area Rapid Transit District, et al., Case No. C09-04835
DEFENDANT JOHANNES MEHSERLE'S ANSWER TO COMPLAINT

**NOTICE OF MOTION AND MOTION**

TO THE COURT, PLAINTIFFS, AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN THAT on March 14, 2011, at 2:00 p.m. in Courtroom 15 of the above-entitled Court, located at 450 Golden Gate Avenue in San Francisco, California, Defendant JOHANNES MEHSERLE will, and hereby does, move the Court for an order granting summary adjudication in his favor, and against Plaintiffs Jack Bryson Jr., Nigel Bryson, Michael Greer, Carlos Reyes, and Fernando Anicete, Jr., on all causes asserted against him in the Complaint entitled *Jack Bryson, Jr. et al. v. Bay Area Rapid Transit District*, *et al.,* Case No. C09-4835 MHP.

This motion is made pursuant to Federal Rule of Civil Procedure 56 on the grounds that no genuine issue of material fact exists as to the above-mentioned claims, and Defendant is entitled to judgment as a matter of law.

This motion is based on this Notice, on the Memorandum of Points and Authorities below, on the Declarations of Michael Rains and Michael Schott filed herewith and all exhibits attached thereto, on all the pleadings and materials contained as part of the Court's file in this matter, and on such oral and/or documentary evidence as may be presented at the hearing of this motion.

**STATEMENT OF RELIEF SOUGHT**

Defendant seeks an order granting summary adjudication in his favor and against all Plaintiffs as to the First, Second, Fourth, Sixth, Seventh, Eighth and Ninth Causes of Action in the Complaint entitled *Bryson, et al. v. Bay Area Rapid Transit District*, Case No. C09-04835 MHP.

///

///

///

////

///

///

Bryson et al. vs. Bay Area Rapid Transit District, et al., Case No. C09-04835
DEFENDANT JOHANNES MEHSERLE'S ANSWER TO COMPLAINT

# TABLE OF CONTENTS

**Page**

I.     STATEMENT OF THE ISSUES TO BE DECIDED ...................1

II.     INTRODUCTION...................................................................1

III.     SUMMARY OF THE FACTS.................................................2

     A.     THE EVENTS ON THE PLATFORM ...............................2

     B.     AFTER THE SHOOTING .................................................5

         1.     Johannes Mehserle.................................................5

         2.     The Plaintiffs .........................................................6

     C.     RACIAL STATEMENTS ...................................................7

IV.     STANDARD OF REVIEW.....................................................7

V.     ARGUMENT..........................................................................8

     A.     PLAINTIFFS' FOURTH AMENDMENT CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT ...................8

         1.     Mehserle Did Not Have Anything To Do With Anicete's Detention or Arrest so Cannot Have Violated His Rights .....8

         2.     Mehserle Did Not Have Any Contact With Greer and Could Not Have Violated His Rights ...............9

         3.     Mehserle Did Not Violate the Other Plaintiff's Fourth Amendment Rights With Regard to Their Detentions..............10

             a.     Mehserle Did Not Make the Initial Detention of any Remaining Plaintiffs .................................10

             b.     Pirone Had Reasonable Suspicion to Make the Initial Detentions ............................................11

             c.     Mehserle's Continuation of the Detention is Supported by the Collective Knowledge Doctrine and the Plaintiffs' Resistant Conduct ...............12

d. **Mehserle is Entitled to Qualified Immunity**..................13

4. **Mehserle Did Not Violate Plaintiff's Fourth Amendment Rights With Regard to Their Arrest** ..........................15

    a. **Mehserle Did Not Arrest Anyone. He Handcuffed or Attempted to Handcuff Only Grant and Jack Bryson, Jr.**..................................................15

    b. **Mehserle Did Not Violate Bryson's Fourth Amendment Right With Regard to His Arrest** ..............15

    c. **Mehserle Reasonably Believed it Was Proper to Handcuff Bryson** ...............................................16

    d. **Mehserle is Entitled to Qualified Immunity for Bryson's Arrest** .................................................17

B. **MEHSERLE DID NOT CONSPIRE TO VIOLATE PLAINTIFF'S CIVIL RIGHTS**..........................................................................17

    1. **There Was No Racial Motive**..................................18

    2. **There was No Conspiracy** ....................................18

    3. **Mehserle Did Not Participate in Wrongdoing as Part of a Plan**................................................................19

    4. **Mehserle Did Not Have an Opportunity to Intervene to Prevent Wrongdoing by Other Officers** ....................20

C. **PLAINTIFFS' STATE LAW CLAIMS CANNOT STAND** .................21

VI. **CONCLUSION** ........................................................................21

1

## TABLE OF AUTHORITIES

**Regulations**

BART General Duty Regulation 3.270, Command of Scene .................................................... 12

**Constitutional Provisions**

Fourth Amendment ................................................................................................. passim

**Federal Statutes**

42 U.S.C. § 1983 ................................................................................................... passim

42 U.S.C. § 1985 ........................................................................................ 1, 17, 18

Fed. R. Civ. Pro. 56 .................................................................................................. 7,8

**State Statutes**

Cal. Civ. Code § 51.7 ......................................................................................... 1, 21

Cal. Civ. Code § 52.1 ......................................................................................... 1, 21

California Gov. Code § 820.4 .................................................................................... 21

California Gov.Code § 820.2 ..................................................................................... 21

California Penal Code § 148 ................................................................................ 16, 17

California Penal Code § 847(a) ................................................................................. 21

**Federal Cases**

*Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130 (9th Cir. 2000) ...................................... 18

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). .......................................... 8

*Blankenhorn v. City of Orange,* 485 F. 3d 463 (9th Cir. 2007) ................................... 8, 15

*Boyd v. Benton*, 374 F.3d 773 (9th Cir. 2004) ............................................................ 20

*Brosseau v. Haugcn*, 543 U.S. 194, 198, (2004). ....................................................... 14

*Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986) ...................................................... 8

*Chuman v. Wright*, 76 F.3d 292 (9th Cir. 1996) ......................................................... 19

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000) ................................................... 20

*Griffin* v. *Breckenridge,* 403 U.S. 88 (1971 ............................................................ 18

*Harlow v. Fitzgerald*, 457 U.S. 800 (1983) .............................................................. 13

*Harvey v . Plains Twp. Police Dept.*, 421 F.3d 185 (3rd Cir. 2005) ......................... 13, 17

*Hopkins v. Bonvicino,* 573 F. 3d 752 (9th Cir. 2009) ............................................................. 8, 13

*Illinois v. Wardlaw*, 528 U.S. 124 (2000) ............................................................................... 12

*Marquez v. City of Phoenix*, No. CV-08-1132, 2010 U.S. Dist. Lexis 88545 (D. Ariz. Aug. 24
     2010) ................................................................................................................................. 14

*Mendocino Env. Ctr. v. Mendocino County,* 192 F.3d 1283 (9th Cir. 1999) ........................... 19

*Paine v. City of Lompoc*, 160 F.3d 562 (9th Cir. 1998) ............................................................ 12

