**EXHIBIT A**

```
                        11-05-2010.txt
1              SUPERIOR COURT OF THE STATE OF California

2                   FOR THE COUNTY OF LOS ANGELES

3

4
       DEPARTMENT NO. 104          HON. robert j. perry, JUDGE
5

6

7

8     THE PEOPLE OF THE STATE OF California, )
                                            )
9                    PLAINTIFF,             )
                                            ) AOC NO. 1009606-10
10         VS.                              )
                                            ) ALAMEDA COUNTY
11                                          ) SUPERIOR COURT
      01) JOHANNES MEHSERLE,               ) CASE NO. 161210
12                                          )
                     DEFENDANT.             )
13    _____)

14

15

16              REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                  FRIDAY, NOVEMBER 5, 2010

18

19    APPEARANCES:

20    FOR THE PEOPLE:        David R. Stein
                             Deputy District Attorney
21                           Rene C. Davidson Courthouse
                             1224 Fallon Street
22                           Oakland, California  94612

23    FOR THE DEFENDANT:     Michael L. Rains
                             Attorney At Law
24                           2300 Contra Costa Boulevard
                             Suite 230
25                           Pleasant Hills, California  94523

26

27
                             BETH QUINTANA, CSR NO. 9695
28                           OFFICIAL REPORTER
```

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

7201

```
1     NUMBER CASE:              1009606-10
```

11-05-2010.txt

16          I have previously remarked what we all know to

17   be true, that what happened on January 1st, 2009 was a

18   tragedy.  One man's life was needlessly taken, a second

19   man's life and career were devastated.

20          Nothing this court can do or say can remedy the

21   harm that came from that tragic incident.  Nothing I can do

22   will restore Oscar Grant to his family and loved ones.

23   Nothing I can do will restore Johannes Mehserle to the life

24   he led before those fateful few minutes on that platform.

25          One of the reasons I delayed scheduling

26   sentencing in this matter is because I had hoped that the

27   passage of time would help diminish somehow the strong

28   feelings regarding this case, and I don't think that has

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

                                                        7305

1    happened.  There is no doubt in this Court's mind of the

2    genuine lasting pain suffered by Mr. Grant's family and

3    loved ones.  And everyone agrees, everyone, that Mr. Grant

4    did nothing to warrant being shot.

5          I've been involved in the criminal justice

6    system for close to 40 years.  I was an attorney as a

7    prosecutor and a defense attorney.  For the last more than

8    18 years now I have been a judge that has handled

9    exclusively criminal matters.  One thing I well understand,

10   people see what they want to see and they hear what they

11   want to hear in situations like this.  Some people will see

12   this case as the cold-blooded murder of a young man by a

13   police officer.  Others will see the case as the

14   prosecution and conviction of a totally innocent man who

15   made a tragic mistake.  Nothing I do today will change

16   those opinions.  And I will tell you, no one will be

17   totally pleased by my rulings today.

11-05-2010.txt

18          As with so many of the tragic cases that come
19  before me, there are no winners here, only losers.  I am
20  especially saddened by the polarization in the community
21  reflected in the letters, reflected in the statements
22  today.  One of the speakers talked about an increased
23  distrust of the police in the black community in Oakland,
24  and I'm certainly sorry if that has occurred.  I can
25  understand how it might have occurred.
26          And let me comment on race.  Oscar Grant was an
27  African-American.  The Defendant, johannes Mehserle, is
28  white.  The Court is well aware of the shameful history of

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

                                                    7306

1  racial injustice in this country.  well aware.  But I can
2  tell you I cannot and will not permit considerations of
3  race to impact or influence my ruling because I believe
4  based on the evidence this was not a case about race.  I do
5  not believe based on the evidence the defendant was
6  influenced by race.
7          My role, as it is in all cases, is to be as
8  just and fair as I can be.  To do justice, justice for the
9  victim and justice for the defendant.  As Mr. Rains said,
10  to be faithful to the law, and that is what I am trying to
11  do in this matter today.  The Motion for new trial raises
12  several issues.  I will discuss the major issues raised in
13  the motions for new trial.  Should I fail to directly
14  address an issue, I want to assure counsel I have
15  considered it, and if I don't address it you should
16  consider it denied.
17          Let's talk about the Motion for new trial due
18  to newly discovered evidence, the two prior incidents of
19  claimed weapons confession regarding tasers.  and what, of

11-05-2010.txt

8   inconceivable that shooting someone in the back from that
9   distance evidences anything other than a clear intent to
10  kill. And it was, of course, the argument of the District
11  Attorney that Mr. Mehserle did intend to kill Mr. Grant
12  that night.

