1 SHIMEA C. ANDERSON (State Bar No. 234717)
  LAW OFFICES OF SHIMEA C. ANDERSON
2 385 Grand Avenue, Suite 201
  Oakland, CA 94610
3 Telephone: (510) 208-2800
  Facsimile: (510) 280-0830
4
  Attorneys for
5 JOHNTU CALDWELL

6

7

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 | JOHN TU CALDWELL, | Case No. C10-0005
12 |         Plaintiff | **PLAINTIFF JOHNTU CALDWELL'S OPPOSITION TO DEFENDANTS DOMENICI AND PIRONE'S MOTION FOR SUMMARY ADJUDICATION**
13 | vs. |
14 | BAY AREA RAPID TRANSIT DISTRICT; GARY GEE, in his official capacity as CHIEF OF POLICE for BAY AREA RAPID TRANSIT DISTRICT, JOHANNES MEHSERLE individually and in his official capacity as a police officer for BART; ANTHONY PIRONE, individually and in his personal capacity as a police officer for BART; MARYSOL DOMENICI, individually and in her official capacity as a police officer for BART; and DOES 1-50, inclusive, |
21 |         Defendants. |

1

# TABLE OF CONTENTS

INTRODUCTION ……………………………………………………………………..4

ARGUMENT……………………………………………………………………….…7

    I.    ALL OF DEFENDANTS' CONTENTIONS ARE DISPROVED BY PLAINTIFF'S EVIDENCE, SO THE COURT MUST DENY DEFENDANT MARYSOL DOMENCINI'S MOTION FOR SUMMARY JUDGMENT.

CONCLUSION……………………………………………………………………...16

LAW OFFICES OF
SHIMEA C. ANDERSON
385 Grand Avenue, Suite 201
Oakland, CA 94610

# TABLE OF AUTHORITIES

FEDERAL CASES

Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 249 (1986)...................7

Blankenhorn v. City of Orange 485 F.3d 463, 470 (9th Cir. 2007)............7

Dubner v. City and County of San Francisco 266 F.3d 959, 966 (9th Cir. 2001).....12

Graham v. Connor 490 U.S. 386, 397 (1989)................................12

LaLonde v. County of Riverside 204 F.3d 947, 963 (9th Cir. 2000)(Trott, J............ 8

Motley v. Parks 432 F.3d 1072, 1081 (9th Cir. 2005).......................13

People v. Hernandez (2008) 45 Cal. 4th 295, 299...........................12

Robinson v. Solano County 278 F.3d 1007, 1015 (2002)(en banc)...........13

Santos v. Gates 287 F.3d 846, 855 n.12 (9th Cir. 2002)....................15

Terry v. Ohio 392 U.S. 1, 9 (1968)........................................12

Thompson v. Mahre 110F.3d 716,719 (9th Cir 1997).......................8

T.W. Electric Service, Inc. v. Pacific Electrical Contractors Ass'n. 809 F.2d 626, 631 (9th Cir. 1987)...................................................7

United States v. Jensen 425 F.3d 698, 705 (9th Cir. 2005)..................12

US v. Mariscal 285 F.3d 1127 (9th Cir. 2002).............................12

Washington v. Lambert (98 F.3d 1181 (9th Cir. 1996).....................13

LAW OFFICES OF
SHIMEA C. ANDERSON
385 Grand Avenue, Suite 201
Oakland, CA 94610

PLAINTIFF JOHNTU CALDWELL'S OPPOSITION TO DEFENDANTS DOMENICI AND PIRONE'S MOTION FOR SUMMARY ADJUDICATION

## INTRODUCTION

TO ALL COUNSEL AND THEIR ATTORNEYS OF RECORD:

