Dale L. Allen, Jr., 145279
Kevin P. Allen. 252290
ALLEN, GLAESSNER,
HAZELWOOD & WERTH
180 Montgomery St., Suite 1200
San Francisco, CA 94104
Telephone:     415.697.2000
Facsimile:     415.813.2045
Email:     dallen@aghwlaw.com
           kallen@aghwlaw.com

Attorneys for Defendant
GARY GEE


Alison Berry Wilkinson, SBN 135890
Berry | Wilkinson | Law Group
4040 Civic Center Drive, Suite 200
San Rafael, CA 94903
Telephone:     415.259.6638
Facsimile:     877.259.3762
Email:     alison@berrywilkinson.com

Attorneys for Defendant
MARYSOL DOMENICI


Michael L. Rains, SBN 91013
RAINS LUCIA STERN, P.C.
2300 Contra Costa Boulevard
Pleasant Hill, CA 94523
Telephone:     925.609.1699
Facsimile:     925.609.1690
Email: Mrains@rlslawyers.com

Attorneys for Defendant
JOHANNES MEHSERSLE

William R. Rapoport, SBN 47086
LAW OFFICES OF WILLIAM R.
RAPOPORT
634 Bair Island Road, Suite 400
Redwood City, CA 94063
Telephone:     650.340.7107
Facsimile:     650.572.1857
Email: williamrapoport@yahoo.com

Attorney for Defendant
ANTHONY PIRONE


Waukeen Q. McCoy, SBN 168228
LAW OFFICES OF WAUKEEN Q.
MCCOY
703 Market Street, Suite 1300
San Francisco, CA 94103
Telephone:  415.675.7705
Facsimile: 415.675.2530
Email:  mail@mccoyslaw.com

Attorneys for Plaintiff
OSCAR J. GRANT, JR.


Jessica R. Barsotti, SBN 209557
LAW OFFICES OF JESSICA
BARSOTTI
5032 Woodminster Lane
Oakland, CA 94602
Telephone:  510.530.4078
Facsimile: 510.530.4725

Attorneys for Plaintiff
ESTATE OF JOHNTUE CALDWELL

1

2

3            **UNITED STATES DISTRICT COURT**

4            NORTHERN DISTRICT OF CALIFORNIA

5

6    WANDA JOHNSON, individually and as          CASE NO.:  C09-00901 EMC
     personal representative of the ESTATE of
7    OSCAR J. GRANT III, the ESTATE OF           Consolidated Cases:
     OSCAR J. GRANT III, SOPHINA MESA            C09-04014 EMC  (Oscar Grant, Jr.)
8    as Guardian ad Litem of minor, T.G.,        C09-04835 EMC (Bryson, et al.)
                                                 C10-00005 EMC (Caldwell)
9
                         Plaintiffs,
10
            vs.
11                                               JOINT PRE-TRIAL CONFERENCE
     BAY AREA RAPID TRANSIT                      STATEMENT
12   DISTRICT; GARY GEE, in his official
     capacity as CHIEF OF POLICE for BAY         Pretrial Conf:    May 27, 2014
13   AREA RAPID TRANSIT DISTRICT,                Time:             2:30 p.m.
     JOHANNES MEHSERLE individually             Courtroom:         5
14   and in his official capacity as a police    Judge:            Hon. Edward M. Chen
     officer for BART; MARYSOL
15   DOMENICI, individually and in her           Trial Date:       June 9, 2013
     official capacity as a police officer for
16   BART, ANTHONY PIRONE,
     individually and in his personal capacity
17   as a police officer for the Bay Area Rapid
     Transit District; and DOES 1-50,
18   inclusive,
                         Defendants.
19
     _____/
20

21

22          The parties to the above-entitled action jointly submit this Joint Pretrial Statement

23   pursuant to this Court's Order setting a Pretrial Conference for May 27, 2014 at 2:30 p.m.

24

25

26

27

28
                                             -2-

1. **The Action**

    a. **Substance of the Action.** A brief description of the substance of claims and defenses which need to be decided.

        (1) **Description by Defendants Domenici, Gee, Pirone, and Mehserle of the Substance of the Action**

Following summary adjudication motions and multiple settlement conferences concerning four consolidated cases[1], the remaining claims proceeding to trial involve only the cases of *Estate of Caldwell v. Bay Area Rapid Transit District,* Case No. C10-00005 EMC*,* which asserts claims only against Defendants MARYSOL DOMENICI, GARY GEE, JOHNANNES MEHSERLE, and ANTHONY PIRONE; and *Oscar Grant, Jr. v. Bay Area Rapid Transit District,* Case No. C09-04014, which asserts claims only against Defendant JOHANNES MEHSERLE.

All the claims in this consolidated action stem from the events that occurred in the early morning hours of January 1, 2009 on the train platform at the Fruitvale BART Station in Oakland, California.  Around 2:00 a.m., Defendant BART Police Officers MARYSOL DOMENICI, ANTHONY PIRONE, and JOHANNES MEHSERSLE, along with other members of the BART Police Department, responded to a dispatched report of a fight on a south-bound train that was carrying a "crush-load" of passengers returning from New Year's festivities.   As part of the investigation into whether the fight occurred, the Plaintiffs in the now-settled *Bryson* action (Jack Bryson, Jr., Nigel Bryson, Carlos Reyes, Michael Greer, Fernando Anicete, Jr.) were detained along with Oscar Grant III. During his arrest, Oscar Grant III was shot by Officer Johannes MEHSERLE, and later died from his injuries.  Following the shooting, and as the police were trying to release

---

[1] The lead case in this consolidated action is *Johnson v. Bay Area Rapid Transit District, et al.,* Case No. C09-00901 EMC, involved claims brought by the mother of Oscar Grant III, his Estate, as well as the guardian of his daughter. That case settled.  Consolidated with the *Johnson* case were claims by the individuals who were detained by BART police (Jack Bryson, Jr., Nigel Bryson, Carlos Reyes, Michael Greer, and Fernando Anicete, Jr.) before and after the shooting of Oscar Grant III (*Bryson et al. v. Bay Area Rapid Transit District* (Case No. C09-04835).  That case is pending settlement approval by the BART Board of Directors.

the train to depart, Plaintiff CALDWELL had interactions with the police that resulted in his being on the train when it departed the station.

