1  Alison Berry Wilkinson, SBN 135890
2  Berry | Wilkinson | Law Group
   4040 Civic Center Drive, Suite 200
3  San Rafael, CA 94903
   Telephone/Facsimile: 415.259.6638
4  Email:      alison@berrywilkinson.com
5
6  Attorney for Defendant Marysol Domenici
7
8              **UNITED STATES DISTRICT COURT**
9              NORTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11 WANDA JOHNSON, individually and as personal representative of the ESTATE of OSCAR J. GRANT III, the ESTATE OF OSCAR J. GRANT III, SOPHINA MESA as Guardian ad Litem of minor, T.G., | CASE NO.:  C09-00901 EMC<br><br>Consolidated Cases:<br>C09-04014 EMC  (Oscar Grant, Jr.)<br>C09-04835 EMC (Bryson, et al.)<br>C10-00005 EMC (Caldwell) |

11 WANDA JOHNSON, individually and as
12 personal representative of the ESTATE of
   OSCAR J. GRANT III, the ESTATE OF
13 OSCAR J. GRANT III, SOPHINA MESA
   as Guardian ad Litem of minor, T.G.,
14
                           Plaintiffs,
15        vs.
16
   BAY AREA RAPID TRANSIT DISTRICT;
17 GARY GEE, in his official capacity as
   CHIEF OF POLICE for BAY AREA
18 RAPID TRANSIT DISTRICT,
   JOHANNES MEHSERLE individually and
19 in his official capacity as a police officer for
   BART; MARYSOL DOMENICI,
20 individually and in her official capacity as a
   police officer for BART, ANTHONY
21 PIRONE, individually and in his personal
   capacity as a police officer for the Bay Area
22 Rapid Transit District; and DOES 1-50,
   inclusive
23
                          Defendants.
24
25

CASE NO.:  C09-00901 EMC

Consolidated Cases:
C09-04014 EMC  (Oscar Grant, Jr.)
C09-04835 EMC (Bryson, et al.)
C10-00005 EMC (Caldwell)

DEFENDANT MARYSOL DOMENICI'S
TRIAL BRIEF

Pretrial Conf:    May 27, 2014
Time:             2:30 p.m.
Courtroom:        5
Judge:            Hon. Edward M. Chen

Trial Date:       June 9, 2013

26
27
28

Pursuant to this Court's Pretrial Order issued on August 9, 2013 (Docket No. 278), Defendant MARYSOL DOMENICI ("DOMENICI") hereby submits this Trial Brief concerning the remaining claims that are pending trial in *Caldwell v. Bay Area Rapid Transit District,* Case No. C10-00005 EMC.[1]

# I

## INTRODUCTION

Just before 2:00 a.m. on January 1, 2009, Johntue Caldwell ("Caldwell") was travelling on a BART train headed toward Hayward following a night of festivities in San Francisco.  Just before that train arrived at the Fruitvale station, Oscar Grant III ("Grant") and another gentleman were involved in a fight, which Caldwell helped to quell. Passengers on the train reported the fight to the train operator.  At the Fruitvale station, the group decided to disembark after learning the police had been called.

After the police arrived, Caldwell, along with his friends Jamil Dewar ("Dewar"), Mario Pangelina ("Pangelina"), and Fernando Anicete, Jr. ("Anicete"), observed the police detain his friends Grant, Michael Greer, Jackie Bryson, Jr., Nigel Bryson, and Carlos Reyes.  Caldwell understood that they had been detained as part of an investigation into the fight, and watched the events involving his friends unfold.  Caldwell was still on the platform at the time  Grant  was shot at 02:11:03 a.m.  After the shooting, Caldwell stepped back onto the train of his own volition. Because Caldwell and Dewar were preventing the doors from closing, in order to permit the train to leave the station, Domenici, along with

---

[1] This action was consolidated with three others that arose out of the events that occurred on the Fruitvale Platform in the early morning hours of January 1, 2009.  The lead case in this consolidated action is *Johnson v. Bay Area Rapid Transit District, et al.,* Case No. C09-00901 EMC, involved claims brought by the mother of Oscar Grant III, his Estate, as well as the guardian of his daughter. After a number of those claims were adjudicated on summary judgment, the case settled.  Consolidated with the *Johnson* case were claims brought by the individuals who were detained by BART police (Jack Bryson, Jr., Nigel Bryson, Carlos Reyes, Michael Greer, and Fernando Anicete, Jr.) before and after the shooting of Oscar Grant III (*Bryson et al. v. Bay Area Rapid Transit District*, Case No. C09-04835).  After a number of those claims were adjudicated following summary judgment, a Ninth Circuit appeal, and remand motions, the case settled. Also pending trial is *Oscar Grant, Jr. v. Bay Area Rapid Transit District,* Case No. C09-04014, which asserts claims only against Defendant Johannes Mehserle.  Summary judgment was granted in Defendant Domenici's favor in the *Grant, Jr.* case, Docket No. 207, P. 37, lns. 24-25

