Waukeen Q. McCoy, Esq. [SBN: 168228]
LAW OFFICES OF WAUKEEN Q. McCOY
703 Market Street, Suite 1300
San Francisco, California  94103
Telephone:   (415) 675-7705
Facsimile:   (415) 675-2530
E-mail:   mail@mccoyslaw.com

Attorneys for Plaintiff,
   Oscar Grant Jr., individually and as
   Personal Representative of
   The Estate Of Oscar Grant, III

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR GRANT, Jr., individually and as Personal Representative of the ESTATE OF OSCAR J. GRANT, III,<br><br>             Plaintiff,<br><br>vs.<br><br>BAY AREA RAPID TRANSIT DISTRICT (BART); GARY GEE, in his official capacity as CHIEF OF POLICE for BART; JOHANNES MEHSERLE, individually and in his official capacity as a police officer for BART; ANTHONY PIRONE, individually and in his official capacity as a police officer for BART; MARYSOL DOMENICI, individually and in her official capacity as a police officer for BART; and DOEs 50, inclusive              ,<br><br>             Defendants. | **Case No.:  C09-00901 EMC**<br><br>**Related Cases**:  C09-04014 EMC<br>                        (Oscar Grant Jr.)<br>                        C09-04835 EMC<br>                        (Bryson, et. al.)<br>                        C09-00005 EMC<br>                        (Caldwell)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE HIS AMENDED COMPLAINT**<br><br>**STATEMENT OF FACTS, POINTS 1- AND AUTHORITIES**<br><br>**DECLARATIONS OF WAUKEEN Q. McCOY & OSCAR J. GRANT, JR**<br><br>Action Filed: August 28, 2009<br>Trial Date:   June 9, 2014<br>Hearing:     June 3, 2014<br>Time:         9:30 a.m.<br>Location:   Court Room 5, 17th Floor<br>Judge:       Hon. Edward M. Chen |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Tuesday, June 3, 2014, at 9:30 a.m., or as soon thereafter as this matter may be heard in Courtroom 5, on the 17th Floor of the above-identified Court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff, Oscar Grant, Jr., by and though his attorneys of record, LAW OFFICES OF WAUKEEN Q. McCOY, as represented by Waukeen Q. McCoy, will move this Court for an Order, pursuant to Federal Rules of Civil Procedure, Rule 15(a)(2), granting him leave to amend his complaint on the grounds set herein below.

The motion is based on this notice and motion to amend a pleading, the attached Memorandum of Points & Authorities, Declaration I of Oscar J. Grant, Jr., Declaration II of Oscar J. Grant, Jr., and declaration of Waukeen Q. McCoy, such other oral and documentary evidence as may be presented at the hearing and all files and documents on file in this matter.

Date: May 20, 2014

Respectfully submitted,

_____
Waukeen Q. McCoy

## STATEMENT OF FACTS, POINTS & AUTHORITIES

### I. Introduction

Federal Rules of Civil Procedure, Rule 15(a)(2) provides for a party to seek leave of court to amend his/her complaint or any pleading in the absence of a written consent from opposing parties. The rule also states that the court should freely grant the requested leave in the interest of justice are served. It will frustrate the interests of justice if Plaintiff Oscar Grant, Jr., cannot assert a claim against the perpetrators of the killing of his son Oscar Grant, III, by BART police, acting under color of state law, because he allegedly cannot establish a close filial relationship with his son. It is only fair, just and efficient to permit him to assert claims on constitutional bases, namely, violation of his son's Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States and his own Fourteenth Amendment Rights in that pursuant to BART's promulgated policies, procedures, customs and practices, defendants, Mehserle, Pirone, and Domenici, unlawfully seized his son, using excessive force, assaulted and battered him with no probable cause, such unlawful violent acts finally leading to the shooting death by defendant, Mehserle, of his son, Oscar J. Grant, III, unarmed, prone on the ground, with his hands behind his back, and defendant Pirone sitting on his neck. He is also asserting his rights under the provisions of California's survivor action, wrongful death, and civil rights statutes.