*Petrolino v. County of Spokane*, 678 F.Supp.2d 1082 (E.D. Wash. 2009) ............................... 20

*Runge v. Ippolito*, 2010 WL 1239591 (N.D. Cal. 2010) ................................................... 13, 17

*Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1990). .................................................. 8

*T.W. Electrical Service Inc. v. Pacific Electrical Contractors, Assoc.*, 809 F.2d 626 (9th Cir.
     1987). .................................................................................................................................. 8

*U.S. v. Cheek*, 586 F.Supp.2d 1099 (D. Ariz. 2008) ................................................................ 12

*U.S. v. Jensen*, 425 F.3d 698 (9th Cir. 2005) .......................................................................... 15

*U.S. v. Ramirez*, 473 F.3d 1026 (9th Cir. 2007). ..................................................................... 12

*U.S. v. Sokolow*, 490 U.S. 1, 2, (1989) ............................................................................. 11, 12

*Wilkins v. County of Alameda*, No. C 08-1485 MHP, 2010 U.S. Dist. LEXIS 121218 (N.D. Cal.
     Nov. 15, 2010.) ................................................................................................................. 19

**State Cases**

*In re Muhammed C.,* 95 Cal.App.4th 1325 (6th Dist. 2002) ..................................................... 17

*People v. Simons,* 42 Cal.App.4th 1100 (1st Dist. 1996) ......................................................... 17

Bryson et al. vs. Bay Area Rapid Transit District, et al., Case No. C09-04835
DEFENDANT JOHANNES MEHSERLE'S ANSWER TO COMPLAINT

## I.      STATEMENT OF THE ISSUES TO BE DECIDED

This motion presents the following issues for decision:  whether Defendant Johannes Mehserle is entitled to judgment as a matter of law as to Plaintiffs Jack Bryson, Jr., Nigel Bryson, Michael Greer, Carlos Reyes and Fernando Anicete, Jr.'s claims for the following:

      1)      Violation of their Fourth Amendment rights under 42 U.S.C. § 1983;

      2)      Violation of their rights under 42 U.S.C. § 1985;

      3)      Violation of various rights under state law including Intentional Infliction of Emotional Distress, Assault and Battery, and violations of Cal. Civ. Code §§ 52.1 and 51.7

## II.     INTRODUCTION

The Plaintiff's claims arise out of the events on the night of January 1, 2009.  On that night, Officer Pirone responded to a call about a fight on a BART train which was pulling into the Fruitvale Station. When Officer Pirone arrived, he observed several young men on the platform who matched the description of those that had been fighting.  He approached, but all of them either moved back onto the train or moved away around a pillar. Pirone and his partner called for backup and detained several of the young men.

When Officer Mehserle arrived, he was in the midst of a chaotic and rapidly changing scene.  There were numerous people on the platform and a fully loaded train with doors open in the station.  Several young men had been detained but were screaming epithets at the officers who had tasers out in order to maintain calm.  Officer Pirone instructed Mehserle to watch over four of the men who had been detained. At least two of them continued yelling epithets at the police, while other men, who were not yet detained, menaced other officers on the platform.

Pirone returned and ordered Mehserle to handcuff two of the detained men.  Mehserle first handcuffed Jack Bryson, Jr., who resisted briefly.  Mehserle then attempted to put handcuffs on Oscar Grant, III ("Grant").  Grant resisted arrest and Officer Mehserle struggled to get him into handcuffs.  After several warnings, he told Pirone to stand back because he was going to tase Grant.  However, instead of pulling his taser, Officer Mehserle mistakenly pulled and fired his service weapon into the Grant back.  Grant died as a result of the shot.

1

Bryson et al. vs. Bay Area Rapid Transit District, et al., Case No. C09-04835
DEFENDANT JOHANNES MEHSERLE'S ANSWER TO COMPLAINT

Plaintiffs bring undifferentiated claims against all of the officers for violation of their Fourth Amendment and state law rights. However, because Officer Mehserle either had no contact with the individual Plaintiffs, or because the contact he did have was entirely lawful, all of the claims against him must fail.

## III.   SUMMARY OF THE RELEVANT FACTS

### A.   THE EVENTS ON THE PLATFORM

On the night of January 1, 2009, Oscar Grant, III and his friends were on a BART train between the Lake Merritt and Frutivale stations when Mr. Grant got into a fight with a white man.  (N. Bryson Depo. 91:4-25,[1]; J. Bryson, Depo. 101:17-102:21; 103:17-23; 104:5-18; 106:4-14[2]; Reyes Depo. 64:3-9; 65:21-25; 68:11-17; 69:12-20[3]; Anicete Depo. 99:14-100:5; 98:10-12; 99:14-100:7.[4])  Mehserle, an officer with Bay Area Rapid Transit ("BART"), was on duty and was partnered with Officer Woffinden.  (Mehserle Test. 4118:18-21; 4120:5-7[5]; Woffinden Test. 3536:15-16.)  Mehserle and Woffinden responded to a call at the Fruitvale BART station regarding a fight at 2:08:37 a.m .  (Mehserle Test. 4126:23-26; 4127:1-23; Woffinden Test. 3542:26-3543:8; Schott Test. 3792:9-11.)  When Mehserle arrived at the Fruitvale station, he could hear yelling and screaming coming from the platform.  (Mehserle Test. 4128:16-20.)  Mehserle ascended the stairs to the platform, where he observed BART

---

[1] The relevant excerpts from the Deposition of Nigel Bryson conducted on December 11, 2009 is attached to the Declaration of Michael Rains as Exhibit D and will be referred to throughout this pleading as "N. Bryson Depo." followed by the applicable page and line references.

[2] The relevant excerpts from the Deposition of Jack Bryson, Jr. conducted on December 22, 2009 is attached to the Declaration of Michael Rains as Exhibit E and will be referred to throughout this pleading as "J. Bryson Depo." followed by the applicable page and line references.

[3] The relevant excerpts from the Deposition of Carlos Reyes conducted on Mar. 29, 2009 is attached to the Declaration of Michael Rains as Exhibit M and will be referred to throughout this pleading as "Reyes Depo." followed by the applicable page and line references.

[4] The relevant excerpts from the Deposition of Fernando Anicete conducted on December 4, 2009 is attached to the Declaration of Michael Rains as Exhibit B and will be referred to throughout this pleading as "Anicete Depo." followed by the applicable page and line references.

[5] The relevant excerpts from the Reporter's Transcript of the Criminal Trial conducted on June 1, 2010 to July 8, 2010  in the matter of *People v. Johannes Mehserle*, is attached to the Declaration of Michael Rains as Exhibit C, and will be referred to throughout this pleading as "[Witness] Test." followed by the applicable page and line references.

1   Officers Marysol Domenici and Anthony Pirone detaining a group of individuals against a

2   wall.  (Mehserle Test. 4129:19-22; Woffinden Test. 3549:20-22.)

3           On the platform, BART passengers were yelling profanities and screaming at the

4   officers.  (N. Bryson Depo. 137:15.)  The platform was loud and chaotic.  (Vargas Test.