13          The court is persuaded that as a matter of law
14  the evidence at trial was insufficient to support the
15  jury's finding that Mehserle intended to use a firearm when
16  he committed the involuntary manslaughter of Oscar Grant.
17  When considering a Motion for a new trial based on
18  insufficiency of the evidence, the Court is required to
19  weigh the evidence and exercise its independent judgment
20  based on the evidence. In the exercise of its supervisory
21  power over a verdict, the court on Motion for a new trial
22  should consider the probative force of the evidence and
23  satisfy itself that the evidence as a whole is sufficient
24  to sustain the verdict. The court must review the whole
25  record in the light most favorable to the judgment and
26  decide whether it discloses substantial evidence such that
27  a reasonable trier of fact could find the Defendant guilty
28  beyond a reasonable doubt.

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

7317

1           When I view the evidence in this case in its
2   entirety, and I view it in a light most favorable to
3   supporting the true finding for the gun enhancement
4   allegation on the involuntary manslaughter charge, I find
5   the evidence is frankly insufficient to support the
6   allegation that Mehserle intended to use his firearm.
7           There are several factors worth noting.
8   Mr. Grant was held by Mr. Pirone at the time of the shot.
9   Pirone was virtually in the line of fire. That is

11-05-2010.txt

10   suggestive that this was an accident.  Mehserle was on the
11   platform for a very brief period, a matter of slightly more
12   than two minutes before pulling his gun and shooting Grant.
13   He was not threatened by Grant, he had no reason to pull
14   his gun and shoot Grant.  Mehserle had absolutely no motive
15   to shoot Grant.  He didn't know Grant and had never
16   interacted with Grant before.
17            Of great significance in the Court's ruling is
18   that Mehserle announced he was going to tase Grant.  This
19   statement was corroborated by Pirone and Jackie Bryson.
20   Mehserle stood to gain distance which would be required for
21   the shooting of a taser to be effective, it would not have
22   been required to fire a gun.  Mehserle fired once which is
23   consistent with shooting a taser and inconsistent with
24   firearm training which says if you're going to shoot, you
25   shoot more than once, you double or Triple tap is the
26   phrase used.  Mehserle pulled on his service revolver in a
27   manner suggestive of trying to pull out a taser.  He was
28   pushing in.  It took him several efforts to pull the gun.

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

7318

1   After the shooting his hands immediately went to his head
2   in obvious shock and surprise.  This is again inconsistent
3   with an intention to shoot.  Reyes heard Mehserle say, "oh,
4   shit.  Oh, shit.  I shot him."  Again, further evidence
5   that this was an unintentional shooting.
6            In the court's view Mehserle had a reason to
7   tase Grant.  It is the Court's view based on the evidence
8   that Mr. Grant was resisting.  I make that statement based
9   on the video evidence and the autopsy evidence which shows
10   the shot entered on Grant's side indicating he was rolling
11   in an upward manner.

11-05-2010.txt

12          Lastly, I find the Court -- the Court finds
13    that Mehserle's testimony at trial was believable that this
14    was an accident.  These facts, and there are many more,
15    clearly support the view that Mehserle intended to tase
16    Grant and did not intend to pull his firearm.  Much has
17    been made by the District Attorney that Mehserle did not
18    say it was an accident and that he told Pirone he thought
19    Grant was going for a gun immediately after the shooting.
20    It is argued that Mehserle was intentionally lying to cover
21    up his crime.  It is further argued that Mehserle's failure
22    to tell his support officer hours after the shooting that
23    it was an accident is further evidence that he intended to
24    shoot Grant.
25          Based on my review of the evidence, I reject
26    these arguments.  It is clear from the video that
27    immediately following the shooting Mehserle acted in an
28    obvious physical manner that can only be characterized as

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)
7319

 1    shock and dismay.  His hands went to his head in apparent
 2    disbelief of what had happened.  I accept his testimony
 3    that he did not know how he had come to have shot Grant and
 4    that he was in shock following the shooting.  in the
 5    court's experience individuals react differently to stress.
 6    I place little weight on Mehserle's statements immediately
 7    following the event.
 8          The evidence that this was an accidental
 9    shooting and that Mehserle did not intend to pull his gun
10    and shoot Grant is in the court's view simply overwhelming.
11    I believe the pleadings filed by the District Attorney on
12    this issue contain several misstatements of fact.  The
13    District Attorney maintains Grant was not resisting.  In my