Contrary to Domenici's claim, Caldwell has a claim based on credible competent evidence as set forth in this Motion and attached Declarations. Plaintiff Johntue Caldwell (hereinafter "Caldwell") respectfully submits this brief in opposition to the Domenici Motion for Summary Adjudication (hereinafter "MSA"). This case arises from the illegal detention and excessive use of force applied by BART officers on New Year's Eve 2009. The actions of the BART officers and in particular those of Officer Marysol Domencini, violated the Fourth Amendment of the United States Constitution (42 U.S.C. §1983); Violation of Fourth Amendment of the United States Constitution (42 U.S.C. §1983); and Violation of Fourth Amendment of the United States Constitution (42 U.S.C. §1983). Plaintiff JOHNTUE CALDWELL (hereinafter "Caldwell") was detained by BART Officer Marysol Domenici (hereinafter "Officer Domencini"), who pushed Caldwell repeatedly, shoved a taser in his face, threatened to tase him in the face and caused him to fear for his life on the platform that evening. It is clear that Domenici and other officers that morning acted under the color of the law to violate the civil rights a group of young African-American males based on mistaken identity or belief. Caldwell was never charged with a crime or suspected to his knowledge but suffered an illegal detention and fear for his life.

In Defendant Officer Domenici's Motion for Summary Judgment the following arguments are made, that Plaintiff is not a credible witness and thus should not be relied on and that he has no evidence to support his claims. Plaintiff refutes each argument as set forth below. Furthermore, all of the facts listed by Defendant Domenici wherein she asks the court to make a factual findings are all issues of fact for the jury to decide at the trial. Simply put, Plaintiff has sufficient evidence to support his claims as set forth in the following declarations and exhibits attached: Declaration of Johntue Caldwell; deposition testimony of Johntue Caldwell, deposition testimony of Jamil Dewar, Dewar video, and the deposition testimony including the report produced by Dr. Marlin Griffiths. Based on all of this evidence and applicable federal and state case law, Defendant Domenici's motion for summary as to all counts should be denied.

## STATEMENT OF FACTS

During the early morning hours of January 1, 2009, Plaintiff CALDWELL, was riding a Bay Area Rapid Transit District train "Train") back to the east bay after a night of celebrating New Year's Eve in San Francisco. He was accompanied by Mr. Oscar Grant and several other friends and acquaintances. The following friends and acquaintances were present. When the Train pulled into the Fruitvale BART Station platform, its doors opened and many of its passengers disembarked. The Train remained with its doors open on the platform for several minutes. Several BART Police Officers, including, but not limited to, Officers Johannes Mehserle, Anthony Pirone and Marysol Domenici made their way onto the Station's platform.

When the Train arrived at Fruitvale station, CALDWELL disembarked with members of his group and headed for the exit, when he saw a BART officer or officers pulling over several of his friends that he was with that evening. He slowed down to see what was occurring. CALDWELL witnessed and heard several events that night including the Officer involved shooting death of his best friend, Oscar Grant. What is most significant about that night, he not what he heard or observed but his own unlawful detention and harassment by an Officer who was later identified as Officer Domenici.

CALDWELL watched a friend who he was standing tackled by Officer Pirrone, he heard the shot that rang out that day and then Domenici turned her attention to CALDWELL.

CALDWELL was detained between the BART train and the BART platform by Officer Domencini. As set forth in Domenici's MSA according to Caldwell: "Domencini grabbed Caldwell, pushed him against the train, put the Taser in his face, and began to try to get the train operator to open the train door by hitting the side of the train." Citing Caldwell deposition at 121:2 – 122:25. All of the these statements are factual issues to be decided by the jury as set forth below. These events occurred after he watched other officers tackle his friends and shoot his best friend. Throughout this exchange with Domenici (where he was eventually thrown back onto the BART train into the arms of other concerned riders), CALDWELL feared for his life and his safety. CALDWELL just heard the shot which killed his best friend Oscar Grant and assumed he was next. At the time of this detention and threats with the taser, Officer Domenici had not seen CALDWELL commit a crime nor did he have any information that CALDWELL had committed a crime. As CALDWELL and his friends were standing, sitting and/or kneeling near the retaining wall they began verbally questioning their detention and the Officers' abusive conduct. One or more yet to be identified Officers began handcuffing the young men despite not being aware of any information identifying CALDWELL or any of the other young men as being involved in the reported altercation.