### i. *Oscar Grant, Jr. v. Bay Area Rapid Transit District, et al.,* Case No. C09-04014 EMC

Oscar GRANT, JR., the father of Oscar Grant III, pleaded only a single cause of action pursuant to 42 U.S.C. section 1983: the denial of a familial relationship.[2] The Complaint alleges:

> Defendants, acting under color of state law, and without due process of law, deprived Plaintiff of his right to a familial relationship by seizing decedent, his only child, by use of unreasonable, unjustified and deadly force and violence, causing injuries which resulted in decedent's death, all without provocation and did attempt to conceal their excessive use of force and hide the true cause of decedent's demise to deprive Plaintiff of his right to seek redress, all in violation of rights, privileges, and immunities secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

(See, CV-09-04014 EMC, Docket No. 1 [Grant Jr. Complaint])

Following summary judgment, the sole remaining Defendant for that claim is JOHANNES MEHSERLE.  The claims against all other Defendants, DOMENICI, PIRONE, KNUDTSON, and WOFFINDEN, were dismissed. (See, CV-09-00901, *Johnson* Docket No. 207 [Memorandum & Order Re Cross Motions for Summary Judgment] at 52:9-11)

As noted by Judge Patel in her Memorandum & Order Re: Cross Motions for Summary Judgment:

> ... [P]arents have a Fourteenth Amendment liberty interest in the companionship and society of their children." *Wilkinson v. Torres,* 610 F.3d at 546, 554 (9th Cir. 2010).  "Official conduct that 'shocks the conscience' in depriving parents of that interest is cognizable as a violation of due process."  *Id.*  The "shocks the conscience" standard may be met by a showing that an officer engaged in excessive force with "deliberate

---

[2] Counsel for Oscar Grant, Jr. has notified Defendants that he intends to amend his complaint to include additional causes of action.  Defendants have prepared their pretrial statement only based on the existing causes of action, not on the proposed amendments.

indifference" or that he "acted with a purpose to harm ... unrelated to legitimate law enforcement objectives." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Whether a claim should be analyzed under the deliberate indifference standard or purpose to harm standard depends upon the degree to which, under the circumstances, actual deliberation is practical. *Wilkinson*, 610 F.3d at 554. The Ninth Circuit counsels that "our cases ... require that when an officer encounters fast paced circumstances presenting competing public safety obligations, the purpose to harm standard must apply." *Porter*, 546 F.3d at 1139. Finding this the appropriate measure here, the court considers defendants" arguments under the purpose to harm standard.

Firstly, plaintiffs have not proffered evidence supporting the conclusion that Pirone, Domenici, Knudtson, or Woffinden integrally participated in the shooting of Grant, the action from which plaintiffs" claim here originates. Accordingly, Pirone, Domenici, Knudtson or Woffinden's motions for summary judgment as to this claim is GRANTED.

Mehserle argues that he did not act with a purpose to harm that was unrelated to legitimate enforcement objectives. "Under the Fourteenth Amendment, ... a denial of due process 'is to be tested by an appraisal of the totality of facts in a given case.'" *Id.* at 1141 (citing *County of Sacrament v. Lewis*, 523 U.S. 833, 850 (1998)). This analysis is fact-intensive and is similar to the reasonableness test required in Fourth Amendment excessive force actions. *Id.* Indeed, an officer's "motives must ... be assessed in light of the law enforcement objectives that can *reasonably* be found to have justified his actions." *Id.* (emphasis added). As stated above, there is a question of material fact whether either the detentions, the arrests, or the use of force, including deadly force, was lawful under the totality of the circumstances and consequently whether they constitute a legitimate law enforcement objective so as to relieve defendants of liability here. *See, e.g., id.* at 1142.

(*Johnson* Docket 207, at p. 37, line 9 through p. 38, line 9.)

   ii.   ***Estate of Caldwell v. Bay Area Rapid Transit District, et al.,
         Case No. C10-00005 EMC***

Plaintiff Johntue CALDWELL rode with the *Bryson* Plaintiffs (Michael Greer, Jackie Bryson, Jr., Nigel Bryson, Carlos Reyes, and Fernando Anicete, Jr.) on the train from San Francisco. CALDWELL watched the events involving his friends unfold, and was on the platform at the time the *Bryson* Plaintiffs were detained, as well as when Oscar Grant III was shot. He then departed on the train as it left the station in the chaotic

-5-

minutes after the shooting.  As summarized by Judge Patel in her Memorandum & Order

Re: Cross Motions for Summary Judgment (*Johnson* Docket No. 207):

> Caldwell alleges that after Mehserle shot Grant, Domenici pushed him against the idling train and detained him there.  He alleges that she pointed her Taser in his face, then hit the side of the train to signal to the train operator to reopen the now-closed doors.  After the door opened, Caldwell alleges that Domenici shoved him on the train, forcing him to leave the scene.  *See* Docket No. 1 74-2 (Caldwell Depo.) at 80:1-81:25; 120:14-22.

(Docket 207, at p. 46, lines 11-15.)