Officer Jon Woffinden ("Woffinden"), assisted in clearing the doors.  The train departed the scene at 02:12:48 a.m. with Caldwell on board.

The claims in *Estate of Caldwell*[2] concern only what transpired during the one minute and forty-five second period that elapsed between the shooting of Grant, and the departure of the BART train from the Fruitvale station.   During this chaotic period, Defendant Domenici, along with Officer Woffinden, were responsible for crowd control, as well as maintaining the security of the shooting scene, and clearing the platform so the train could depart.  Caldwell asserts that in those chaotic minutes, Domenici pushed him against the idling train and detained him there, pointed her Taser in his face, then hit the side of the train to signal the train operator to reopen the closed train doors. After the door opened, Caldwell alleges that Domenici shoved him on the train, forcing him to leave the scene.  Domenici denies those allegations.

These events were recorded on multiple video cameras, which clearly show that the actions alleged never occurred.  The videos show that Domenici never seized, detained, or used any force upon Plaintiff Caldwell, and that her contacts with Caldwell were reasonable, proper, and justified given the totality of the circumstances.

## II

## THEORY OF THE CASE

Caldwell has outstanding claims against Domenici for violations of his Fourth Amendment right to be free from unlawful seizure and detention (Second and Third Causes of Action), and related state law claims for assault and battery (Thirteenth Cause of Action), intentional infliction of emotional distress[3] (Tenth Cause of Action), as well as a violation of California Civil Code §52.1 (Eight Cause of Action).

---

[2] Decedent Caldwell died on July 15, 2011, after he was shot multiple times in the head while he was seated inside a parked car at a gas station in Hayward.  (*Caldwell*, Docket No. 42) That death is unrelated to the events at issue in this action.

[3] Domenici has requested in the Joint Pretrial Statement that the intentional infliction of emotional distress cause of action be dismissed on the ground that it does not survive Caldwell's death.  *See,* Cal. Civ. Proc. Code  §377.34; *Neil v. Farmers Ins. Exch.* 21 Cal. 3d 910, 920, n.3 (1978); *Estate of Martin v. Cal. VA*, 560 F.3d 1042, 1051 (9th Cir. 2009).

DEFENDANT DOMENICI'S TRIAL BRIEF

Specifically, Caldwell alleges that after Officer Mehserle shot Grant, Domenici pushed him against the idling train and detained him there. He alleges that she then pointed her Taser in his face, hit the side of the train to signal to the train operator to reopen the now-closed door, and then, once the door opened, shoved him on the train, forcing him to leave the scene. *See* Docket No. 174-2 (Caldwell Depo.) at 80:1-81:25; 120:14-22; Docket No. 207, at p. 46, lines 11-15.

There is no evidence that Domenici detained Caldwell in any way. The videos plainly reveal that she did not push him against the side of the train, nor did she point the Taser in his face. None of the people standing in close proximity at the time of the events - Officer Woffinden, Karina Vargas ("Vargas"), and Dewar - saw what Caldwell claims happened.

All Domenici did was assist in clearing train doors, which were blocked by Caldwell and Dewar, who had already stepped onto the train before Domenici even approached. The videos also distinctly show that Caldwell had a clear path to exit the Fruitvale Platform by the stairs at any time after the shot was fired, but he chose the board the train.

Caldwell further alleged in a sworn declaration that he was just observing the events, and was acting "peaceably" at the time Domenici approached, detained, and assaulted him. See Docket No. 174-1, p.3, lns. 8-9. The video evidence, as well as Caldwell's deposition testimony, directly contradicts that claim. The video clearly depicts Caldwell menacing the officers, yelling, attempting to encroach upon the scene and interfere with the detention of his friends, and being confrontational. Caldwell himself admits, and the video unmistakably depicts, that he was angry after the shooting, and threw his phone at the officers so hard that it broke when it landed.