Plaintiff, Oscar Grant, Jr., through his attorneys of record, sought the written permission of defendants on April 30, 2014, on May 9, 2014 and again on May 17th, for their consent and stipulation for him to file his amend complaint but defendants denied his request on all those occasions.

The initial complaint in the case on behalf of Plaintiff, Oscar Grant, Jr., was filed by his then attorney, Panos Lagos, Esq., on August 28, 2009. Other plaintiffs in the action, T.G., the minor daughter of Oscar Grant, III (killed by BART police) as represented by her Guardian *ad Litem* and mother, Sophina Mesa; the mother of Oscar Grant, III, Wanda Johnson, on her own

behalf and as the personal representative of the Estate of Oscar Grant, III; the Estate of Oscar Grant, III; settled all their claims prior to any hearing in the matter and are no longer involved in the case.

## II. Statement Of Facts

The facts are as stated in the appended Amended Complaint, but are repeated here for the Court's convenience.

1. During the early morning hours of January 1, 2009, Mr. Oscar J. Grant III was riding a Bay Area Rapid Transit District train back to the east bay after a night of celebrating New Year's Eve in San Francisco. He was accompanied by Ms. Sophina Mesa, the mother of his four-year-old child, and several other friends and acquaintances.

2. Somewhere close to the Lake Merritt BART Station, an alleged altercation broke out in the lead car on the train. The altercation allegedly lasted for only a couple of minutes and was punctuated by a brief exchange of pushing, shoving and punches. No parties were individually or specifically identified as being engaged in the alleged fight. There is no evidence that any physical injuries or acts of vandalism occurred in the course of the alleged altercation.

3. An anonymous passenger apparently used the train's emergency intercom to report an alleged fight on the train. The train operator relayed the passenger's report to BART dispatch. In response to the train operator's call, several BART police officers were dispatched to meet the train at the Fruitvale BART Station to quash the altercation; the officers were also told that no weapons were used in the fight. However, when the train arrived at the Fruitvale BART Station, everything was peaceful and normal. There was no evidence of any fight.

4. When the Train pulled into the Fruitvale BART Station platform, its doors opened and many of its passengers disembarked. The Train remained with its doors open on the

platform for several minutes. At or about this same time, several BART Police Officers, including but not limited to, Officers Johannes Mehserle ("Mehserle)", Anthony Pirone ("Pirone"), Marysol Domenici ("Domenici"), made their way onto the Station's platform.

5. While the train was detained at the station pending an investigation of the alleged fight, without ascertaining the facts and without any first hand information or knowledge of any one individual or individuals being involved in the alleged altercation, and without actually observing anyone engaged in any criminal activity, Officer PIRONE approached a window of the train, and immediately pointed his taser at OSCAR and his friend, Michael Greer (both are 22 year old African American men) who were seated in the train. He began cursing them, using foul language and racial slurs, and ordered them off the train. While OSCAR and GREER were exiting the train as ordered, PIRONE grabbed GREER by his hair and violently threw him to the ground, causing a deep gash across the bridge of his nose.

6. PIRONE then turned his attention to OSCAR, walked over to him, grabbed him, walked him over to a retaining wall where three other young men, all African American or Mexican American, were being detained by DOMENICI and DOEs 1 through 25. As these young detainees were standing near the retaining wall, PIRONE threatened to tase each of them in the face if they did not comply with his orders. Further, an unidentified DOE officer directed a racial slur at one of the young men. At the time of his detention and threats with the taser, PIRONE had not seen these young men commit a crime nor did he have any information that any of them had committed a crime. Neither PIRONE nor any of the other BART police officers had any probable cause to stop, detain, arrest, tase or assault any of them or kill Oscar Grant, III.

7. Next, PIRONE went back to the train. He once again began cursing and ominously warning the train's passengers about the consequences if he had to get on the train.