5   1540:17-20.)  Three or four men were aggressively approaching Officers Domenici and Pirone.

6   (Mehserle Test. 4129:22-28; 4130:1-5.)  The individuals began taunting and yelling at Officers

7   Domenici and Pirone and Mehserle told one of them to get back.  (Mehserle Test. 4130:14-20,

8   19-20.)  Two of the detained individuals, Jack Bryson and Nigel Bryson were yelling at the

9   officers.  (N. Bryson Depo. 126:20, 131:9.) Anicete Fernando, who was not detained, was also

10  yelling profanities at the officers.  (Anicete Depo. 149:6-12.)  They were hurling slurs,

11  accusations and obscenities, including  "fake ass bitch cop," "bitch ass niggah," " devil," "what

12  the fuck you doing," "punk ass motherfucker" and the like.  (Pirone Depo., 107:3-21[6]; PX

13  759:9-26, 760:7-10 [Pirone][7]; N. Bryson Depo. 126:132.)

14          Mehserle took out his taser because he saw that Officers Domenici and Pirone had

15  theirs out.  (Mehserle Test.  4133:4-5.)  Officer Pirone told Mehserle to watch the men detained

16  and then walked away.  (Mehserle Test. 4134:4-5; Pirone Test. 2879:19-21.)  Mehserle kept his

17  taser trained on the detainees while Pirone was gone.  (Mehserle Test. 4135:2-4.)  Jack Bryson

18  and Nigel Bryson, as well as Oscar Grant, were yelling at the officers.  (Anicete Depo. 173:10-

19  174:14; Mehserle Test. 4135:14-16.)  Michael Greer had already been put in handcuffs by

20  Pirone and was lying on the ground.  (N. Bryson Depo. 128:18-23; J. Bryson Depo. 125:23-25;

21  Reyes Depo. 100:24-101:8; Greer Depo. 33:20-23[8]; Anicete Depo. 146:19-23.)  Anicete and

---

[6] The relevant excerpts from the Deposition of Anthony Pirone conducted on July 31, 2009 is attached to the Declaration of Michael Rains as Exhibit F and will be referred to throughout this pleading as "Pirone Depo." followed by the applicable page and line references.

[7] The relevant excerpts from the Reporter's Transcript of the Preliminary Hearing conducted on May 27, 2009 and June 3, 2009 in the matter of *People v. Johannes Mehserle*, is attached to the Declaration of Michael Rains as Exhibit G, and will be referred to throughout this pleading as "PX." followed by the applicable page and line references and the name of the testifying witness in brackets.

[8] The relevant excerpts from the Deposition Of Michael Greer conducted on April 22, 2010 is attached to the Declaration of Michael Rains as Exhibit H and will be referred to throughout this pleading as "Greer Depo." followed by the applicable page and line references.

Bryson et al. vs. Bay Area Rapid Transit District, et al., Case No. C09-04835
DEFENDANT JOHANNES MEHSERLE'S ANSWER TO COMPLAINT

others continued approaching the other offices and swearing at them.  (Anicete Depo. 165:21-21).

Officer Pirone returned and told Mehserle that "him and him" were to be arrested for violating California Penal Code section 148.  (Pirone Test. 2888:15-21.)  Mehserle believed Pirone indicated that Grant and Jack Bryson were to be arrested.  (Mehserle Test. 4206:21-23.) Mehserle put his taser away to begin the handcuffing process.  (Mehserle Test. 4209:16-17.) Grant began to stand up.  (Mehserle Test. 4210:5-6.)  Mehserle placed his hand on top of Grant's head and Pirone assisted by forcing Grant down by pushing on his shoulder. (Mehserle Test. 4210:12-14; Pirone Test. 2890:28-2891:1.)  As Grant sat back down, Jack Bryson began to stand up.  (Mehserle Test. 4213:9-10.)  Mehserle pushed Bryson back to a sitting position and told Bryson that he needed to start listening to commands or else Bryson would be tased.  (Mehserle Test. 4215:5-9; Guerra Statement at 1.[9])  Bryson told Mehserle, "Okay, there won't be any problems."  (Mehserle Test. 4215:15-17.) Mehserle then handcuffed Bryson without any difficulty.  (Mehserle Test. 4217:6-7.)  Bryson stated that he did not recall that Mehserle was the one who handcuffed him.  (Bryson Depo. 291:17-20; Bryson Test. 3473:25-26.)

Mehserle went to handcuff Grant.  (Mehserle Test. 4217:28-4218:1.)  Michael Greer's first memory of seeing Mehserle on the platform was when Mehserle attempted to handcuff Grant.  (Greer Depo. 81:5-10.)  Grant resisted being handcuffed and Mehserle repeatedly ordered Grant to give up his hands. (Mehserle Test. 4221:10-11, 23-26; Meyers 4530:1-3, June 28, 2010.)  Mehserle made the decision to deploy his taser on Grant.  (Mehserle Test. 4225:19-21.)  Mehserle twice said, "I'm going to tase him."  (Mehserle Test. 4225:25-27; Pirone Test. 2921:10-12.)  Mehserle stood up and focused on Grant's back, where Mehserle intended to deploy his taser.  (Mehserle Test. 4227:4-9.)  Instead of pulling out his taser, Mehserle pulled his firearm and fired once.   (Mehserle Test. 4230:18-19; Schott Test. 3932:11-16.)

---

[9] The relevant excerpts from the Statement of Jonathan Guerra conducted on December 11, 2009 is attached to the Declaration of Michael Rains as Exhibit K and will be referred to throughout this pleading as "Guerra Statement" followed by the applicable page reference.

Bryson et al. vs. Bay Area Rapid Transit District, et al., Case No. C09-04835
DEFENDANT JOHANNES MEHSERLE'S ANSWER TO COMPLAINT

## B.   AFTER THE SHOOTING.

### 1.   Johannes Mehserle

Following the shot, Mehserle said something to the effect of "Oh, shit, I shot him." (Reyes Test. 2012:2-5.)  Mehserle put his hands to his head and looked shocked.  (Kierstead Test. 1968:7-9; 1971:3; Vargas Test. 1521:1-6; Caneva Test. 1843:1-22.)  Mehserle put pressure on Grant's wound.  (Mehserle Test. 4256:1-3.)  Officer Pirone called for medical assistance following the shot.  (Pirone Test. 2931:22-24.)

When Sargent Alvarez arrived on the platform, after the shooting, he saw Officer Guerra was attending to Grant with a compression pad. (Alvarez Test. 4906:19-4907:3.)  After speaking with Guerra, he spoke with Officer Woffinden and learned that Mehserle had been involved in an officer involved shooting. (Alvarez 4907:4-12.) Mehserle was standing away from the detainees and Grant, about 15 feet away from Alvarez. (Alvarez Test. 4907:13-4908:10.) Alvarez called Mehserle over to him, and as Mehserle approached Alvarez grabbed him by his shirt and escorted him over to Lt. Franklin in order for Mehserle to give a public safety statement. (Alvarez Test. 4908:12-14.)   Alvarez advised Lt. Franklin that Mehserle had been in an officer involved shooting and Lt. Franklin obtained the Public Safety Statement (the "PSS") from Mehserle.  (Alvarez Test. 4910:21-25.)