Since the date of the filing of this instant lawsuit, a verdict was reached in the underlying criminal case and sentencing was completed in the Mehersle case (criminal case related to Grant's death).

FACTS AND LEGAL ISSUES IN DISPUTE

Plaintiff's complaint alleges the following claims for relief: Violation of Fourth Amendment of the United States Constitution (42 U.S.C. §1983); Violation of Fourth Amendment of the United States Constitution (42 U.S.C. §1983); and Violation of Fourth Amendment of the United States Constitution (42 U.S.C. §1983). ALL OF THE DEFENDANTS' CONTENTIONS ARE DISPROVED BY PLAINTIFFS' EVIDENCE, SO THE COURT MUST DENY DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

///

Law Offices of
Shimea C. Anderson
385 Grand Avenue, Suite 201
Oakland, CA 94610

## ARGUMENT

**A) Summary Judgment Is Improper In This Case As All of the Defendants' Contentions are Disproved by Plaintiffs' Evidence**

A motion for summary judgment has one legitimate purpose: to determine whether the case presents genuine issues of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Where an issue of material fact is present, and a rational jury might resolve the issue in favor of the non-moving party, summary judgment must be denied. T.W. Electric Service, Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). In determining whether there are material issues for trial, all justifiable inferences from the evidence must be drawn in favor of the party opposing the motion. Anderson, supra; Blankenhorn v. City of Orange, 485 F.3d 463, 470 (9th Cir. 2007). Disputed material facts must go to the jury, even when a government official claims qualified immunity from suit. LaLonde v. County of Riverside, 204 F.3d 947, 963 (9th Cir. 2000)(Trott, J., concurring and dissenting.) This rule is a necessary corollary of the Seventh Amendment right to jury trial. Ibid., citing Thompson v. Mahre, 110F.3d 716,719 (9th Cir 1997).

Here, Plaintiff's Complaint and the evidence presented by Plaintiff, and his fellow Plaintiffs' in the consolidated cases, categorically refute Defendants' positions on every material issue. In particular, Caldwell's evidence refutes Domenici's arguments in her MSA. Caldwell has evidence of credible claims as set forth in the following evidence: (1) His own deposition testimony; (2) Dewar video and deposition testimony; (3) Griffin deposition testimony and report; and (4) General issues with credibility in his instant case as demonstrated in Domenici's own testimony which all support his claims in this case. All of the evidence set forth above specifically refutes each specific piece of evidence, creating a triable issue of fact to be decided by a trier of fact. The claims of Caldwell and the evidence which supports this evidence, or as argued by Domenici fail to support (which Plaintiff directly refutes) are all issues of fact.

Plaintiff's evidence, and the inferences supported by that evidence, will support verdicts for Plaintiff against every Defendant on both the federal and state law claims. Therefore, the

1  instant MSA must be denied.

2  **B) Caldwell's civil rights claims cannot be adjucated in favor BART and/or Officer**
3  **Domenici**

4  **1) Caldwell's Testimony is a Question of Fact to be determined by a JURY whether**
5  **credible or not (JURIES determine credibility of witnesses).**

6  Defendants argue the sham affidavit rule precludes admission of Johntue Caldwell's testimony because defendants claim inconsistencies. However, the sham affidavit rule "bars a plaintiff from creating a factual dispute with himself for the sole purpose of arguing that summary judgment is inappropriate until the dispute is settled." Nelson v. City of Davis, 571 F.3d 924, 927-928.

11 Here, Caldwell's testimony and declarations all took place prior to any motion for summary judgment. Therefore, avoiding summary judgment could not have been a consideration and the testimony was not for the "sole purpose" of avoiding summary judgment. As a result, none of Caldwell's deposition testimony or declarations fall within the scope of the sham affidavit doctrine.