Plaintiff CALDWELL has pleaded causes of action under 42 U.S.C. §1983 for

unreasonable seizure and unlawful detentions, as well as state law claims for a violation

of Cal. Civ. Code § 52.1, intentional infliction of emotional distress, and assault and

battery. The remainder of his claims Defendant DOMENICI were dismissed or

adjudicated on summary judgment.[3]

Judge Patel summarized the claim under Cal. Civ. Code § 52.1, as follows:

> California Civil Code section 52.1 provides for damages if a person "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney ..."  Cal. Civ. Code 52.1(a).  A claim under section 52.1 is established upon proof of a violation of the Fourth Amendment.  *See Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 850 (2004). ... A genuine issue of material fact remains as to whether defendants violated plaintiffs' Fourth Amendment rights and whether defendants did so through the use of coercion and force....

(Docket No. 207 at p. 47, lines 8-19.)

---

[3] On summary judgment, the Court dismissed with prejudice Caldwell's First Cause of Action brought under 41 U.S.C. section 1981 (*Johnson* Docket No. 207 at 50:21-23); granted summary judgment as to his Third Cause of Action brought under 42 U.S.C. section 1983 alleging excessive force (*Johnson* Docket No. 207 at 51:25-27); dismissed with prejudice the Fifth Cause of Action brought under 42 U.S.C. section 1985 (*Johnson* Docket No. 207 at 50:21-23); dismissed with prejudice the Sixth Cause of Action brought under 42 U.S.C. section 1986 (*Johnson* Docket No. 207 at 50:21-23); granted summary judgment on the *Monell* claims brought under 42 U.S.C. section 1983 in the Seventh Cause of Action (*Johnson* Docket No. 207 at 52:14-16); and granted summary judgment on the state law claims brought under California Civil Code section 51.7.

-6-

Judge Patel summarized the claim for assault and battery, as follows:

> Plaintiffs allege assault and battery against defendant officers. "A police officer in California may use reasonable force to make an arrest, prevent escape or overcome resistance, and need not desist in the face of resistance." *Edston v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998) (citing Cal. Pen. Code § 835a). "The standard jury instruction in police battery actions recognizes this: 'A peace officer who uses unreasonable or excessive force in making a lawful arrest or detention commits a battery upon the person being arrested or detained as to such excessive force.'" *Id.* Under state law, in a battery action against a police officer, a plaintiff must show that the use of force was unreasonable. *Id.* at 1272. As stated above, there are issues of material fact as to whether defendants' use of force against plaintiffs was reasonable.

(Docket No. 207 at p. 48, line 22, to p. 49, line 3.)

Defendant DOMENICI defends these claims on the ground that she never seized, detained, or used force upon Plaintiff CALDWELL, and that her contacts with CALDWELL were both justified and reasonable given the totality of the circumstances. As to the state law claim for intentional infliction of emotional distress, Defendant DOMENICI additionally defends the claim on the ground that it does not survive CALDWELL's death. *See,* Cal. Civ. Proc. Code §§ §377.34; *Neil v. Farmers Ins. Exch.* (1978) 21 Cal. 3d 910, 920, n.3; *Estate of Martin v. Cal. VA*, 560 F.3d 1042, 1051 (9th Cir. 2009).

Defendant PIRONE defends these claims on the ground that he never had any contact or interaction of any kind with Plaintiff CALDWELL, and thus should be dismissed from the action.

Defendant MEHSERLE was never served with the CALDWELL Complaint, and has thus never responded and should be dismissed from this action.

Defendant GEE defends these claims on the ground that he never had any verbal or physical contact with Plaintiff CALDWELL, and thus should be dismissed from the action.

-7-

**(2)      Plaintiff Estate of Caldwell's Description of the Substance of the Action**

The Caldwell complaint arises from the January 1, 2009 incident which lead to the shooting death of Oscar Grant III  by BART officer Mehserle. The Caldwell complaint alleges that Officers Pirone and Domenici unlawfully detained and seized Caldwell just in the moments before and after Grant was shot in the back by Mehserle, that Domenici assaulted and battered Caldwell by putting a taser to his face and shoving him into the BART train, that Chief Gee was deliberately indifferent to his rights because of his failure to reassign Domenici and Pirone after learning of an alleged non-professional relationship between the two, and that Gee, Domenici and Pirone violated his rights under California's 52.1.

Neither Pirone, nor Domenici had any articulable facts that would lead a reasonable police officer to detain, seize or arrest anyone that night. The series of events that was initiated by Pirone's illegal detention of the Brysons, Greer, Grant and Reyes lead to the unlawful detention of Caldwell by Domenici and the killing of Grant by Mehserle. The alleged personal relationship between Prione and Domenici, which is alleged to have been known by Gee, contributed to the constitutional violations and contributed to the harm complained of by Caldwell.

**(3)      Plaintiff Oscar Grant Jr.'s Description of the Substance of the Action**

This action arises out of the unlawful detention, arrest, assault and wrongful death of twenty-two year old, Oscar Julius Grant III, at the hands of the named Bay Area Rapid Transit District Police Officers during the early morning hours of New Year's Day 2009. The outrageous instance of police misconduct while clearly avoidable ultimately proved deadly, leaving Mr. Grant's father without a son and his Grant's daughter without a father.  Mr. Grant was unarmed and laying prone on the ground with his hands, behind his back when Officer Mehserle intentionally pulled his gun from its holster and with two hands fired it upon Mr. Grant.  He then callously fired a single fatal shot into Mr. Grant's back, leaving him to die without administering any first aid.

1    Videotape of the incident along with other evidence proves that this was an Officer

2  driven event.  While it is uncontested that Officer Mehserle fired the shot that ultimately

3  resulted in Oscar Grant's death, Officer Pirone and Domenici played a significant role in

4  the setting in motion the chain of events that brought about Mr. Grant's tragic demise.