### III

### KEY EVIDENCE

Defendant Domenici identifies the following items of key evidence relevant to the events:

1. The Fruitvale Platform Video

2. Video taken by Dewar and Testimony of Dewar

   a. Dewar was with Caldwell on the platform at the time Grant was shot, and remained in close proximity to Caldwell from the time the shot was fired to the time the train departed.  Mr. Dewar began his video recording 50 seconds before the shooting occurred, and filmed continuously until the train - with Caldwell and Dewar on it - left the station.  Shot from the perspective of Dewar and Caldwell, the video show them advancing along the platform toward Officers Domenici and Woffinden who are creating a distance barrier between the crowd and the officers attempting to handcuff Grant.  The camera captures the sound of the gunshot, and then what occurs following the gunshot and through to the time the train departs.

3. Video taken by Vargas and her testimony

   a. Vargas was standing in close proximity to Caldwell at the door of the train car he ultimately entered before the train departed. Her video captured not just the movements of Caldwell, but also the conversations that were occurring between him and his friends at the time of the events.

4. Contradictory and inherently inconsistent testimony given by Caldwell in his deposition, sworn declaration, and statement to investigators.

5. Testimony of Officer Woffinden.

6. Testimony of Officer Domenici, which has been consistent whether given to investigators, provided during the preliminary hearing, criminal trial, arbitration hearing, and deposition.

7. Testimony of expert Michael Schott ("Schott") and his forensic analysis of the videos taken of the events.

DEFENDANT DOMENICI'S TRIAL BRIEF

a. Using BART surveillance video and numerous videos shot by witnesses, forensic imaging expert Schott constructed a synchronized video recording that captures virtually every second of the events that night.  It allows one to locate each person involved on the platform throughout almost the entirety of the series of confrontations which occurred.  The video examination reveals that Domenici never detained Caldwell nor pushed her Taser into his face.  In particular, the synchronized video reveals:

i. At about the time the shot was fired at 02:11:03 a.m., Caldwell was not near Domenici nor had he been detained by any officer.  Caldwell, along with his friends Anicete, Pangelina, and Dewar, had been freely moving about the platform in the minutes leading up to the shooting.

ii. The platform video shows Caldwell freely moving about the platform after the shooting.

iii. After the shot was fired, Caldwell, Pangelina, and Dewar made their way to the rear of car #3 and remained there.  Domenici did not follow and/or attempt to detain Caldwell.

iv. At about 02:11:31 a.m. Caldwell moved toward the officers, threw a cell phone toward Officer Woffinden,  and again retreated to the rear of car #3.

v. No image within the entire video record, from any of the six video cameras, shows anyone touching Caldwell's head, face, or body, with a Taser.

vi. With respect to Domenici, there were only four seconds during the entire event during which she and Caldwell within a few feet

**DEFENDANT DOMENICI'S TRIAL BRIEF**

of one another.  The only views of Domenici's Taser show it

pointed downward.

8.  Testimony of expert Dave Rose concerning tactics and training for

maintaining scene security, and cover officer roles and responsibilities.

**IV**

**CONTROLLING ISSUES OF LAW**

**A.     Unlawful Detention/Seizure**

Justice Stewart in his concurring opinion in *U.S. v. Mendenhall*, 446 U.S. 544, 554

(1980) set forth a test for determining whether a person has been seized, stating:

> …a person has been "seized" within the meaning of the Fourth
> Amendment only if, in view of all of the circumstances
> surrounding the incident, a reasonable person would have
> believed that he was not free to leave.  Examples of
> circumstances that might indicate a seizure, even where the
> person did not attempt to leave, would be the threatening
> presence of several officers, the display of a weapon by an
> officer, some physical touching of the person of the citizen, or
> the use of language or tone of voice indicating that compliance
> with the officer's request might be compelled. (citation omitted)
> In the absence of some such evidence, otherwise inoffensive
> contact between a member of the public and the police cannot,
> as a matter of law, amount to a seizure of that person.

The Supreme Court adopted Justice Stewart's test in *Florida v. Royer* 460 U.S. 491,

498 (1983).