He then set his sights on OSCAR's friend, GREER. PIRONE stepped onto the train and walked up to GREER from behind. Without any warning he grabbed GREER by the scruff of his neck, pulled his hair and dragged him backwards off the train. Once outside the train car, he first attempted to throw GREER to the ground backwards. GREER verbally objected to the rough treatment. Nonetheless, PIRONE slung GREER to the ground and kneed him on or about GREER's upper body causing a pre-existing wound on GREER's nose to bleed.

8. The young men, along with the train's other passengers who were watching the disorderly conduct of the Police Officers, verbally responded to PIRONE's unwarranted use of force and blatant unprofessionalism. One more unidentified officer began handcuffing the young men despite not having any information identifying Oscar Grant, III, or any of the other young men being involved in the alleged fight or altercation on the train. DOMENICI got in the face of the young men and repeatedly pointed her taser at them threatening to tase them in the face. OSCAR continued to question the reason for his detention and the use of threats made against him the officers. Neither OSCAR nor any of the other young detainees acted in a physically aggressive or threatening manner toward DOMENICI. At the time she was threatening to use her taser or at any other time for that matter, the men had committed no crime.

9. As OSCAR and the other detainees were protesting their detention, PIRONE rushed over to where OSCAR was standing and aggressively assaulted and battered him. PIRONE's unwarranted and unjustified assault and battery caused OSCAR to drop to his knees where he immediately put his hands up to demonstrate he was surrendering himself to PIRONE. PIRONE proceeded to forcefully push OSCAR's face down toward the pavement while threatening to tase him. PIRONE then knelt down and dug his knee into OSCAR's upper back and neck and pushing OSCAR's face onto the pavement. OSCAR cried out telling PIRONE that

he could not breathe and that he was hurting him. He pleaded with him not to hurt him he had a four-year-old daughter who was waiting for him at home.

10. MEHSERLE who was standing nearby when PIRONE was assaulting and battering OSCAR, knelt down and restrained OSCAR's hands while PIRONE pinned Mr. OSCAR's face on the pavement. MEHSERLE stood up, asked PIRONE to step aside, reached down on his right side (his taser was on his left and he did not cross his arm to reach for his taser), deliberately drew his fire arm and pointed it directly at OSCAR's back and without any provocation or justification fired a single shot from his weapon into OSCAR's back as he lay face down on the platform, unarmed and defenseless. OSCAR's hands were behind his back and he posed no threat whatsoever to MEHSERLE or to any one else. OSCAR died of gun shot wounds a few hour later at a local hospital.

12. After shooting an unarmed OSCAR, MEHSERLE immediately handcuffed him and left him lying on the ground mortally wounded and without the benefit of immediate emergency medical care. OSCAR's friends repeatedly asked the officers present to administer first aid and call for an ambulance. None of the assembled BART officers attempted to render first aid to the mortally wounded OSCAR or call for an ambulance immediately. PIRONE and one or more of the other BART officers told the young men to "shut the fuck up" and warned them that if they better be quiet or the officers would not call an ambulance for OSCAR at all.

13. Within moments of the shooting, BART Police Officers immediately began seizing witnesses' cameras and other recording devices. The officers arrested the other young men on the platform. They were handcuffed and taken to BART Police Station against their will. They were forced to remain hand cuffed and in custody for over seven hours without being

questioned or charged, before they were released. To date, no criminal charges of any kind have been brought against any of them for any alleged crime.

14. The above-described intentional and/or negligent conduct by the defendants, and each of them, was a factual, direct and proximate cause of OSCAR's death and plaintiff's damages.

15. OSCAR died intestate and did not leave any assets to be probated. Unbeknownst to plaintiff GRANT, OSCAR's mother, Wanda Johnson, appointed herself as his personal representative and apparently represented her interests and those of the Estate of Oscar J. Grant III, in this lawsuit. GRANT does not know if she represented his interests at all and if the court ever notified of GRANT as an heir and his eligibility to serve as a personal representative of the Estate Of Oscar J. Grant III. She settled all her claims apparently based on violations of her rights, the rights of OSCAR's estate, and OSCAR's survivor rights under California law. There is nothing in the Court's records which provides that information. GRANT, the plaintiff herein, believes his rights and interests were not represented or protected by his former attorney, Panos Lagos or by Wanda Johnson and was not kept informed of the proceedings in the matter and how his rights and interests were being protected.