Lt. Franklin testified that he arrived on scene and was met by Sgt. Alvarez and Mehserle (Franklin Test. 4922:7-13.). Franklin explained the process and purpose of the PSS and elicited the same. (Franklin Test. 4923:20-4927:24.)  Franklin then escorted Mehserle to the exit. (Franklin Test. 4928:2-4930:9.)  After they got downstairs, Mehserle informed Franklin that he had some blood on his hands and that he wanted to wash his hands. (Franklin Test. 4931:3-4.) Mehserle washed his hands in the employee bathroom, which was about ten steps from where Franklin was standing, and returned to Franklin's presence. (Franklin Test. 4932:5-16.) After a brief discussion with Lt. Cagaanan, in the presence of Mehserle, Franklin drove Mehserle back to Lake Merritt.  (Franklin Test. 4933:3-26.) He and Mehserle were the only people in the car (Franklin Test. 4933:27-4934:1.)  Franklin, upon arriving at the Lake Merritt Station, placed Mehserle in a small conference room and monitored him until the

5

Bryson et al. vs. Bay Area Rapid Transit District, et al., Case No. C09-04835
DEFENDANT JOHANNES MEHSERLE'S ANSWER TO COMPLAINT

1    BPOA President, Officer J. Sekhon, arrived. (Franklin Report at 3.[10])

2              **2.       The Plaintiffs.**

3              After the shooting, Officer Knudtson escorted Anicete downstairs and sat him on a

4    bench next to the ticket booth, with Carlos Reyes. (Anicete Depo. 190:24-191:10.) Anicete

5    was eventually placed in a patrol car and taken to BART Police Department. (*Id.* at 195:20-

6    23.) Anicete admitted that -- besides the officer who tackled him -- no one else had done

7    anything physical to him. (*Id.* at 192:1-9.)

8              Nigel Bryson was eventually placed in handcuffs and brought downstairs. (N. Bryson

9    Depo. 152:7-17.)  He was ultimately placed in a police car and taken to BART police station.

10   (*Id.* at 157:9-16; 158:3-8.)

11             After Mehserle's firearm discharged, according to Jack Bryson, Jr., an unidentified

12   BART officer tackled him to the ground. (J. Bryson Depo. 159:1-11.) Bryson, Jr. admitted he

13   did not know the identity of the officer who tackled him. (*Id.* at 160:2.) The same unknown

14   officer brought Bryson, Jr. downstairs and put him in a patrol car, and took him to the police

15   station. (*Id.* at 165:1-16; 203:11-204:2.)

16             After the shooting, Pirone asked Reyes to have a seat and walked him to over to a

17   bench. (Reyes Depo. 122:19-24.) While Reyes sat on the bench, he alleges a uniformed

18   BART police officer kneed him in the face; he did not know the officer's name. (*Id.* at 149:8-

19   150:2; 150:13-14.) It was not one of the officers on the platform when Grant got shot. (*Id*. at

20   150:15-20.) This officer then handcuffed Reyes, kneeled on him for a few seconds and placed

21   him on the ground for a few minutes. (*Id.* at 156:17-157:9.) Someone came over, sat Reyes

22   upright and eventually moved him downstairs. (*Id.* at 158:24-159:2; 160:3-5.) It is undisputed

23   that Reyes was actually arrested by Knudtson and Woffinden.  (Knudtson Statement at 2.[11])

24

---

25   [10] The relevant excerpts from the Report of Lieutenant Kevin Franklin prepared on January 1, 2009 is attached to the Declaration of Michael Rains as Exhibit N and will be referred to

26   throughout this pleading as "Franklin Report" followed by the applicable page and line references.

27   [11] The relevant excerpts from the Statement of Emery Knudtson given on April 22, 2010 is attached to the Declaration of Michael Rains as Exhibit O and will be referred to throughout

28   this pleading as "Knudtson Statement" followed by the applicable page references.

1   After sitting next to Anicete for a time, both Reyes and Anicete were placed in the same

2   patrol car and transported to BART police station. (Reyes Depo.161:9-19; 167:4-18.)

3        After the shooting, an officer walked Greer to a police car and transported him to

4   BART police station. (Greer Depo. 41:14-42:1; 197:23-198:6.)

5        **C.   RACIAL STATEMENTS**

6        None of the plaintiffs can remember any officer but Pirone ever using any racial

7   language the night in question and none said it was directed towards them personally.  Nigel

8   Bryson believed Pirone used the word "nigger" several times during the evening. (N. Bryson

9   Depo. 163:25-164:7.) He admitted, however, that no one used any racial profanity towards

10  him personally. (*Id.* at 163:22-24.) Bryson admitted no officer hit him on the night in

11  question. (*Id.* at 61:11-14.) Jack Bryson, Jr. only heard one person use the phrase "bitch ass

12  nigger" on that night in question: Officer Pirone. (J. Bryson Depo. 140:7-20[12].) Michael

13  Greer did not recall hearing this exchange, nor did he ever hear any officers use racial

14  profanity.  (Greer Depo. 261:6-262:20.)  Mehserle never spoke to Greer. (Greer Depo. 92:23-

15  98:1.) No police officers directed racial profanity toward Nigel Bryson.  (N. Bryson Depo.

16  163:22.)  Fernando Anicete does not recall any officers directing racial language at him and

17  agreed that he would remember such an incident, if it occurred. (Anicete Depo. 192:10-21;

18  193:8-10.) Reyes admitted none of the officers made any racially derogatory comments to

19  him at the police station and that -- while he heard the word "nigger" on the platform that

20  night -- he admitted he did not know who said it and further admitted he never specifically

21  heard it from an officer he could identify. (Reyes Depo. 179:17-19; 180:25-181:11.) He did

22  not know of any racial derogatory comments directed at him or his friends by anyone that

23  night. (*Id.* at 261:17-262:20).

24  **IV.   STANDARD OF REVIEW**

25       Rule 56 of the Federal Rules of Civil Procedure mandates entry of summary judgment

26  where the moving party demonstrates that there are no genuine issues of material fact and that

27  _____

28  [12] However, Pirone only repeated back epithets when when Grant called Pirone a "bitch-ass
    nigga."  (Pirone Test. 2898:1-3; Meyers Test. 4607:1-14, 21-24.)

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986); *T.W. Electrical Service Inc. v. Pacific Electrical Contractors, Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). The nonmoving party then must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. If the nonmoving cannot produce more than a "scintilla of evidence" or if the evidence is not "significantly probative," then summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 251 (1986).

## V.   ARGUMENT

### A.   PLAINTIFFS' FOURTH AMENDMENT CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT.

To succeed on a claim brought under 42 U.S.C. § 1983, a plaintiff must show that defendants acted under color of state law and that they deprived the plaintiff of a right secured under the Constitution or under federal law. *See Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1038 (9th Cir. 1990). Here, Plaintiffs can establish no such claims.