16 Defendants claim that testimony can be so lacking in credibility as to not create an issue of fact. Sanchez v. Client Services, Inc., 520 F.Supp.2d 1149, 1164 (N.D. Cal. 2007). However, this case is at odds with controlling precedent. Sanchez is a District Court case and sites the D.C. Circuit for authority (Johnson v. Washington Metropolitan Area Transit Authority, 883 F.2d 125, 128 (D.C.Cir.1989). Id. at 1164. Even if plaintiff's testimony was deemed to lack credibility, that credibility is an issue for the trier of fact. SEC v. Koracorp Indust., the controlling precedent in the Ninth Circuit, states that, "courts have long recognized that summary judgment is singularly inappropriate where credibility is at issue. Only after an evidentiary hearing or a full trial can these credibility issues be appropriately resolved." 575 F.2d 692, 699 (9th Cir. 1978).

26 Variations in testimony and declarations is does not equate a lack of credibility and a judge "may not grant summary judgment based in his determination that one set of facts is more believable than another." Nelson, 571 F.3d at 929. This is because the sham affidavit rule

1  does not preclude "elaborating upon, explaining or clarifying prior testimony . . . and minor
2  inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence
3  afford no basis for excluding an opposition affidavit." Id. at 928.

4      Here, Caldwell was in a position of stress having witnesses the killing of a friend
5  by a police officer and being threatened by another. Should any minor inconsistencies in
6  Johntue's testimony exist, these are understandable under the circumstances.

7      Defendants also content that the limited video evidence contradicts the victim's
8  testimony. This is legally insignificant for summary judgment because video is like a third-party
9  witness. Nelson, one of the cases cited by defendants, stand for the proposition that conflicting
10  testimony by third parties is not a basis for the sham affidavit doctrine. In Nelson, the District
11  Court said witnesses reports were "equivocal" compared to the plaintiff's. 571 F.3d at 928. The
12  Ninth Circuit held that "is just the type of credibility determination that must be left to the
13  factfinder."

14      Although it can be argued that video evidence is different than a third-party witness
15  because it is more objective, multiple videos have been compiled of varying quality and the facts
16  are still in dispute. The editing of videos makes the witness testimony of the expert essential to
17  establish the reliability of the videos.

18    **2) Not Inaccurate Testimony supported by evidence**
19      **a) His own deposition testimony**
20      The basis of Domenici's argument is that the testimony of Caldwell is simply unreliable
21  due to his alleged inconsistent testimony regarding the events that occurred last night. What is
22  key to the analysis is that in order to make this determination, you must weigh his own testimony
23  versus that of other parties. This issue is a factual issue. Factual issues are to be decided by a
24  jury, not by summary adjudication. See

25      Even assuming arguendo that the Court finds it is legal issue to be decided based on
26  Domenici's MSA, Caldwell's own testimony in light of the extreme events is credible and
27  supported by his own evidence.

28      For example, Caldwell's statements to Dr. Griffith given in close relation to the time of

LAW OFFICES OF
SHIMEA C. ANDERSON
385 Grand Avenue, Suite 201
Oakland, CA 94610

PLAINTIFF JOHNTU CALDWELL'S OPPOSITION TO DEFENDANTS DOMENICI AND PIRONE'S MOTION FOR SUMMARY ADJUDICATION

1    the incident and thus more reliable than the deposition testimony y of which Domecini relies on
2    in her MSA.
3        What details he recalls and what subjectively stand out in his mind, two years later at the
4    time of the deposition represent his best efforts that stand out in his mind, based on these tragic
5    events. For example, in he told Dr. Marlin Griffiths, P.H.D., (hereinafter "Dr. Griffiths") that he
6    "was in a group of people being pushed back [by BART Officers]." Page   Additionally, in Dr.
7    Griffiths testimony, when asked if "he [Caldwell] express any concern to you over how he was
8    treated on the BART platform, he responded yes." Deposition of Dr. Marlin Griffith pages
9    deposition testimony 109:5-7. Attached as Exhibit A to the Declaration of Shimea C. Anderson
10   is a true and correct copy of Dr. Marlin Griffiths deposition testimony.