5  For instance, Officer Pirone needlessly pointed and threatened to use his taser against Mr

6  Grant throughout the course of his detention and arrest that fateful morning; so did

7  Domenici.  In addition, Pirone unjustifiably physically attacked Mr. Grant on two

8  separate occasions.  Perhaps just as egregious, he yelled racial slurs into Mr. Grant's face

9  moments before Officer Mehserle ambushed Mr. Grant from behind.  The

10  aforementioned conduct served to further aggravate the circumstances surrounding Oscar

11  Grant's tragic death.  Further, it is plaintiff Grant, Jr.'s position that it was a lack of

12  leadership, supervision, and discipline that contributed to the Officers' beliefs that they

13  could engage in the conduct.

14    Oscar GRANT, JR., the father of Oscar Grant III, pleaded a cause of action

15  pursuant to 42 U.S.C. section 1983: the denial of a familial relationship. The Complaint

16  alleges:

17    Defendants, acting under color of state law, and without due process of law,

18  deprived Plaintiff of his right to a familial relationship by seizing decedent, his only

19  child, by use of unreasonable, unjustified and deadly force and violence, causing injuries

20  which resulted in decedent's death, all without provocation and did attempt to conceal

21  their excessive use of force and hide the true cause of decedent's demise to deprive

22  Plaintiff of his right to seek redress, all in violation of rights, privileges, and immunities

23  secured by the First, Fourth, and Fourteenth Amendments to the United States

24  Constitution.

25    However, Plaintiff Oscar Grant will move to amend his complaint to add a claim

26  under the Fourth Amendment, which would include Officer Pirone, Domenici, and

27  BART, under California's Wrongful Death Statute and Survival Statutes.

28

**b.**   **Relief Prayed.**  A statement of all relief sought, particularly itemizing all elements of damages claimed.

### (1)   Defendants Domenici, Gee, Mehserle, and Pirone

Defendants DOMENICI, GEE, MEHSERLE and PIRONE all seek judgment in their favor on all remaining claims, and against Plaintiffs.

Defendant DOMENICI further contends that Plaintiff CALDWELL should not be permitted to present any evidence of alleged damages to the jury both because he has failed to establish a causal link between Defendants conduct and his damages, and because he failed to fulfill the mandatory duty under Fed. R. Civ. P. Rule 26(a)(1)(A)(iii) to disclose a computation of each category of damages claimed.

### (2)   Plaintiff Estate of Caldwell

Zeporia Smith, as the personal representative of Johntue Caldwell, prays for damages stemming from the unlawful detention and seizure of Caldwell. These damages include emotional distress damages for the pain, embarrassment, loss of dignity and humiliation stemming from his deprivation of rights, medical expenses for the emotional distress stemming from his visits with Dr. Marlin Griffith and lost income immediately after the incident. Caldwell also seeks punitive damages stemming from the actions of Dominici and Pirone as well as attorney's fees for prosecuting this action. Both Domenici and Pirone integrally participated in the unlawful detention of Caldwell. Caldwell also seeks damages for assault and battery by a police officer stemming from the pointing of a taser in his face by Dominici and the shove onto the BART train in the form of emotional distress and pain and suffering.  Caldwell has asserted a claim of deliberate indifference against Chief Gee and BART for failing to change assignments of PIRONE and DOMENICI after gaining knowledge of an alleged non-professional relationship between the two. Finally, Caldwell seeks damages for violation of California Civil Code section 52.1 for a violation of Caldwell's 4th Amendment rights.

-10-

(3)     **Plaintiff Oscar Grant, Jr.**

Plaintiff Oscar Grant Jr., seeks to recover monetary damages as averred in the Complaint, including but not limited to punitive damages to deter the Officers from this type of conduct in the future.  If a finding is made that BART has inadequately trained, supervised and/or disciplined its officers thereby causing the subject incident to take place, plaintiff will seek injunctive relief in addition to monetary damages.

2.     **Factual Basis of the Action**

a.     **Undisputed Facts.**  A list of all stipulated facts, i.e., all facts which the parties will stipulate to for incorporation into the trial record without the necessity of supporting testimony or exhibits.

1.     The San Francisco Bay Area Rapid Transit District ("BART") is a special district organized and existing under the laws of the State of California.

2.     BART operates a rail-based transit system through multiple cities and counties in the San Francisco Bay Area.

3.     The BART Police Department is responsible for providing law enforcement services for that rail-based transit system.

4.     In the early morning hours of January 1, 2009, BART Police Officer Marysol DOMENICI was patrolling the beat that included the Coliseum and Fruitvale stations along with her assigned partner, Officer Anthony PIRONE.

5.     In the early morning hours of January 1, 2009, BART Police Officer Johannes MEHSERLE was on-duty and was partnered with Officer Jon Woffinden.

6.     Six separate cameras recorded the events of January 1, 2009 at the Fruitvale station at various different times and from various different angles.  The six cameras included the BART platform camera, as well as the cameras of five BART patrons:  Karina Vargas, Daniel Liu, Margarita Carazo, Tommy Cross, and Jamil Dewar.

-11-

b.     **Disputed Factual Issues.**  A list of all factual issues that remain to be tried, stating the issues with the same generality/specificity as any contested elements in the relevant jury instructions and organized by counts.

(1)     **Defendants' Disputed Factual Issues:**

1.     Whether DOMENICI had any physical contact with CALDWELL.

2.     Whether PIRONE had any contact or interaction with CALDWELL of any kind.

3.     Whether DOMENICI restricted CALDWELL's ability to leave the Fruitvale Platform.

4.     Whether DOMENICI pushed CALDWELL against the idling train and detained him there.

5.     Whether DOMENICI pointed her Taser at CALDWELL's face.

6.     Whether DOMENICI hit the side of the train to signal the train operator to reopen the closed train doors.

7.     Whether DOMENICI shoved CALDWELL onto the train after the train doors opened forcing him to leave the scene.

8.     Whether MEHSERLE pushed Oscar Grant III to the platform, or whether Grant propelled himself to the platform after MEHSERLE attempted to apply handcuffs.