In  *I.N.S. v. Delgado*, 466 U.S. 21, 211-212 (1984), the Court addressed whether an

INS "factory survey" conducted while employees continued to move about constituted

seizure of entire work force.  The Court held that a mere survey where the defendant was

only touched on the shoulder was not a seizure. Id. at 215.  In so holding, the Court stated

that:

> Only when the officer, by means of physical force or show of
> authority, has restrained the liberty of a citizen may we
> conclude that a 'seizure' has occurred." Terry v. Ohio, supra, at

-7-

19, n. 16. While applying such a test is relatively
straightforward in a situation resembling a traditional arrest,
see Dunaway v. New York, 442 U.S. 200, 212-216 (1979), the
protection against unreasonable seizures also extends to
"seizures that involve only a brief detention short of traditional
arrest."

In later cases the Court focused on whether the officer effectuated the alleged seizure via means of physical force or show of authority.  In *Brower v. Cnty. of Inyo*, 489 U.S. 593, 594 (1989), a driver of a stolen automobile was killed at the end of a high-speed nighttime chase when his vehicle collided with a truck which county police officers had positioned across the road to serve as a roadblock.  The decedent's family brought suit pursuant to 42 U.S.C. §1983 alleging the roadblock constituted an unreasonable seizure by excessive force.  Id.  The Court noted that a:

…seizure alone is not enough for § 1983 liability; the seizure
must be "unreasonable." Petitioners can claim the right to
recover for Brower's death only because the unreasonableness
they allege consists precisely of setting up the roadblock in
such manner as to be likely to kill him.

Id. at 599.

Various panels in the Ninth Circuit have also examined unreasonable detention/seizures.  In *Fuller v. Vines*, 36 F.3d 65, 66 (9th Cir. 1994) )(overruled on other grounds in *Robinson v. Solano County*, 278 F.3d 1007),  plaintiffs filed suit alleging civil rights violations resulting from the police shooting the family dog and a police officer pointing a gun at one of the plaintiffs after he objected to the shooting.  With respect to the alleged seizure of plaintiff, citing *Mendenhall*, the court held that "the action of the officers must be a restraint on liberty such that the person reasonably believes he is not free to leave. (*citation omitted*) It is not sufficient to constitute a seizure when the restraint is only that the person is not free to attack the officers."  *Fuller*, 36 F.3d at 68.  In assessing interactions between police officers and citizens in the Fourth Amendment context, courts examine the totality of the circumstances.  A person is seized by the police and thus

-8-

entitled to challenge the government's action under the Fourth Amendment when the officer, "by means of physical force or show of authority," terminates or restrains his freedom of movement. *Florida v. Bostick,* 501 U.S. 429, 434 (1991) citing *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968).

In *Graham v. Connor,* 490 U.S. 386, 396 (1989) the Supreme Court stated that determining the reasonableness of a seizure "requires careful attention to the facts and circumstances *of each case,* including the severity of the crime at issue, whether the suspect poses an *immediate threat* to the safety of the officers or others, and whether he is *actively resisting arrest* or attempting to *evade arrest* by flight." (emphasis added).

In *Franklin v. Foxsworth*, 31 F.3d 873, 876 (9th Cir. 1994), the Ninth Circuit applied the *Graham* approach to inquiry into all detentions, holding that the test of "reasonableness applies to the manner in which the police conduct *any* seizure, including limited detentions. In addition, the test is applicable to other forms of police conduct, and not just to the use of force." As noted in *Franklin*, the reasonableness of a detention must be determined "from the perspective of a reasonable officer on the scene." *Id.* at 877.

Finally, as noted in *Brendlin v. California,* 551 U.S. 249, 254 (2007), "there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." In *County of Sacramento v. Lewis*, 523 U.S. 833, 845 n.7 (1998), the Court held that "attempted seizures are beyond the scope of the Fourth Amendment."

The disputed legal issues here include:

1. Whether Domenici unlawfully seized/detained Plaintiff Caldwell in violation of the Fourth Amendment. An attempted seizure is not a violation of the Fourth Amendment.. *Lewis*, 523 U.S. at 845 n.7; *Brendlin*, 551 U.S. at 254.

2. Whether, in view of all the circumstances surrounding the incident involving Plaintiff Caldwell, a reasonable person would have believed that his freedom

-9-

of movement had been restrained.  *Mendenhall*, 446 U.S. at 554 (opinion of Stewart, J.);  *Royer*, 460 U.S. at 501-502; *Franklin*, 31 F.3d at 876  (citing *Graham*, 490 U.S. at 387.

3.  Whether Plaintiff Caldwell was seized/detained by means of physical force or show of authority.  *Delgado*, 466 U.S. at 215.