### III. Arguments
#### A. (i) Amendment Of Complaint

Fed. R. Civ. Proc., Rule 15(a)(2) provides that a party may amend his/her pleading only with the opposing party's written consent or the court's leave. It provides further that the court should freely grant the leave when justice so requires. Since defendants refused and denied him written or verbal permission to amend his complaint, Plaintiff GRANT is seeking by this motion, leave of this court to file his Amended Complaint. By this Amendment, Plaintiff, Oscar J. Grant, Jr., on behalf of himself, and as a personal representative of the ESTATE of his deceased son, is

asserting several additional causes of action against the same defendants and based on the same set of facts, same occurrences and the same instrumentality causing the occurrences.

For reasons that were never discussed with him, these causes of action included nor were not asserted in the original complaint filed on his behalf by his former attorney, Panos Lagos, in conspiracy with the other plaintiffs in this action and their attorney, John Burris, Esq., and with the defendants, and each of them, and their respective attorneys.

(ii) **Relation Back Doctrine**

Fed. R. Civ. Proc., Rule 15(c)(1)(B) also provides that an amendment to a pleading relates back to the date of the original pleading "when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading" for statutes of limitation purposes. Provision for amendment of pleading before trial, by leave of court, is in almost every code. In *Krupski v. Costa Crociere S.P.A.* 130 S.Ct. 2485 (2010), the U.S. Supreme court, while addressing Rule 15(c)(3), amending the name of the party against whom the claim is asserted, ruled that Rule 15 (c)(1)(c) plainly sets forth an exclusive list of requirements for relation back, and the amending party's diligence is not among them. Thus the rule is that the amending party delaying filing the amendment is not grounds for denial of leave to amend a pleading.

Like most jurisdictions, California has also adopted the Relation Back Doctrine for amended complaints alleging additional causes of action or theories of liability or different defendants, provided three criteria are met: i) that the amended complaint recites essentially the same facts; ii) essentially the same injury and iii) the same instrumentality. See *Sidney v. Superior Court* (1988) 198 Cal.App.3d 710; *Smeltzley v. Nicholson Mfg. Co.*, (1977) 18 Cal.3d 932 (same accident, same injuries); *Grundt v. City of Los Angeles* (1970) 2 Cal.3d 575.

In <u>Sidney v. Superior Court of Los Angeles County</u> (1988) 198 Cal.App.3d 710, the court held that the statute of limitations does not bar amending a compulsory cross-complaint to state a cause of action against the plaintiff for a different injury arising from the same accident where the cause of action was not barred when the original complaint was filed. Plaintiff GRANT's action was not barred when his original complaint was filed on August 28, 2009.

In <u>Quiroz v. Seventh Avenue Center</u> (2006) 140 Cal.App4th 1256, 1279, supports the position that

> "[A] claim that is first asserted by amendment after the limitations period has passed will not be barred so long as the amendment is based on the same general set of facts and involves the same *injury*. This holds true even where the amendment names or substitutes a new party plaintiff, as long as the new party plaintiff is not seeking to enforce a greater liability on the defendant" citing <u>Klopstock v. Superior Court</u> (1941) 17 Cal.2d 13, 20-22; <u>Pasadena Hospital Assn. v. Superior Court</u> (1988) 204 Cal.App.3d 1031, 1034-1037; <u>Garrison v. Board of Directors</u> (1995) 36 Cal.App.4th 1670.

In the present case, Plaintiff has recited the same material facts arising out of the same occurrence or incident; the same ultimate injury that resulted - the death of his son, shot in the back and killed by BART police; and by the same instrumentality, the son's death caused by Mehserle by shooting him in the back while he was prone on the ground with his hands behind his back. Based on these same circumstances, Plaintiff is including in his amended complaint, additional causes of action arising out of these same facts and occurrences, caused by the same instrumentality. He has not added any new facts. The facts are recited in the initial complaint.