"An officer's liability under section 1983 is predicated on his integral participation in the alleged violation." *Blankenhorn v. City of Orange,* 485 F. 3d 463, 481, n. 12 (9th Cir. 2007) (citations omitted). Such participation requires "some fundamental involvement in the conduct that allegedly caused the violation." *Id*. Being a mere bystander to colleagues' conduct is insufficient to support a § 1983 claim. *Hopkins v. Bonvicino*, 573 F. 3d 752, 770 (9th Cir. 2009). Here, Plaintiffs either cannot show that Mehserle had anything to do with their detention before or their arrest after the shooting because he was not involved in either. His sole involvement before the shooting was to watch the Plaintiffs briefly at the request of Officer Pirone, and to handcuff Jack Bryson at the direction of Pirone.

#### 1.   Mehserle Did Not Have Anything To Do With Anicete's Detention or Arrest So Cannot Have Violated His Rights.

Mehserle had nothing to do with Mr. Anicete's detention or arrest the night of January 1, 2009 and as such cannot have violated his rights. While Mehserle did give a verbal command to Anicete to "get back," Anicete was not yet detained at that moment and this was

8

the only contact he and Mehserle had.  Mr. Anicete testified that while Pirone was trying to

subdue Grant, Anicete was tackled by Officer Knudtson.  (Anicete Depo. at 175:5-9).  The

officer was still on Anicete when Grant was shot.  (Anicete depo at 181:14-22).  The same

officer who tackled him moved him away from the scene after Grant was shot.  (Anicete Depo

at 189:11-15).  No one else touched him at the  BART station.  (Anicete Depo at  192:1-9).

Nothing in Anicete's testimony indicates that he saw or had any contact with Mehserle after

leaving the BART station.  Because the Plaintiff's own testimony clearly sets out that Mehserle

had nothing to do with his detention or arrest, summary judgment must be granted to Mehserle

with regard to Anicete's First and Second causes of action.

### 2. Mehserle Did Not Have Any Contact With Greer and Could Not Have Violated His Rights.

Mehserle had no physical contact or even verbal interaction with Mr. Greer the night

of January 1, 2009 and as such could not have violated his rights.  According to the testimony

of the Plaintiffs, Greer stepped onto the platform, saw Officer Pirone and then got back on

the train. (Greer Depo. 25:17-26:16).  Pirone ordered Carlos Reyes, Nigel Bryson and Jack

Bryson, Jr. against the wall; they complied. (Reyes Depo. 80:15-81:9; 84:4-10; 93:22-25; N.

Bryson Depo. 110:12-15; 117:7-13; J. Bryson Depo. 111:4-11; 113:11-15; 114:8-10; 115:13-

17). Reyes, Greer and the Bryson brothers all agree that Pirone then removed Grant and

Michael Greer from the train and placed them both against the wall. (N. Bryson Depo. 118:4-

22; 120:14-21; 121:2-16; J. Bryson Depo. 115:13-116:14; Reyes Depo. 89:25-90:23; 93:22-

25; 95:17-96:11; Greer Depo. 30:3-11; 30:21-31:9; 31:21-32:13).  Pirone handcuffed Greer.

(N. Bryson Depo. 128:18-23; J. Bryson Depo. 125:23-25; Reyes Depo. 100:24-101:8; Greer

Depo. 33:20-23).  Greer first noticed Mehserle when Mehserle was handcuffing Grant.

(Greer Depo. 81:8-14.)  Mehserle never spoke to Greer.  (Greer Depo. 92:23-98:1.) After the

shooting, an officer walked Greer to a police car and transported him to BART police station

but it was not Mehserle. (Greer Depo. 41:14-42:1; 197:23-198:6.) Again, because Greer's

own testimony clearly sets out that Mehserle had nothing to do with his detention or arrest,

summary judgment must be granted to Mehserle with regard to Greer's First and Second

9

Bryson et al. vs. Bay Area Rapid Transit District, et al., Case No. C09-04835
DEFENDANT JOHANNES MEHSERLE'S ANSWER TO COMPLAINT

1   causes of action.

### 3.   Mehserle Did Not Violate the Other Plaintiffs' Fourth Amendment Rights With Regard to Their Detentions.

Plaintiffs' first cause of action claims that "the Defendant Officers detained Plaintiffs without reasonable suspicion" and thus violated their Fourth Amendment rights.  Mehserle cannot be liable for this detention because he did not make the initial detention and continued detentions were reasonable under the Fourth Amendment.  Also, Mehserle is entitled to qualified immunity.

### a.   Mehserle Did Not Make the Initial Detention of any Remaining Plaintiffs.

Neither the allegations in the complaint nor any testimony shows that Mehserle was involved in the initial detention of any of the remaining Plaintiffs.  In fact, according to paragraphs 22 to 25 of the Plaintiffs' complaint, it was Officer Pirone who made the initial decision to detain and question all of them.  (Doc. 1 at ¶¶ 22-25, 31.)

These allegations are supported by the testimony of the Plaintiffs themselves.  Nigel Bryson testified that after he got off the train, Officer Pirone came up to the platform alone, stopped him, and told him to get against the wall.  (N. Bryson Depo. 109:6-22, 110:12-15, 111:23-116:9.)  Pirone then ordered Jack Bryson, Jr. and Carlos Reyes to sit against the wall. (*Id.* at 117:6-12.)  Next, Pirone retrieved Oscar Grant from the train and sat him at the wall (*Id.* at 118:8-22, 266:11-267:20), and then Pirone returned to the train to retrieve Michael Greer. (*Id.* at 121:3-22, 267:25-269:7.)  Jackie Bryson, Jr. testified that it was Pirone who came up to the platform and told him to sit down at the wall.  (J. Bryson Depo. 113:18-119:10, 185:3-188:16.)  Next, Pirone removed Oscar Grant from the train and sat him at the wall (*Id.* at 190:5-192:18), and then Pirone returned to the train to remove Michael Greer.  (*Id.* at 192:19-195:7.)  Additionally, Mehserle never spoke with Nigel Bryson.  (N. Bryson Depo. 222:18.) Nigel Bryson has no memory of Mehserle at all.  (N. Bryson Depo. 222:18-23.)

///

///

### b. **Pirone Had Reasonable Suspicion to Make the Initial Detentions.**

It is well-established law that a police officer can stop and briefly detain a person where there is reasonable basis for suspecting criminal conduct even if there is not "probable cause" for arrest:

> Under *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889, the police can stop and briefly detain a person for investigative purposes if they have a reasonable suspicion supported by articulable facts that criminal activity "may be afoot" even if they lack probable cause under the Fourth Amendment. Reasonable suspicion entails some minimal level of objective justification for making a stop – that is, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause.

*U.S. v. Sokolow*, 490 U.S. 1, 2, (1989).