    **b) Dewar testimony and video**

12       As set forth in Domenici's MSA video of this event exists as taken by Jamar Dewar.
13   Furthermore, as stated by Domenici in her MSA , there is lengthy discussion of the Dewar
14   testimony. Domenici specifically states at page 24:6 " that "exigent circumstances render
15   permissible a warrantless search or seizure even when there is no probable cause to believe that a
16   crime has been committed." Domenici's MSA 24:6-8.  Here, Plaintiff specifically challenges
17   that any basis existed for probable cause.
18       The Dewar video allegedly shows Domenici
19       On page 29, Domenici then argues here by "contrast, Domenici pointed her taser only
20   when confronted with a very tense, extremely volatile situation that demanded quick removal of
21   people from the platform. " Domenici's MSA 29:24-26. Again, Caldwell contends that any
22   determination of whether this is in fact the case is a factual determination to be made by a trier of
23   fact. However, again the Dewar video shows the portion of the events which are dispute on the
24   platform, i.e. whether Domenici shoved a taser at Caldwell are covered by Dewar's thumb and
25   obscured in the video.  See video.
26       Finally, in order to better understand the video, Domenici submits the declaration and
27   photos of expert Michael Schott. Again, the purpose of expert testimony is assist the trier of fact.
28   It is simply improper to rely on expert testimony (especially when actual video evidence and the

testimony of Caldwell collaborate events to the best of his recollection.

  **c) Griffin Testimony and Report**

  **d) Lack of Testimony/Credibility Issue for Jury (Defendant Domenici has her own credibility issues, should that be waived/considered**

  Domenici argues in her MSA that unreliable evidence essentially should be disallowed. See Domecini MSA pages 15-21. Assuming arguendo that this is the case, Caldwell argues that the inconsistencies in her own testimony must be considered in this case. Despite the arbitration proceedings submitted, one key inconsistencies in the testimony of Domenici is the events and recollection related to the "throwing of a cell phone" which she basis a portion of her evidence on

**C) Even if true is liable for 4th Amendment Violation**

  **1) Wrongful Arrest and/or Unlawful Detention -**

  "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." <u>Terry v. Ohio</u>, 392 U.S. 1, 2-20 (1968); <u>People v. Hernandez</u>, 45 Cal. 4th 295, 299 (2008). The "...demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence." <u>Terry</u> at 21, n. 18. Officers are not entitled to rely on "mere hunches." <u>Terry</u> at 27. An "... officer's inferences must be grounded in objective facts and be capable of rational explanation." <u>US v. Mariscal</u>, 285 F.3d 1127 (9th Cir. 2002).

  In this, as in all Fourth Amendment analyses, subjective factors or intentions are irrelevant. <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989) Whether a detention is supported by reasonable suspicion must be determined by the objective facts known to an officer at the time he or she acts to deprive an individual of liberty. Defendant here had no reasonable basis to detain Caldwell even if "for a minute" as set forth in her MSA. However long the detention lasted is an issue fact.

  Here Domenici had no facts. Specifically, even if she relied on fellow officers, the

actions of those officers are also refuted at this time. Furthermore as she testified, at her 1. Basically, D D had no foreknowledge of which to detain Caldwell even if only for a minute between the train with her taser in hand (which again Plaintiff asserts is a factual issue). Accordingly, Domenici never had an articulable basis for suspecting the plaintiffs were involved in a crime.

Nor did defendants satisfy the more demanding standards of probable cause. Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." Dubner v. City and County of San Francisco, 266 F.3d 959, 966 (9th Cir. 2001).

**2) Excessive Force**

Although the flagrant shooting of Oscar Grant was the most extreme deprivation of constitutional rights, the myriad general and specific threats to use tasers, specifically that of Domenici, and the numerous gratuitous applications of physical force which Caldwell wistenned around him all constituted independent violations of the Fourth Amendment rights of Caldwell. These unwarranted assaults escalated the sense of outrage that flowed from the wrongful detentions. Defendants' arbitrary conduct angered and terrified the observing passengers in Fruitvale station. The atmosphere of anger and fear generated by the defendants was a fundamental cause of Oscar Grant's needless death.