9.     Whether MEHSERLE announced his intention to Tase Oscar Grant III before standing up and shooting him with his firearm.

10.    Whether Oscar Grant III was compliant or resisting at the time he was shot.

11.    Whether Oscar Grant III's hands were in the middle of his back when the shot was fired.

-12-

12.   Whether Defendant GARY GEE was at BART Police
Headquarters at Lake Merritt when the incident occurred.

13.   Whether Defendant GARY GEE never had any contact or
involvement or involvement or knowledge of the incident
until he learned while at his office in BART Police
Headquarters at Lake Merritt that an officer had been
involved in a shooting sometime after Plaintiff CALDWELL
had already left the Fruitvale Station.

**(2)   Plaintiffs' Disputed Factual Issues:**

1.   Whether PIRONE integrally participated in the unlawful
detention/seizure of CALDWELL.

2.   Whether DOMENICI restricted CALDWELL's ability to leave
the Fruitvale Platform.

3.   Whether DOMENICI pushed CALDWELL against the idling
train and detained him there.

4.   Whether DOMENICI pointed her Taser at CALDWELL's face.

5.   Whether DOMENICI shoved CALDWELL onto the train after
the train doors opened forcing him to leave the scene.

6.   Whether DOMENICI retaliated against CALDWELL for First
Amendment protected speech.

7.   Whether Domenici was attempting to "clear the platform" at
the time she pushed CALDWELL into the train.

8.   Whether MEHSERLE pushed Oscar Grant III to the platform,
or whether Grant propelled himself to the platform after
MEHSERLE attempted to apply handcuffs.

9.   Whether MEHSERLE announced his intention to Tase Oscar
Grant III before standing up and shooting him with his firearm.

-13-

10. Whether Oscar Grant III was compliant or resisting at the time he was shot.

11. Whether Oscar Grant III's hands were in the middle of his back when the shot was fired.

12. Whether Mehserle intended to use his firearm.

13. Whether it was reasonable for Mehserle to use his taser in the first place.

14. Whether Pirone set into motion all of the foregoing acts that occurred on January 1, 2009.

15. Whether any or all of the Defendants lawfully stopped any and all of the Plaintiffs.

16. Whether any or all of the Defendants lawfully detained any and all of the Plaintiffs.

17. Whether any or all of the Defendants lawfully arrested any and all of the Plaintiffs.

18. Whether any or all of the Defendants used excessive force against any and all of the Plaintiffs.

19. Whether DOMENICI had any physical contact with GRANT.

20. Whether PIRONE had any contact whatsoever with GRANT.

21. Whether DOMENICI restricted GRANT's ability to leave the Fruitvale Platform.

22. Whether DOMENICI unlawfully and illegally pushed GRANT.

23. Whether DOMENICI pointed her Taser at at GRANT.

24. Whether DOMENICI used her Taser to intimidate GRANT.

25. Whether DOMENICI had used any verbal or physical contact with GRANT.

26. Whether the altercation on the train had ended by the time the train arrived at Fruitvale Station

-14-

27.   Whether the defendant officers detained decedent Grant without reasonable suspicion supported by artuculable facts.

28.   Whether the defendant officers detained decedent Grant and his companions based on their race or ethnicity.

29.   The nature and degree of force applied by the defendant officers and other BART police offiers in effecting the detention of decedent Grant and his companions.

30.   Whether the force used by defendant Pirone was reasonable and necessary, or excessive.

31.   The nature and degree of evasion or resistance offered to BART officers' detention efforts by decedent Grant, his companions and others at the scene prior to Grant being placed under arrest.

32.   Whether there was a factual basis for Offier Mehserle to deploy his taser at any point during decedent Grant's detention and/or arrest.

33.   Whether decedent Grant, any of his companions and/or others at the scene acted aggressively against or committed an assault on any BART officer.

34.   Whether Officer Pirone made racial slurs during the course of the incident.

35.   Whether Grant actively resisted the efforts of Officer Mehserle and Pirone to secure Grant's hands behind him and handcuff him immediately prior to being shot by Officer Mehserle.

36.   Whether Officer Mehserle intended to fire his Taser at decedent Grant, instead of his service pistol;

37.   What facts, if any, are there that support defendant Meshserle's contention that he intended to fire his Taser and not his gun;

-15-

38. Whether defendant Mehserle made statements after the shooting that indicate his mental state at the time of the shooting.

39. Whether and when BART officers at the scene administered emergency medical assistane to decedent Grant and/or called for professional medical care.

40. Whether BART and PART Police Chief Gary Gee, named as a defendant in his official capacity, adequately trained, supervised and disciplined BART police Officers with respect to detentions, arrest and the use of force.

41. Whether or not BART and PART Police Chief Gary Gee, named as a defendant in his official capacity was deliberately indifferent to the rights of Plaintiffs by failing to modify assignments after gaining knowledge of a non-professional relationship between PIRONE and DOMENICI.

42. Whether the executive summary of BART's own internal affairs investigation into this incident identifies several policies, customs, and/or practices that contributed to the genesis of this incident, namely whether an acute lack of leadership, training and consistent discipline created a "permissive culture" of tolerating the violation of citizens' rights by BART Police Officers.

3.   **Disputed Legal Issues**.  *Without extended legal argument,* a concise statement of each disputed point of law concerning liability or relief, citing supporting statutes and decisions.

    a.   ***Oscar Grant, Jr. v. Bay Area Rapid Transit District, et al.,*** **Case No. C09-04014 EMC**

        (1)   **Defendant Mehserle's Disputed Legal Issues:**

            i.   Whether Defendant MEHSERLE, given the totality of the circumstances, acted with a purpose to harm unrelated to legitimate law enforcement objectives.  *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008); *Wilkinson v. Torres*, 610 F.3d at 546, 556 (9th Cir. 2010); *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998).

            ii.   Whether the force used was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm.  *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998); *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).

            iii.   Whether Plaintiff OSCAR GRANT, JR. had a sufficiently deep attachment and commitment to his son to assert a claim under the Fourteenth Amendment.  *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001); *Love v. Watts*, 414 F.3d 183 (7th Cir. 2005).