4.  If Plaintiff Caldwell was seized/detained, was the seizure/detention of Plaintiff Caldwell reasonable.  *Brower*, 489 U.S. at 599.

**B.    Civil Code section 52.1**

California Civil Code section 52.1 provides for damages if a person "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney ..."  Cal. Civ. Code 52.1(a).  A claim under section 52.1 is established upon proof of a violation of the Fourth Amendment.  *See Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820, 850 (2004).

A wrongful arrest and detention, without more, cannot constitute force, intimidation, or coercion for purposes of Civ. Code, § 52.1.  *Shoyoye v. Cnty. of L.A.*, 203 Cal. App. 4th 947, 960 (2012); *Gant v. Cnty. of L.A.,* 765 F. Supp. 2d 1238, 1252 (C.D. Cal. 2011).

The disputed legal issues here include:

1.  Whether Defendants Domenici, Gee, or Officer Anthony Pirone ("Pirone") violated Civil Code section 52.1 by interfering with Plaintiff Caldwell's enjoyment of constitutional rights by use of threats, intimidation, or coercion.  Cal. Civil Code 52.1(a). To prevail on a Bane Act claim, a plaintiff must demonstrate (1) an act of interference with a legal right by (2) intimidation, threats or coercion.  *Jones v. Kmart Corp.,* 17 Cal. 4th 329,

-10-

334 (1988).  The disputed legal issue therefore has two separate components:

    a.    Whether Defendant Domenici, Gee, or Pirone violated Civil Code section 52.1 by using a show of authority to detain Caldwell. *Venegas*, 32 Cal. 4th at 843 (2004).

    b.    If Plaintiff Caldwell was detained, whether there was a separate act committed by Defendant Domenici, Gee, or Pirone amounting to intimidation, threat, or coercion.  *Cole v. Doe*, 387 F. Supp. 2d 1084, 1103 (2005).   There is no Bane Act violation for a wrongful detention without a separate volitional act intended to interfere with the constitutional right.  *Shoyoye*, 203 Cal. App. 4th at 959; *Cole*, 387 F. Supp. 2d at 1103; *Bender v. Cnty. of L.A.*, 217 Cal. App. 4th 968, 978-79 (2013); *Gant*, 765 F. Supp. 2d at 1252.

## C.    Assault and Battery

 California Penal Code section 242 defines battery as "any willful and unlawful use of force or violence upon the person of another."  To succeed on a claim for battery under California law, a plaintiff must establish three elements:  "(1) defendant did an act which resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss, or harm to plaintiff."  *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1166 (N.D. Cal. 2009) (citing *Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495).  "[T]o prevail on a claim of battery against a police officer, the plaintiff bears the burden of proving the officer used unreasonable force."  *Hernandez v. Cnty. of Marin*, 11-CV-03085-JST, 2013 U.S. Dist. LEXIS 109094, 2013 WL 4525640 at *8 (N.D. Cal. Aug 2, 2013) (quoting *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 (2004).

    A police officer in California may use reasonable force to make an arrest, prevent escape or overcome resistance, and need not desist in the face of resistance." *Edston v. City*

*of Anaheim*, 63 Cal. App. 4th 1269, 1272-1273 (1998) (citing Cal. Pen. Code § 835a).

"The standard jury instruction in police battery actions recognizes this:  'A peace officer who uses unreasonable or excessive force in making a lawful arrest or detention commits a battery upon the person being arrested or detained as to such excessive force.'"  *Id.* at 1273.  Under state law, in a battery action against a police officer, a plaintiff must show that the use of force was unreasonable.  *Id.* at 1273.  The determination of whether an officer breached such duty is "analyzed under the reasonableness standard of the Fourth Amendment." *Hernandez*, 2013 U.S. Dis. LEXIS 109094 (quoting *Munoz*, 120 Cal. App. 4th at 1102).

>    **D.    Intentional Infliction of Emotional Distress**

Plaintiff's claim for Intentional Infliction of Emotional Distress must be dismissed because it is barred by Cal. Civ. Proc. Code 377.20.   *See* also*, Cal. Civ. Proc. Code §377.34; *Neil* 21 Cal. 3d at 920, n.3; *Estate of Martin v. Cal. VA*, 560 F.3d at 1051.


Dated:  13 May 2014                    Respectfully submitted,


>                                       Berry | Wilkinson | Law Group


>                                       By   *Alison Berry Wilkinson*
>                                       Alison Berry Wilkinson
>                                       Attorney for Marysol Domenici

-12-