There has been no prejudice to the defendants because they have been defending against the same causes of action asserted by the other plaintiffs in the case. Plaintiff did not know and was not advised of his rights by his previous attorney who did not protect his interests nor did he represent his interests in the initial complaint filed on his behalf, in collusion and conspiracy with the other plaintiffs and their attorney, John Burris, nor by any of the defendants, and their

respective attorneys. California case law requires that plaintiffs should include all heirs or at least name them as nominal defendants, and the defendants did not object nor bring an action for abatement, as discussed in greater detail in a later section. In view of these facts, circumstances, authorities cited, for applying the relation back doctrine, Plaintiff should be granted leave to file his amended complaint.

### B. Standing To Serve As Personal Representative Of The Estate Of Oscar J. Grant, III And to Assert Survival Claims.

Plaintiff Oscar Grant, Jr., posits that he, as a parent of Oscar Grant III, has standing to bring this action as a personal representative of his deceased son and of the ESTATE under Cal. Prob. Code §8402 and on his own behalf, in any proceeding in which he can assert the rights and interests that would have accrued to his son had he been alive. California's survivor statute as set forth in Cal. Code Civ.Proc. §377.10 *et seq.*, provides that a cause of action that survives the death of a person entitled to commence an action may be commenced by, among others listed, the decedent's personal representative, when the person died intestate, as is the case here.

According to the provisions of §§§6401, 6402 and 8402 of California Probate Code, Plaintiff Oscar J. Grant, Jr., qualifies as a successor in interest to decedent, Oscar J. Grant, III, and can serve as a personal representative to represent and assert the rights and claims of his deceased son, Oscar J. Grant, III in any action in which he could have asserted those claims and rights had he lived to do so himself.

§377.32 of the Cal. Code Civ.Proc., provides that a person eligible to serve as a personal representative must file with the court where the action is pending, an affidavit or declaration setting forth all the required information. Plaintiff, Oscar J. Grant, Jr., is filing along with this motion, a declaration required by §377.32, a true and correct copy of which is attache3d hereto and made a part hereof.]

Plaintiff, Oscar J. Grant, Jr., was not informed by her, his attorney or any of the other plaintiffs, that Wanda Johnson, Oscar Grant III's mother, had nominated herself as the personal representative. His former attorney, Panos Lagos did not advise him of this fact and that he could also file an affidavit to serve as a personal representative, jointly with her or severally by himself or that he could assert and prosecute claims and rights of his deceased son.

Since Wanda Johnson settled all claims on behalf of herself and the Estate of their deceased don, he does not know what claims were settled and what were not. He was not consulted or informed of the settlement, he was not asked to be present, he was not present and he had no part in any of the negotiations. His former attorney did not inform him of these negotiations and did not discuss any of them with him. As soon as he found out that Wanda Johnson had settled all claims without him, he discharged his former attorney and instructed his present attorney to take all necessary steps to protect his rights and interests. Oscar Grant, Jr., requests that the court recognize and approve him as a personal representative of the Estate of Oscar J. Grant, III.

### C. Defendants Have Waived The Application of the "The Single Action And One Verdict Rule"

Even though Cal. Civ. Proc. Code §377.60 does not explicitly require a single action or single verdict rule, courts have held that an heir omitted from a wrongful death action generally cannot bring a subsequent action for wrongful death. The rationale for the rule being that the defendant cannot be subjected to a second recovery by another heir "of whose existence the defendant had no knowledge at the time of the initial wrongful death action". _Smith v. Premier Alliance Ins.Co.,_ (1995) 41 Cal.app.4th 691, 698; _Salmon v. Rathjens_ (1907) 152 Cal. 290, 294-295. However, if the defendant had knowledge of the omitted heir, but did not attempt to abate the action or join the heir, the defendant waives the right to a single wrongful death action and

may be subjected to a second wrongful death action by the omitted heir, even after settlement of the original action. *Smith v. Premier Alliance Ins. Co., supra*; Valdez v.1 Smith (1985) 166 Cal.App. 3d 723, 731.