In this case, Grant and his friends matched the description of the men involved in a fight on the BART train that was broadcast over the police radio at 02:03:02 a.m. on January 1, 2009.  The report described a fight involving a group of black males in black clothing on the lead BART car at the Fruitvale station.  (Hesson Decl. at ¶ 10(b)[13]; see also Pirone Depo. at 40:17-21, 44:1-22.)  When Officer Pirone arrived on the platform, just moments after the call, he saw five young black men in dark clothing standing outside the lead car.  (Pirone Depo. 48:4-23, 50:20-23, PX 731:11-26 [Pirone].)  As he started to walk toward them and started to tell them he needed to talk to them, two of the individuals (Greer and Grant) suddenly hopped back on the train.  (Pirone Depo. 56:21-24; Greer Depo. 26:10-20; 165:5-16; 170:6-25; J. Bryson Depo. 115:16-17.)  The other three acted like they did not hear and took an evasive path around a pillar.  (Pirone Depo. 55:25-56:11.)

Under these circumstances, Pirone had the right to make a "Terry stop" under the Fourth Amendment.  The individuals reasonably matched the description given in the radio call.  This itself provided the "minimal levels of objective justification for making a stop." *Sokolow,* 490

---

[13] The relevant excerpts of the Declaration of Gary Hessen, signed on February 6, 2011 will be referred to throughout this pleading as "Hessen Decl." followed by the applicable page and paragraph references.

Bryson et al. vs. Bay Area Rapid Transit District, et al., Case No. C09-04835
DEFENDANT JOHANNES MEHSERLE'S ANSWER TO COMPLAINT

U.S. at 2.  The evasive action further confirms the validity of the stop.  "Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion."  *Illinois v. Wardlaw*, 528 U.S. 124 (2000); *Paine v. City of Lompoc*, 160 F.3d 562, 566 (9th Cir. 1998); *U.S. v. Cheek*, 586 F.Supp.2d 1099, 1106-1107 (D. Ariz. 2008).  Thus, there was no Fourth Amendment violation in detaining these five Plaintiffs.

### c.   Mehserle's Continuation of the Detentions Is Supported by the Collective Knowledge Doctrine and the Plaintiffs' Resistant Conduct.

Under the doctrine of "collective knowledge," Mehserle is entitled to rely on Pirone's knowledge and subsequent directions to Mehserle.

> Where one officer knows facts constituting reasonable suspicion or probable cause (sufficient to justify action under an exception to the warrant requirement), and he communicates an appropriate order or request, another officer may conduct a warrantless stop, search, or arrest without violating the Fourth Amendment.

*U.S. v. Ramirez*, 473 F.3d 1026, 1032-1037 (9th Cir. 2007).  In addition, BART General Duty Regulation 3.270, Command of Scene, establishes that Pirone was Mehserle's supervisor and superior in this matter:

> The first member arriving at the scene of any crime, accident or other departmental action *will* be in command of the scene and responsible for the direction of police personnel in a manner to assure the most orderly and efficient accomplishment of the police task. The first member shall be in command of the scene until verbally told by a higher ranking member or member assigned the investigation that he is assuming such control. Members will not abandon command of the scene upon arrival of a higher ranking member until they have acquainted the ranking member with the facts and have been relieved by same.

(Bart General Duty Regulation 3.270,[14])

Mehserle thus continued the detention of the Plaintiffs at the direction of his superior, Pirone. (Mehserle Test. 4134:4-5; Pirone Test. 2879:19-21.)  Mehserle was also justified in continuing these detentions because Mehserle had heard the initial broadcast about the fight and at least some of the Plaintiffs, Jack Bryson and Nigel Bryson, as well as Oscar Grant, were

---

[14] The relevant excerpts of BART's General Orders is attached to the Declaration of Michael Rains as Exhibit I, and will be referred to throughout this pleading as "BART General Duty Regulation" followed by the applicable provision.

Bryson et al. vs. Bay Area Rapid Transit District, et al., Case No. C09-04835
DEFENDANT JOHANNES MEHSERLE'S ANSWER TO COMPLAINT

hostile and yelling at the officers. (Anicete Depo. 173:10-174:14; Mehserle Test. 4135:14-16.)

Anicete and others were approaching the other officers and swearing at them. (Anicete Depo.

165:21-21.) This behavior only served to reinforce that there was a legitimate reason and a

great need to keep the Plaintiffs detained. Thus, there was no Fourth Amendment violation for

wrongful detention by Mehserle.

### d.   Mehserle Is Entitled to Qualified Immunity.

Even if the Court were somehow convinced that there had been a Fourth Amendment

violation in the initiation or the continuation of Plaintiffs' detention, Mehserle would still be

protected by the doctrine of qualified immunity. Under this doctrine, public officials

"generally are shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1983).

In analyzing a police officer's assertion of qualified immunity from claims of unlawful

detention or arrest, the court must determine (1) whether there was a violation of a

constitutional right, and (2) whether the right was clearly established such that a reasonable

officer would understand that his conduct violated that right. "If the right is not clearly

established, then the officer is entitled to qualified immunity." *Hopkins v. Bonvicino,* 573

F.3d 752, 762 (9th Cir. 2009).

Qualified immunity is proper where an officer follows the reasonable directions of a

fellow officer:

> While it is typically no defense for an officer to claim he was simply
> "following orders," *Villanueva v. George*, 659 F.2d 851, 855 (8th Cir.
> 1981) (en banc), "[p]lausible instructions from a superior or fellow
> officer" can "support qualified immunity where, viewed objectively in
> light of the surrounding circumstances, they could lead a reasonable
> officer to conclude that the necessary legal justification for his actions
> exists." *Bilido v. McCleod*, 211 F.3d 166, 174-175 (1st Cir. 2000); *see
> also Lauro v. Charles*, 219 F.3d 202, 216 n. 10 (2d Cir. 2000).

*Harvey v . Plains Twp. Police Dept.*, 421 F.3d 185, 199 (3rd Cir. 2005) (Becker, J., dissenting);

*see also, Runge v. Ippolito*, 2010 WL 1239591 (N.D. Cal. 2010).

In this case, when Mehserle arrived on the platform, Pirone told him to watch several

Bryson et al. vs. Bay Area Rapid Transit District, et al., Case No. C09-04835
DEFENDANT JOHANNES MEHSERLE'S ANSWER TO COMPLAINT

individuals who were already detained.  There was nothing facially wrong or unreasonable about this request.  The Plaintiffs' aggressive and profane behavior, which was witnessed by Mehserle, required Mehserle to ensure that the Plaintiffs remain detained in the chaotic and fast-changing environment on the platform.  Thus, Mehserle reasonably followed the instructions of Pirone in continuing the detention of the Plaintiffs.

Even if Mehserle was mistaken about whether his conduct was reasonable under the law, he would still be entitled to qualified immunity.  Qualified immunity will protect an officer– even if there *was* a constitutional violation – as long as the officer's mistake was "reasonable."

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted.… If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

*Brosseau v. Haugen*, 543 U.S. 194, 198, (2004).