A police officer has a lawful privilege to use or threaten force only when there is an objectively reasonable need for force. Blankenhorn v. County of Orange, 485 F.3d 463, 481 (9th Cir. 2007), citing Graham v. Connor, 490 U.S. 386 (1989). There was no need for the force applied against the plaintiffs. To the extent they were suspected of any crime, it was a completed misdemeanor that had not resulted in any injury or property damage. None of the plaintiffs ever physically resisted or presented a threat of harm to any officer. Fernando Anicete was backing away from Domenici when he was tackled by Knudtson. Michael Greer dropped his passive resistance when Pirone made physical contact. Domenici's threats at Caldwell as well as her repeated shoving at him, brandishing and threatening him with taser use all were ground were

clearly unnecessary and excessive uses of force.

The use of force need not result in significant injury to violate the Fourth Amendment if it is excessive under the circumstances. Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993)(tight handcuffing resulting in bruises constitutes excessive force when not reasonably necessary); Barlow v. Ground, 943 F.2d 1132, 1136 (9th Cir. 1991)(pain compliance hold is excessive force when applied to a non-violent subject). Pointing or brandishing a weapon is an actionable use of force, even if the weapon is not fired. Tekle v. United States, 511 F.3d 839, 845 (9th Cir. 2007); Motley v. Parks, 432 F.3d 1072, 1088-1089 (9th Cir. 2005); Robinson v. County of Solano, 278 F.3d 1007, 1014-15 (9th Cir. 2002) (en banc).  Here there is evidence that Domenici in fact brandished her taser at Caldwell.

The decision in Robinson eliminates any doubt that the continual brandishing and threatening of plaintiffs with Tasers to effect the detentions subjected them to excessive force. "In cases involving investigatory or Terry stops,  we have consistently applied the principle that drawing weapons and using handcuffs ... is unreasonable in many situations." The decision cites Washington v. Lambert, 98 F.3d 1181, 1187 (9th Cir. 1996) for the proposition:"...when the police have only reasonable suspicion to make an investigatory stop, drawing weapons and using handcuffs and other restraints will violate the Fourth Amendment." Robinson, supra, at 1015. A police officer who terrorizes a civilian by brandishing a weapon in that civilian's face may not cause physical injury, but he has certainly laid the building blocks for a civil rights claim. Id., citing Petta v. Rivera, 143 F.3d 895, 905 (5th Cir. 1998). (citation omitted) (emphasis in original).

As continually argued throughout this instant motion, no probable cause existed to detain Caldwell or any one that evening. The lack of probable cause makes Officer Domecini, creates a triable issue of fact and one for the juror to decide.

3) **Taser Use Unreasonable**

Defendants' moving papers emphasize the vulgar and profane criticisms voiced by plaintiffs and many of the witnesses in the station.  However, insulting speech can not justify plaintiffs' detentions and arrests. "The freedom of individuals verbally to oppose or challenge

1 police action without thereby risking arrest is one of the principal characteristics by which we
2 distinguish a free nation from a police state." City of Houston, Texas v. Hill, 482 U.S. 451, 462-
3 463 (1987); Gulliford v. Pierce County, 136 F.3d 1345, 1349-1350 (9th Cir. 1998). Obscenely
4 criticizing the police is not a crime. Duran v. City of Douglas, 904 F.2d 1372, 1377 (9th Cir.
5 1990). "While police, no less than anyone else, may resent having obscene words and gestures
6 directed at them, they may not exercise the awesome power at their disposal to punish
7 individuals for conduct that is not merely lawful but protected by the First Amendment." Id. at
8 1378.