        (2)   **Plaintiff Oscar Grant, Jr.'s Disputed Legal Issues**

            i.   Violation of the Fourth Amendment to the U.S. Constitution (unreasonable seizure, initial detention, arrest, excessive force, arbitrary and/or unreasonable use of deadly force), brought pursuant to 42 U.S.C. Section 1983.

-17-

      ii.     Violation of Fourteenth Amendment to the U.S. Constitution (due process, deliberate indifference to dedent Grant's medical needs), brought pursuant to 42 U.S.C. Section 1983.

      iii.    Wrongful death, inviolation of the Fourth, Fifth, Ninth and Fourteenth Amendments to the U.S. Constitution, brought pursuant to 42 U.S.C. Section 1983.

      iv.    Violation of plaintiff's civil rights to familial relationship (First, Fourth, and Fourteenth Amendments to the U.S. Constitution), brought pursuant to 42 U.S.C. Section 1983.

      v.     Entity and supervisory liability of BART and Chief Gee, brought under 42 U.S.C. Section 1983.

      vi.    Survival action of decedent Grant's estate, brought pursuant to 42 U.S.C. Section 1983.

      vii.   Wrongful death (negligence), that will be brought through Plaintiff Grant pursuant to California Code of Civil Procedure Section 377.60 and 377.61.

      viii.  Violation of decedent Grant's state and federal rights, brought pursuant to California Civil Code Section 52.1.

      ix.    Violation of decedent Grant's civil rights (racial discrimination), brought pursuant to California Civil Code Section 51. 7.

**b.**    ***Estate of Caldwell v. Bay Area Rapid Transit District, et al.,*** **Case No. C10-00005 EMC**

    **(1)**    **Defendants Domenici, Gee, and Pirone's Disputed Legal Issues:**

      i.     Whether Defendants DOMENICI, GEE, or PIRONE unlawfully seized/detained Plaintiff CALDWELL in violation of the Fourth Amendment.   An attempted seizure is not a violation of the Fourth Amendment. *County of Sacramento v.*

-18-

1      *Lewis*, 523 U.S. 833, 845 n.7 (1998); *Brendlin v. California*,

2      551 U.S. 249, 254 (2007).

3   ii.   Whether, in view of all the circumstances surrounding the

4          incident involving Plaintiff CALDWELL, a reasonable

5          person would have believed that his freedom of movement

6          had been restrained.  *United States v. Mendenhall*, 446 U.S.

7          544, 554 (1980) (opinion of Stewart, J.)); *Florida v. Royer*,

8          460 U.S. 491, 501-502 (1983); *Franklin v. Foxsworth*, 31

9          F.3d 873, 876 (9th Cir. 1994) (citing *Graham v. Connor*, 490

10          U.S. 386, 387 (1989).

11   iii.   Whether Plaintiff CALDWELL was seized/detained by

12          means of physical force or show of authority.  *I.N.S. v.*

13          *Delgado* 466 U.S. 210, 215 (1984).

14   iv.   If Plaintiff CALDWELL was seized/detained, was the

15          seizure/detention of Plaintiff CALDWELL reasonable.

16          *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599(1989).

17   v.   Whether Defendant DOMENICI, GEE, or PIRONE violated

18          Civil Code section 52.1 by interfering with Plaintiff

19          CALDWELL's enjoyment of constitutional rights by use of

20          threats, intimidation, or coercion.  Cal. Civil Code 52.1(a). To

21          prevail on a Bane Act claim, a plaintiff must demonstrate (1)

22          an act of interference with a legal right by (2) intimidation,

23          threats or coercion.  *Jones v. Kmart Corp.,* 17 Cal. 4th 329,

24          334 (1988).  The disputed legal issue therefore has two

25          separate components:

26          a)   Whether Defendant DOMENICI, GEE, or PIRONE

27              violated Civil Code section 52.1 by using a show of

28

-19-

1                                                authority to detain CALDWELL. *Venegas v. County*

2                                                *of Los* Angeles, 32 Cal. 4th 820, 843 (2004).

3                          b)        If Plaintiff CALDWELL was detained, whether there

4                                                   was a separate act committed by Defendant

5                                                   DOMENICI, GEE, or PIRONE amounting to

6                                                intimidation, threat, or coercion.  *Cole v. Doe*, 387

7                                                F.Supp. 2d 1084 (2005).   There is no Bane Act

8                                                violation for a wrongful detention without a separate

9                                                volitional act intended to interfere with the

10                                              constitutional right.  *Shoyoye v. Cnty. of L.A.*, 203

11                                              Cal. App. 4th 947, 959 (2012); *Cole v. Doe*, 387

12                                              F.Supp. 2d 1084 (2005); *Bender v. Cnty. of L.A.*,217

13                                              Cal. App. 4th 968, 978-79 (2013); *Gant. v. Cnty. of*

14                                              *L.A.*, 765 F. Supp. 2d 1238 (C.D. Cal. 2011).

15                vi.      Whether Defendant DOMENICI, GEE, or PIRONE

16                               committed assault and battery against Plaintiff CALDWELL

17                               by using unreasonable force.  California Penal Code §242

18                               defines battery as "any willful and unlawful use of force or

19                               violence upon the person of another."  To succeed on a claim

20                               for battery under California law, a plaintiff must establish

21                               three elements:  "(1) defendant did an act which resulted in a

22                               harmful or offensive contact with the plaintiff's person; (2)

23                               plaintiff did not consent to the contact; and (3) the harmful or

24                               offensive contact caused injury, damage, loss, or harm to

25                               plaintiff."  *Knapps v. City of Oakland*, 647 F.Supp. 2d 1129,

26                               1166 (N.D. Cal. 2009) (citing *Piedra v. Dugan*, 123 Cal. App.