A wrongful death settlement does not terminate a subsequent action by an omitted heir if the settlement includes less than all of the named heirs. By settling with less than all of the known heirs, the defendant waives the right to face only a single wrongful death action and the non-settling heirs may continue to pursue the action against the defendant. *Stiles v. Estate of Ryan* (1985) 173 Cal.App.3d 1057, 1063-1064.

In this case, Plaintiff Oscar Grant Jr., was a separate party plaintiff but was not joined as an heir along with the settling plaintiffs either in pursuing the wrongful death and the survivor causes of action or in any settlement negotiation or in the final settlement of all claims. He was not invited to or notified to join in their action. He was not served a summons and complaint nor was he designated as a nominal plaintiff, as required. His former attorney did not adequately or competently represent his interests, and perhaps acted in collusion and conspiracy with the settling plaintiffs and their attorney of record, and the defendants, and each of them, and their respective attorneys of record, to keep Plaintiff GRANT from sharing in the settlement proceeds. Even if Plaintiff GRANT knew of the wrongful death proceeding and had actual or constructive knowledge, that is legally insufficient to accomplish a joinder. Unless he was served with a summons and complaint, the court has no jurisdiction over GRANT in the settling plaintiffs' settlement and approval by the court. See *Ruttenberg v. Ruttenberg* (1997) 53 Cal.App.4th 801.

There is nothing in the record of this case to indicate that the defendants, any of them, made a timely objection to the omission of Oscar Grant Jr., as an heir in the final settlement and distribution by the court, or had the action abated or join Oscar Grant Jr., as a party plaintiff or

nominal defendant in the action. By failing to act, they tacitly and knowingly agreed to his omission in the settlement negotiations and final apportionment of the settlement proceeds.

The defendants, and each of them, are now estopped from invoking or asserting application of the single action rule to bar Plaintiff GRANT from amending his claim to assert his rights under the wrongful death statute.

### D. Violation of Civil Rights Pursuant to 42 U.S.C. §1983 & Cal. Civ. Code §51.7 and 52.1

### (Use Of Excessive Force)

In his amended complaint, Plaintiff, as personal representative of the ESTATE, alleges, *inter alia*, violations of his son's civil rights pursuant to 42. U.S.C. §1983 & Cal. Civ. Code §51.7 and 52.1, and his own civil rights and Fourteenth Amendment rights by BART police officers, Mehserle, Pirone and Domenici and by BART and Chief Gee.

In §1983 actions, the survivors of an individual killed as the result of an officer's use of excessive force may assert a Fourth Amendment claim on that individual's behalf if the relevant state law authorizes a survival action. The plaintiff bears the burden of establishing that he/she meets the state's requirements for bringing a survival action. *Hayes v. County of San Diego*, (Dec. 2013) 9th Cir. No. 09-55644, citing *Moreland v. Las Vega Metro Police Dept.* 159 F.3d 365, 369 (9th Cir. 1998).

In a preceding section, Plaintiff Oscar Grant, Jr., has shown that California Survivor Statute Cal. Code Civ. Proc. §§ 377.10, 377.30, 377.32 do provide for survivor actions and that he qualifies as the decedent's personal representative. These provisions also grant to him the right to recover damages on behalf of his son for injuries the decedent had sustained. *Hayes v. County of San Diego, supra.*

The gravamen of this amended complaint is the use of excessive force by BART police officers, condoned or ratified by BART and its Police Chief Gee, which was escalated, and got out of control, leading to the unlawful arrest, assault, battery and shooting death of Oscar Grant, III. All the other causes of action pleaded in this amended complaint - unlawful stop, detention, warrantless arrest, assault, battery, wrongful death, are separate manifestations of the same fundamental problem – the use of excessive force by BART police officers without cause or provocation.

The general rule is that any force is excessive if it is unreasonable under the circumstances. The concept of excessive force in California covers a range of harmful acts and conduct perpetrated by law enforcement officers. Excessive force is exemplified by police beating up suspects without reason, use of weapons like tasers, night sticks, pepper spray, or setting police dogs to attack suspects when less drastic measures would be sufficient to control the situation.