Here, Mehserle would have had no reason to believe that continuing the detention of any of the Plaintiffs would offend any constitutional principle. Any mistake Mehserle might have made regarding whether the Plaintiffs should be detained was a *reasonable* mistake of judgment.  "Qualified immunity applies whether an officer's error is a mistake of law, a mistake of fact, or a mistake of the application of law to facts.  An officer will not be liable for mere mistakes in judgment."  *Marquez v. City of Phoenix*, No. CV-08-1132, 2010 U.S. Dist. Lexis 88545, *48-49 (D. Ariz. Aug. 24, 2010) (*citing Butz v. Economou*, 438 U.S. 478, 507 (1978)).  Plaintiffs' aggressive, threatening behavior in cursing and swearing provided ample reason to keep them detained.  Thus, Mehserle's actions were reasonable and entitle him to qualified immunity.

///

///

///

///

14

**4.     Mehserle Did Not Violate Plaintiff's Fourth Amendment Rights with Regard to Their Arrest.**

**a.     Mehserle Did Not Arrest Anyone. He Handcuffed or Attempted to Handcuff Only Grant and Jack Bryson, Jr.**

Pirone advised Mehserle that Oscar Grant, III and Jack Bryson, Jr. were under arrest prompting Mehserle to handcuff Bryson, and then attempt to handcuff Grant.  None of the Plaintiffs but Jack Bryson, Jr. could identify Mehserle as a handcuffing officer and most identified another officer as having arrested him.  No Plaintiff identified Mehserle as walking him downstairs, putting him in the patrol car or driving him to the station.  As noted above, this is because Mehserle was giving his Public Safety Statement, and was then taken to the station and put in a room for questioning.  Because Mehserle had nothing to do with any of these Plaintiffs' arrests, under the *Blankenhorn* standard, he cannot be liable to them for any constitutional violations regarding their claimed arrests.

**b.     Mehserle Did Not Violate Bryson's Fourth Amendment Right With Regard to His Arrest.**

It is clear that Mehserle's following of Pirone's order to handcuff Bryson was valid under Fourth Amendment standards.  The Fourth Amendment requires that a law enforcement officer have probable cause to arrest an individual without a warrant.  *U.S. v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005).  Probable cause exists when there is a reasonable basis for the officer to conclude that an individual has committed or is committing an offense.  "The test for whether probable cause exists is whether "at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. *Id.* at 704 *(citing United States v. Bernard*, 623 F.2d 551, 559 (1980)).

///

///

///

c.      **Mehserle Reasonably Believed it Was Proper to Handcuff Bryson.**

When Mehserle arrived on the platform, Pirone had already detained the Plaintiffs and Grant.  Officer Pirone told Mehserle to watch the men detained and then left.  (Mehserle Test. 4134:4-5; Pirone Test. 2879:19-21.)  Jack Bryson and Nigel Bryson, as well as Oscar Grant, were yelling at the officers.  (Anicete Depo. 173:10-174:14; Mehserle Test. 4135:14-16.)  They were hurling slurs, accusations and obscenities, including "fake ass bitch cop," "bitch ass niggah," "devil," "what the fuck you doing," "punk ass motherfucker" and the like.  (Pirone Depo. 106:24-107:7; PX 759:9-26, 760:7-10 [Pirone]; N. Bryson Depo. 126, 132.)

Pirone returned and said "him and him are going for 148."  (Mehserle Test. 4206:21-23.)  Mehserle believed Pirone indicated that Grant and Jack Bryson were to be arrested and had no information other than that about them.  (Mehserle Test. 4206:21-23; 4207:1-2.)  Under BART policy, the first officer on the scene (in this case, Pirone) is in charge of the scene.  The decision to make arrests lies with him. (Mehserle 4207:24-4208:1; 4208:19-23.)  Nothing that Mehserle observed at the scene lead him to believe that an arrest of Bryson under California Penal Code § 148 would be unlawful.  (Mehserle Test. 4211:25-28.)

When Mehserle began the handcuffing process, first Grant and then Bryson stood up, in violation of the officers' commands.  (Mehserle Test. 4210:5-6, 4213:9-10.)  Bryson resisted being cuffed and only became compliant after he was told that he needed to start listening to commands or else he would be tased.  (Mehserle Test. 4215:5-9, 4215:15-17; Guerra Statement at 1.)

California Penal Code § 148(a)(1) makes it unlawful for one willfully to resist, delay or obstruct a peace officer in the performance of his duties (and is broader than just resisting arrest):

> Every person who willfully resists, delays, or obstructs any public officer, peace officer, … in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,00), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

16

> There are three basic elements to the crime: (1)the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties.

*People v. Simons,* 42 Cal.App.4th 1100, 1108-1109 (1st Dist. 1996); *In re Muhammed C.,* 95 Cal.App.4th 1325, 1329 (6th Dist. 2002).

Bryson's creating a disturbance, inciting the crowd, and standing up when he had been placed under arrest shows that Mehserle had significant probable cause to arrest Bryson under § 148. Because the arrest was lawful in every respect, it cannot provide a basis for Fourth Amendment liability under 42 U.S.C. § 1983.

### d.  Mehserle is Entitled to Qualified Immunity for Bryson's Arrest.

As discussed above, qualified immunity is proper where an officer follows the reasonable directions of a fellow officer. *Harvey v. Plains Tp. Police Dept.*, 421 F.3d 185, 199 (3rd Cir. 2005); *see also, Runge v. Ippolito*, 2010 WL 1239591 (N.D. Cal. 2010). As discussed with regard to the detentions, any mistake Mehserle might have made regarding whether Bryson should be arrested was a *reasonable* mistake of judgment. Bryson's aggressive, threatening behavior in cursing and swearing and resisting arrest only reinforced Mehserle's reasonable belief that arresting him was proper. Thus, Mehserle's actions were reasonable and entitled to Qualified Immunity.

### B.  MEHSERLE DID NOT CONSPIRE TO VIOLATE PLAINTIFFS' CIVIL RIGHTS.

The Sixth Cause of Action sets out a claim for conspiracy to violate civil rights under 42 U.S.C. § 1985. Though the pleading does not specify which subsection of §1985 is being invoked, the reference *must* be to § 1985(3) because §§1985(1) and (2) deal only with preventing public officials from doing their jobs and obstructing justice in state or federal courts. Section 1985(3), however, is founded upon the denial of equal protection of the laws on the basis of race. It provides in relevant part:

///

17

"If two or more persons in any State or Territory conspire '" *for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws* ... the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against anyone or more of the conspirators."

(Emphasis added.)

To prevail on a § 1985(3) claim, the plaintiff must prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Griffin* v. *Breckenridge,* 403 U.S. 88, 102-103 (1971).  "An indispensable element of a claim under section 1985(3) is some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir. 2000) (quoting *Griffin,* 403 U.S. at 102).