While Domcini argues that she there is no credible evidence to support Plaintiff's claims regarding taser use, in fact there is sufficient evidence to support that she was near him with the taser. Specifically, Fernando Anicete testified in his deposition that: " Domecini and the third time I power walked up, she pulled the taser out." Deposition of Fernando Aniciete, Pages 169 2-4. This is clear evidence that in fact Domecini had the taser in her hand. Based on this evidence the MSA must be denied.

**4) No Qualified Immunity Applies Here (under state law or otherwise)**

FEDERAL LAW

As demonstrated by the preceding analysis and the extensive evidentiary record in this case, the plaintiffs' Fourth and Fourteenth Amendment rights were violated by the individual defendants. Defendants' repeated claims that their actions were reasonable are all disputed issues of fact, which precludes summary judgment on the qualified immunity claims. Santos v. Gates, 287 F.3d 846, 855 n.12 (9th Cir. 2002). The rights asserted by plaintiffs: wrongful detention, arrest without probable cause, multiple terrorizing applications of excessive force, and the grossly unjustified killing of Oscar Grant when he was prone and offering his hands for cuffing, are neither obscure nor subtle. The police misconduct at issue is clearly established as violating clearly established law.

If there is one irreducible minimum in our Fourth Amendment jurisprudence, it is that a police officer may not detain an individual simply on the basis of suspicion in the air. No matter how peculiar, abrasive, unruly or distasteful a person's conduct may be, it cannot justify a police

stop unless it suggests that some specific crime has been, or is about to be, committed, or that there is an imminent danger to persons or property.

STATE LAW

California has waived sovereign immunity for claims arising from police excessive force. Robinson v. County of Solano, 278 F.3d 1007, 1016 (9thCir. 2002); Megargee v. Wittman, 550 F.Supp. 2d 1190, 1208 (E.D.CA 2008); Scruggs v. Haynes, 252 Cal. App. 2d 256, 264 (1967). For years, police officers have not been immune from liability for wrongful actions causing injury or death. Davis v. Kendrick, 52 Cal. 2d 517, 518-519 (1959); Scruggs, supra (citing cases dating from 1920). Individual officers are subject to suit for excessive force injuries, and public entities employing such officers are also liable on a respondeat superior basis. Mary M. v. City of Los Angeles, 54 Cal. 3d 202, 215 (1991); Cal. Gov. C. § 815.2(a).

Defendants contend they are entitled to summary judgment on the state law claims because of the immunity provided by California Government Code section 820.2. This statute protects actions by government employees which require the exercise of discretion. However, discretionary immunity under Government Code section 820.2 is reserved for basic policy-level decision-making. Johnson v. State, 69 Cal. 2d 782, 793 (1968). It does not protect unreasonable tactical choices. Bell v. State of California, 63 Cal. App. 4th 919, 929 (1998). It does not protect against allegations that police officers used excessive force. Scruggs, supra, 252 Cal. App. 2d at 264-268.

**D) Domenici is Liable for Racial Discrimination and Conspiracy to Violate Civil Rights (42 U.S.C. §1985)**

**E) State and Common Law Claims Valid Based on Analysis set forth above**

Joint action is sufficient to support claims for state law torts. See, e.g., Bell v. State of California, 63 Cal. App. 4th 919, 927-928 (1998)(motion for directed verdict properly denied where four officers from two different agencies participated in an unlawful arrest of plaintiff accomplished by means of excessive force); Tekle, supra, 457 F.3d at 1102 (all 20 officers pointing weapons at 11 year-old child were subject to liability for assault and for battery, although only one officer picked him up by handcuff chain). All of the officers and intentionally

1 | inflicted emotional distress.

## CONCLUSION

For al the reasons set fort above, the MSA must be denied.

Respectfully submitted,

Dated: March 14, 2011

LAW OFFICES OF SHIMEA C. ANDERSON

SHIMEA C. ANDERSON
Attorney for
JOHNTU CALDWELL

LAW OFFICES OF
SHIMEA C. ANDERSON
385 Grand Avenue, Suite 201
Oakland, CA 94610