27                               4th 1483, 1495).  "[T]o prevail on a claim of battery against a

28                               police officer, the plaintiff bears the burden of proving the

-20-

1    officer used unreasonable force." *Hernandez v. Cnty. of*

2    *Marin*, 11-CV-03085-JST, 2013 U.S. Dist. LEXIS 109094,

3    2013 WL 4525640 at *8 (N.D. Cal. Aug 2, 2013 (quoting

4    *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102

5    (2004).

6         a)    Whether Plaintiff CALDWELL can rely upon the

7               alleged use by DOMENICI of her Taser to support his

8               claim of assault and battery.  Police officers are

9               permitted to "use reasonable force to make an arrest,

10              prevent escape, or overcome resistance, and need not

11              desist in the face of resistance." *P.A. v. United States,*

12              C 10-2811 PSG, 2013 U.S. Dist. LEXIS 103880 (N.D.

13              Cal. July 24, 2013) (quoting *Munoz*, 120 Cal. App. 4th

14              at 1102).  The determination of whether an officer

15              breached such duty is "analyzed under the

16              reasonableness standard of the Fourth Amendment"

17              *Hernandez*, 2013 U.S. Dis. LEXIS 109094 (quoting

18              *Munoz*, 120 Cal. App. 4th at 1102).  Since the Court

19              granted Defendant DOMENICI qualified immunity for

20              her use of a Taser during the event, it cannot, as a

21              matter of law, be found to have violated the Fourth

22              Amendment.  See, *Johnson* Docket No. 207 at 51:25-

23              27.

24    vii.   Whether Plaintiff CALDWELL's claim for Intentional

25           Infliction of Emotional Distress must be dismissed because it

26           is barred by Cal. Civ. Proc. Code 377.20.  *See* also*,* Cal. Civ.

27           Proc. Code §377.34; *Neil v. Farmers Ins. Exch.* (1978) 21

28

Cal. 3d 910, 920, n.3; *Estate of Martin v. Cal. VA*, 560 F.3d 1042, 1051 (9th Cir. 2009).

  viii. Whether Plaintiff GRANT, JR. or Plaintiff CALDWELL can present any evidence or argument of BART or Chief Gee's official duty constitutional violations because GRANT, JR. did not allege a <u>Monell</u>/municipal violation, and the law of the case in the ruling on summary judgment by Judge Patel dismissed the <u>Monell</u>/municipal violation.

  ix. Whether Plaintiff GRANT, JR. or Plaintiff Caldwell can present evidence or argument of Chief Gee's supervisorial liability when no cause of action exists in the complaint filed by Grant Jr., and Chief Gee had no direct supervision of the officers at the scene and no integral participation in the incident.

 **(2)** **Plaintiff Estate of Caldwell's Disputed Legal Issues:**

  i. Whether DOMINICI unlawfully detained or seized CALDWELL against the train car before Grant was shot.

  ii. Whether DOMINICI unlawfully detained or seized CALDWELL by shoving him into the train immediately after Grant was shot.

  iii. Whether PIRONE integrally participated in the unlawful seizure or detention of CALDWELL.

  iv. Whether PIRONE detained any individuals that evening without reasonably articulable facts required by law.

  v. Whether PIRONE used unreasonable force against Michael Greer or Oscar Grant.

  vi. Whether Defendant GEE was deliberately indifferent to the rights of Plaintiffs by failing to change assignments of PIRONE and

-22-

DOMENICI after learning of an alleged non-professional

relationship between them before allowing them to be partnered.

vii. Whether there was a violation of CALDWELL's state and federal

rights, brought pursuant to California Civil Code Section 52.1.

viii. Whether DOMENICI retaliated against CALDWELL for protected

speech.

**4.** **Estimate of Trial Time**.  An estimate of the number of hours needed for the presentation of each party's case.

 a.   ***Oscar Grant, Jr. v. Bay Area Rapid Transit District, et al.,*** **Case No. C09-04014 EMC**

  **(1)**   Plaintiff Oscar GRANT, JR.:  120 hours

  **(2)**   Defendant Johannes MEHSERLE: 60 hours

 b.   ***Estate of Caldwell v. Bay Area Rapid Transit District, et al.,*** **Case No. C10-00005 EMC**

  **(1)**   Plaintiff Johntue CALDWELL:  40 hours

  **(2)**   Defendant Marysol DOMENICI:  12  hours

  **(3)**   Defendant Anthony PIRONE:  1/2  hour

  **(4)**   Defendant Gary GEE: 1/2  hour

**5.**   **Trial Alternatives and Options.**

 a.   **Settlement Discussions:**

To date, the parties have participated in two settlement conference with Magistrate Judge Spero.  As a result of these settlement conference, the *Johnson* and *Bryson* cases fully resolved.  Neither the *Caldwell* nor *Grant, Jr.* cases have settled.  Further negotiations are not likely to be productive.  Rule 68 offers have been issued by Defendants, and were rejected by Plaintiffs

 b.   **Consent to Trial Before a Magistrate Judge.**

All parties have declined to proceed to trial before a Magistrate Judge.

1    **c.    Amendments or Dismissals.**

2        Plaintiff Oscar Grant, Jr., intends to file a motion to amend his complaint to add 4th

3    Amendment claims under the California wrongful death and survival statutes.

4        Defendant PIRONE requests dismissal from the *Caldwell* case on the ground that

5    he had no verbal or physical contact with CALDWELL and, therefore, cannot be subject

6    to any liability under any of the remaining causes of action.  Plaintiff CALDWELL has

7    declined to dismiss Defendant PIRONE.