To determine if police officer has used excessive force, the case should be evaluated using the balancing test enunciated by the U.S. supreme Court in the seminal case *Graham v. Connor* (1989) 490 U.S. 386. The balancing test consists of inquiring whether an objectively reasonable police officer would have felt necessary to use the level of force used considering the severity of crime at issue, the immediacy of threat posed by the suspect, and any attempt by the suspect to actively resist arrest or flee. If a court decides that this objectively reasonable police officer would not have used the level of force used, then the court must decide that excessive force was used.

The Ninth Circuit Court of Appeals in *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012) using the balancing test of *Graham v. Connor, supra*, concluded that:

"Under the factual circumstances present in this case, a reasonable officer would have been on notice that both the firing of a projectile that risked causing serious harm, in the direction of non-threatening individuals who had committed at most minor misdemeanors, and the release of pepper spray in an area occupied by those individuals, would constitute unreasonable force in violation of the Fourth Amendment."

In the present case, given the facts and circumstances of this case – the lack of any verifiable criminal activity or the alleged perpetrators thereof, without probable cause or warrant, detaining several passengers on the platform, including OSCAR, assaulting and battering them, verbally and physically abusing them and culminating in the shooting death of OSCAR, an unarmed, defenseless man, prone on the ground with his hands behind his back, posing no threat of bodily harm to anyone – a reasonable officer would consider it an unreasonable force and excessive.

Had he lived, Oscar Grant III would have causes of action against the defendants and each of them, for assault and battery under Cal. Pen. Code §§240, 242 for false arrest, unlawful, unwarranted seizure of his person, personal injuries as a result of the assault and battery as alleged in the amended complaint and other civil rights violations under §1983 and Cal. Civ. Code §§51.7 and 52.1 and his Fourth, Fifth and fourteenth amendments. As a direct and proximate result of these unlawful acts by BART police officers, Mehserle, Pirone and Domenici, decedent Oscar J. Grant III, suffered physical and mental anguish and damages.

Plaintiff GRANT, as a personal representative of the ESTATE is entitled to relief that would have accrued to his deceased son.

As a personal representative of the Estate of Oscar J. Grant, III, Plaintiff, Oscar Grant, Jr., can assert a cause of action for assault and battery on his son against BART Police Officers, Mehserle, Pirone and Domenici, BART and Chief Gee, as promulgating policies, customs and

practices which either condone or ratify unreasonable and unlawful acts and actions by BART police.

A cause of action that survives the death of the person entitled to commence an action if he had survived, passes on to the decedent's personal representative. Cal. Code Civ. Proc. §377.30

The Ninth Circuit Court of Appeals, in its decision in *Johnson et al., v. BART et al.,* (2014) while denying immunity to Mehserle on Plaintiff Oscar Grant, Jr's Fourteenth Amendment claim on grounds other than deprivation of familial companionship, directed that the District Court, on remand should determine if he can assert his Fourteenth Amendment claim on other grounds under California's survival statutes. Plaintiff, Oscar Grant Jr., has indeed asserted such a claim of the violation of his Fourth, Fifth and Fourteenth Amendment rights and relief under 42 U.S.C. §1983 and under Cal. Code civ. Proc. §§377.60 et seq., (wrongful death statute) and 377.10 et seq., (survival statute) as he has a Fourteenth Amendment right to the companionship of his son, regardless of his age, under 42 U.S.C. §1983, which defendant Mehserle, a BART Police Officer, violated by acting with a purpose to harm his son that is unrelated to the officer's legitimate law enforcement objectives. Mehserle's request for qualified immunity from this action was denied by the trial court and affirmed by the 9th Circuit Court of appeals.

## IV. CONCLUSION

For the foregoing reasons, based on the same facts, and the authorities cited, this Court should grant Plaintiff Oscar Grant, Jr., leave to file his amended complaint, to assert his rights and interests under applicable statutes and constitutional guarantees as set forth in his causes of action as alleged in the Amended Complaint.

Respectfully submitted,
Law Offices of Waukeen Q. McCoy

_____
Waukeen Q. McCoy