### 1.      There Was No Racial Motive.

Section 1985(3) requires an affirmative showing of racial or discriminatory bias or motive.  In this case, Mehserle never used any profanity, let alone any racial or ethnic slurs, and there is no other evidence to show that he was motivated by any racial basis.  In fact, the only evidence showing any officer mentioning any racial statements whatsoever is Pirone's repeating Grant's epithets back when Grant called Pirone a "bitch-ass nigga."  (Pirone Test. 2898:1-3; Meyers Test. 4607:1-14, 21-24.)  Mehserle did not hear this exchange.  (Mehserle Test. 4328:20-4329:1.)  Mehserle never used any racial slurs that evening on the BART platform.  (*See* Anicete Depo. 193:8-10; Greer Depo. 261:6-16.) In fact, none of the Plaintiffs can identify any racial slurs that were directed at them by any officer that evening.  For this reason alone, the Fourth Cause of Action for conspiracy to violate civil rights on the basis of race must fail.

### 2.      There Was No Conspiracy.

In order to sustain a conspiracy claim, a plaintiff must demonstrate "the existence of an

Bryson et al. vs. Bay Area Rapid Transit District, et al., Case No. C09-04835
DEFENDANT JOHANNES MEHSERLE'S ANSWER TO COMPLAINT

agreement or meeting of the minds to violate constitutional rights." *Mendocino Env. Ctr. v. Mendocino County,* 192 F.3d 1283, 1301 (9th Cir. 1999).  Here there was no advance knowledge which would have allowed Mehserle or the other officers to enter into a conspiracy.  Mehserle arrived to find a rapidly deteriorating, potentially volatile situation in detaining uncooperative suspects and in dealing with an unpredictable group of people coming off the train.  Mehserle never had the opportunity to talk to other officers about what was happening and his interactions were exclusively with Pirone, who spoke to him only to tell him to continue to watch Grant and his friends and then to tell him to arrest Grant and Bryson.[15]

### 3.    Mehserle Did Not Participate in Wrongdoing as Part of a Plan.

For liability to attach under § 1983, each individual must actively participate and proximately cause the deprivation of a constitutional right. "A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the derivation of which the plaintiff complains." *Wilkins v. County of Alameda*, No. C 08-1485 MHP, 2010 U.S. Dist. LEXIS 121218 (N.D. Cal. Nov. 15, 2010.)

In accord with the rule demanding *individual participation* in constitutional wrongdoing, courts have rejected the idea that one can be held liable simply by being part of a "team" that caused constitutional injury:

> The underlying problem with a "team effort" theory is that it is an improper alternative grounds for liability.  It removes individual liability as the issue and allows a jury to find a defendant liable on the ground that even if the defendant had no role in the unlawful conduct, he would nonetheless be guilty if the conduct was the result of a "team effort."  …  In essence, the "team effort" standard allows the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct.

---

[15] Indeed, the investigators who reviewed the events at the Fruitvale station in the early morning of January 1, 2009 criticized the officers for failing to work as a team.  Meyers-Nave Report (p. 85). The relevant excerpts of the Meyers-Nave Report, prepared on July 31, 2009, are hereby attached to the Declaration of Michael Rains as Exhibit L, and will be referenced throughout this pleading as "Meyes-Nave Report" followed by the relevant page references.

1   *Chuman v. Wright*, 76 F.3d 292, 294-295 (9th Cir. 1996).

2        To create liability, the Plaintiffs must show each defendant's "integral participation,"

3   where, as part of an agreed upon plan, each officer has a role to play in the wrongdoing.  *See*

4   *Boyd v. Benton*, 374 F.3d 773 (9th Cir. 2004) (where SWAT team deployed a flash-bang

5   device pursuant to a prior-agreed upon plan, each officer involved was liable because each

6   was an "integral participant.").

7        Here, as discussed above, there was no plan, and no specified roles and no agreement

8   about what would happen.  Mehserle and the other officers were reacting to a spontaneously

9   developing situation in an effort to keep control in this volatile unpredictable circumstance.

10  In fact, Mehserle arrived so late that Grant and his friends had already been detained by other

11  officers.  Mehserle's handcuffing of Bryson was only at the direct order of his superior

12  officer, and is not part of a plan or conspiracy to violate Bryson's rights.  There is simply no

13  evidence that there was any time, motivation or desire to create a plan that lead to any

14  depravation of any rights.  Thus, this claim must fail.

15

16              **4.    Mehserle Did Not Have an Opportunity to Intervene to Prevent
                        Wrongdoing by Other Officers.**

17        Officers can be liable for a § 1983 violation for failure to stop the unconstitutional

18  conduct of fellow officers.  However, the officer "must have reason to know that his fellow

19  officer is subjecting the victim to objectively unreasonable force" and he "must have a

20  realistic opportunity to intervene and prevent a constitutional violation from taking place."

21  *Petrolino v. County of Spokane*, 678 F.Supp.2d 1082, 1090 (E.D. Wash. 2009); *see also*

22  *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (officers must have an opportunity

23  to intercede in order to be held liable).

24        Under this standard, there was clearly no actionable failure to intervene on Mehserle's

25  part.  Mehserle was simply not present for or did not participate in the original detention of

26  the Plaintiffs.  Additionally, from the moment he arrived on the platform, Mehserle was

27  utterly preoccupied with a set of immediately pressing tasks.  He had no opportunity to

28  discuss, much less prohibit, any alleged constitutional violations committed by other officers.

1   Thus, he cannot be held liable for their conduct under §1983.

2        **C.   PLAINTIFFS' STATE LAW CLAIMS CANNOT STAND.**

3        Plaintiffs make numerous state law claims. Under California Government Code §§

4   820.2 and 820.4, police officers are immune from liability for acts within their discretion

5   except for false arrest, false imprisonment and excessive force.  Thus, Plaintiff's claims under

6   California Civil Code §§ 51.7 and  52.1, for Intentional Infliction of Emotional Distress, and

7   for Assault and Battery, to the extent they are not predicated on false arrest, false

8   imprisonment, and excessive force, must fail because Mehserle is immune from suit under

9   California law.  Because there are no claims against Mehserle for false imprisionment or

10  excessive force, and because Mehserle only handcuffed Jack Bryson, Jr., all of the other

11  Plaintffs' state law claims must fail as a matter of law.

12       Likewise, to the extent the state law claims are based on Mehserle's alleged arrest of

13  Bryson, he is immune under Under California Penal Code § 847(a), because peace officers are

14  immune from suit when an arrest is lawful.  As shown above, Mehserle's participation in the

15  arrest of Bryson was lawful, and thus all state law claims must fail on this ground.

16  **VI.       CONCLUSION**

17       Because Plaintiffs are unable to state any claims against Mehserle for a violation of any

18  of their state or federal rights, Mehserle respectfully requests that this Court grant summary

19  judgment on all counts against him in this matter.

20

21  Dated: February 7, 2011          Respectfully submitted,

22                    **RAINS LUCIA STERN, PC**

23

24                    /s/    Michael L. Rains

25                    By:  Michael L. Rains
                      Lara Cullinane-Smith

26                    Attorneys for Defendant
                      JOHANNES MEHSERLE

27

28

Bryson et al. vs. Bay Area Rapid Transit District, et al., Case No. C09-04835
DEFENDANT JOHANNES MEHSERLE'S ANSWER TO COMPLAINT