8        Defendant DOMENICI requests that Plaintiff CALDWELL's claim for Intentional

9    Infliction of Emotional Distress be dismissed on the ground that it does not survive

10   CALDWELL's death.  *See,* California Code of Civil Procedure §377.34; *Neil v. Farmers*

11   *Ins. Exch.* (1978) 21 Cal. 3d 910, 920, n.3; *Berkley v. Dowds* (2007) 152 Cal. App. 4th

12   518, 534; *Estate of Martin v. Cal. VA*, 560 F.3d 1042, 1051 (9th Cir. 2009). Plaintiff

13   CALDWELL has declined to dismiss this cause of action.

14       Defendant DOMENICI requests dismissal of Plaintiff CALDWELL's action

15   because he has failed to establish a causal link between the alleged unlawful detention

16   and his damages, and because he failed to fulfill the mandatory duty under Fed. R. Civ. P.

17   Rule 26(a)(1)(A)(iii) to disclose a computation of each category of damages claimed.

18   Plaintiff CALDWELL has declined.

19       Defendant MEHSERLE requests dismissal from the *Caldwell* case as he was never

20   been served, nor did he have any physical or verbal contact with Plaintiff CALDWELL

21   on January 1, 2009.  Plaintiff CALDWELL has agreed that Defendant MEHSERLE

22   should be dismissed from his action.

23       Defendant GEE requests requests dismissal from the *Caldwell* case on the ground

24   that he had no verbal or physical contact with CALDWELL and, therefore, cannot be

25   subject to any liability under any of the remaining causes of action.  Plaintiff

26   CALDWELL has declined to dismiss Defendant GEE.

27

28

**d.    Bifurcation or Separate Trial of Issues.**  A statement of whether bifurcation or a separate trial of specific issues is feasible and desired.

No parties consider bifurcation or a separate trial of specific issues feasible or desired.

6.    **Witnesses**: *See, Appendix A.*

For each party, a list of all witnesses likely to be called at trial, including those appearing by deposition.  For each witness, there should be a short statement of the substance of his or her testimony and an estimate regarding the lengthy of testimony (including direct and cross-examination).  If the witness is an expert witness, the short statement should clearly state the expert's theories and conclusions and the bases therefor, in addition, the expert's curriculum vitae and report (if any) should be attached.  If there are objections to a live witness's testimony, whether in whole or in part, that objection should be raised through a motion in limine.  For objections to deposition testimony, see Part B.8, infra.

7.    **Exhibits**: *See, Appendix B.*

A *joint* exhibit list in tabular form, with (a) a column that briefly describes the exhibit; (b) a column that describes for what purpose the party will offer the exhibit and identifies its sponsoring witness; (c) a column that states any objections to the exhibit; (d) a column that briefly responds to the objections; and (e) a blank column for the Court's use.  Before this list is filed with the Court, the parties shall meet and confer, in person, to consider exhibit numbers, to eliminate duplicate exhibits and confusion over exhibits, and to make a good faith effort to stipulate to admissibility. If stipulation is not possible, the parties shall make every effort to stipulate to authenticity and foundation absent a legitimate (not tactical) objection.  In addition to the above, a *joint* statement in which each party identifies fifteen (15) of the opposing party's exhibits for which the identifying party seeks rulings on objections *in advance* of trial.  A party may identify, *e.g.,* an exhibit that it believes is representative of other exhibits such that the identified exhibit will provide a bellwether as to how the Court will rule on other exhibits.

-25-

**8.**    **Use of Discovery Responses**: *See, Appendix C.*

      Excerpts of interrogatory responses, responses to requests for admission, and deposition testimony (with specific line references identified) that each party intends to present at trial. If there are objections to the use of written responses, the parties should include a joint memorandum that briefly states the objecting party's objection and the opposing party's response. If there is an objection to the general subject matter of a deponent's testimony, the objection should be made through a motion in limine. If specific objections were made during the deposition that are still in need of a Court ruling, the parties should include a joint memorandum that identifies the deposition testimony at issue and that briefly states the objecting party's objection (including any counter-designation) and the opposing party's response (including any counter-designation). the Court expects the parties to meet and confer in good faith in the attempt to resolve those specific objections regarding deposition testimony before any memorandum regarding objections are filed.


Dated: 13 May 2014           Respectfully submitted,

                                        Berry | Wilkinson | Law Group


                                        By: _____*Alison Berry Wilkinson*_____
                                        Alison Berry Wilkinson
                                        Attorney for Marysol Domenici


Dated: May 13, 2014           Respectfully submitted,

                                          Allen, Glaessner, Hazelwood & Werth LLP


                                        By_____/s_____
                                        Dale L. Allen, Jr.
                                        Attorney for Gary Gee

1      Dated:  May 13, 2014           Respectfully submitted,

2                                      Rains Lucia Stern

3

4                               By_____/s_____

5                               Michael L. Rains

                                 Attorneys for Johannes Mehserle

6

7

8      Dated:  May 13, 2014           Respectfully submitted,

                                      Law Offices of William R. Rapoport

9

10                              By_____/s_____

                                 William R. Rapoport

11                                 Attorney for Anthony Pirone

12

13     Dated:  May 13, 2014           Respectfully submitted,

                                      Law Offices of Waukeen McCoy

14

15

16                              By_____/s_____

                                 Waukeen McCoy

17                                 Attorney for Oscar Grant, Jr.

18

19     Dated:  May 13, 2014           Respectfully submitted,

                                      Law Offices of Jessica Barsotti

20

21

22                              By_____/s_____

                                 Jessica Barsotti

23                                 Attorney for Johntue Caldwell

24

25

26

27

28