United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WANDA JOHNSON, *et al.*, | No. C-09-0901 EMC |
| Plaintiffs, | **CONSOLIDATED CASES** |
| v. | C-09-4014 EMC (Grant) |
| BAY AREA RAPID TRANSIT DISTRICT, *et al.*, | C-09-4835 EMC (Bryson, *et al.*) C-10-0005 EMC (Caldwell) |
| Defendants. _____/ AND RELATED ACTIONS. _____/ | **ORDER (1) DISMISSING JOHNTUE CALDWELL'S STATE LAW CLAIMS; (2) DISMISSING JOHNTUE CALDWELL'S CLAIM AGAINST DEFENDANT PIRONE; AND (3) DISMISSING OSCAR GRANT JR.'S CLAIM AGAINST DEFENDANT GEE** |

## I. INTRODUCTION

In the joint pre-trial conference statement in this action, Defendants requested dismissal of certain claims raised by the Plaintiffs. Specifically, Defendant Pirone requested dismissal from the *Caldwell v. Bay Area Rapid Transit Dist.,* No. C10-0005, on the ground that he had "no verbal or physical contact with CALDWELL, and therefore, cannot be subject to any liability." Docket No. 344, at 24. Further, in reviewing the parties' various pre-trial filings, it was unclear to the Court how Plaintiff Oscar Grant, Jr. intended to establish Defendant Gary Gee's – the former Chief of Police of BART – liability, both legally and factually, on his Fourteenth Amendment claims. Accordingly, the Court issued two orders to show cause – one ordering Plaintiff Johntue Caldwell to show cause why his claims against Defendant Pirone should not be dismissed and the other ordering Plaintiff Oscar Grant, Jr. to show cause why his claim against Defendant Gee should not be

1 dismissed. Both orders to show cause instructed the Plaintiffs to provide "citation to both legal
2 authorities and *specific* factual evidence" in support of their theory of liability. Docket No. 436;
3 Docket No. 439.

4 In addition, Defendant Domenici has requested that Caldwell's state law claims be dismissed
5 in their entirety for failing to comply with the California Tort Claims Act claim presentment
6 requirements. This request was raised for the first time on the day of the final pretrial conference.
7 At the pretrial conference, Caldwell's attorney stated that she had been unable to locate evidence
8 that Caldwell's prior counsel had filed a claim and Defendants' counsel stated that BART's search
9 of its records revealed none. The Court requested supplemental cross briefing on this question.
10 Defendants have filed a supplemental brief and have also submitted the Declaration of Terri Hodges,
11 BART's Liability Claims Manager. Docket No. 457, 458. Ms. Hodges states that after a diligent
12 search of "all claims filed arising from the death of Oscar Grant, III on January 1, 2009," she found
13 "no tort claim of any kind filed by Johntue Caldwell, or on his behalf, or on behalf of his estate, in
14 the business records of the district." Docket No. 458, at 2. As of this date, Caldwell has not filed a
15 brief on this question.

16 For the following reasons, the Court **GRANTS** Domenici's request to have Caldwell's state
17 law claims dismissed for failure to comply with the CTCA. Further, because the Court finds there is
18 no genuine dispute of material fact as to (1) whether Defendant Pirone is liable for Caldwell's
19 Fourth Amendment claim or (2) whether Defendant Gee is liable for Grant Jr.'s Fourteenth
20 Amendment claim, these claims will be **DISMISSED**.

21 **II. DISCUSSION**

22 A. Caldwell's State Law Claims Must Be Dismissed for Failure to Comply with the CTCA

23 The California Tort Claims Act ("CTCA") provides, in relevant part, that "a cause of action
24 against a public employee or former public employee for injury resulting from an act or omission in
25 the scope of his employment as a public employee is barred if an action against the employing
26 public entity for such injury" is barred by the CTCA. Cal. Gov. Code § 950.2. As a result,
27 "[b]efore a person can sue a public entity or public employee for money damages for actions taken
28 within the scope of the person's employment, he or she must first file a government claim."

2

*Robinson v. Alameda County*, 875 F. Supp.2 d 1029, 1043 (N.D. Cal. 2012); *see also Briggs v. Lawrence*, 230 Cal. App. 3d 605, 612-13 (1991) ("[T]he Legislature included in the Tort Claims Act what amounts to a requirement that . . . one who sues a public employee on the basis of acts or omissions in the scope of the defendant's employment have filed a claim against the *public-entity employer* pursuant to the procedure for claims against public entities."). Claims under the CTCA must be filed within six months of the accrual of the cause of action. *See A.C. by and through Calhoun v. City of Santa Clara*, No. C13-3276 EMC, 2014 WL 1678004, at *2 (N.D. Cal. Apr. 28, 2014). The claim filing requirement "must be satisfied even in the face of the public entity's actual knowledge of the circumstances surrounding the claim." *City of Stockton v. Superior Court*, 42 Cal. 4th 730, 738 (2007).

All of the claims against the individual Defendants in this action arise out of actions or omissions they took within the scope of their employment as BART police officers. Accordingly, the notice requirement of the CTCA applies. Caldwell does not appear to dispute that a claim was not filed as required under the CTCA. First, the complaint contains no allegations regarding compliance with the notice requirement. Second, Caldwell's counsel stated at the pre-trial conference that she had reviewed the file and could not find any evidence of a claim having been filed. She did state, however, her belief that the claims against the individual defendants did not fit within the CTCA claim requirements – an erroneous belief in light of the above. Finally, Ms. Hodge's declaration states that no record of a claim being filed has been located in BART's records.

Further, although Defendant Domenici has waited until the eve of trial to argue that Caldwell's failure to comply with the CTCA requires dismissal,[1] the CTCA's claim-filing requirements are not subject to waiver. "Timely claim presentation is not merely a procedural requirement, but is . . . 'a condition precedent to plaintiff's maintaining an action against defendant.'" *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (2007) (quoting *Williams v. Horvath*, 16 Cal. 3d 834, 838 (1976)); *see also City of Rialto v. U.S. Dep't of Defense*, No. EDCV 04-00079-VAP(SGLx), 2004 WL 6067430, at *9 (C.D. Cal. July 12, 2004) ("Timely notice is a

---

[1] Defendant Domenici's answer did raise failure to comply with the CTCA as her twenty-second affirmative defense. *See* Docket No. 20, at 18.

jurisdictional prerequisite to filing a tort action for damages against a public entity in California."). Thus, in *Nguyen v. Los Angeles County Harbor*, 8 Cal. App. 4th 729 (1992), the appellate court affirmed the dismissal of plaintiffs' claims based on their failure to file a claim as required even where the defendants raised the issue in a motion for nonsuit during trial, at the close of plaintiffs' case. *Id.* at 732-734.

Accordingly, because Caldwell has failed to allege or demonstrate that he filed a timely claim as required under the CTCA, his state law claims for assault and battery and for violation of Cal. Civ. Code § 52.1 are **DISMISSED**.

B.  <u>Defendants Gee and Pirone Are Entitled to Summary Judgment as to Grant Jr.'s and Caldwell's Claims</u>

In the pre-trial conference statement, Defendant Pirone asserted that he was entitled to dismissal from Caldwell's complaint as he had "no verbal or physical contact with CALDWELL, and therefore, cannot be subject to any liability." Docket No. 344, at 24.  Further, Plaintiff Oscar Grant Jr.'s pre-trial filings were unclear as to whether Plaintiff intended to state a claim against Defendant Gee and, if so, on what legal theory he intended to rely.[2]  Accordingly, it appeared that there may not be a factual basis for including Defendant Gee in Grant Jr.'s case.

Concerned with the risk of juror confusion if claims without a proper legal or factual basis were presented to the jury in this case, the Court issued orders to show cause why these Defendants should not be dismissed from the case.

1.  <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 56(f)(3), a court may, after "notice and reasonable time to respond, "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3).  Under this provision, "[d]istrict courts unquestionably possess the power to enter summary judgment sua sponte, even on the eve of trial." *Norse v. City of Santa Cruz*, 629 F.3d 966, 971 (9th Cir. 2010) (en banc).  Before granting summary judgment *sua sponte*, the Court must give the losing party "'reasonable notice

---

[2] For example, Grant Jr.'s trial brief does not even reference Defendant Gee.  *See* Docket No. 379.

4

that the sufficiency of his or her claim will be in issue.'" *Id.* at 972 (quoting *United States v. 14.02 Acres of Land More or Less in Fresno Cnty*, 547 F.3d 943, 955 (9th Cir. 2008)). "Reasonable notice," in turn, "'implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment.'" *Id.* (quoting *Portsmouth Square, Inc. v. S'holders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985)).

Here, the Court finds that it provided the party reasonable notice and time to respond. First, the order to show causes notified the parties that the legal and factual sufficiency of their claims were at issue and instructed them to support their claims with "citation to both legal authorities and *specific* factual evidence." Docket No. 436, 439. Second, the orders to show cause issued after the parties had prepared the pre-trial filings – a time by which the parties should have the evidence upon which they intend to rely at trial marshaled and ready to present. Third, neither Plaintiffs' response to the Court's order to show cause stated that there was evidence or testimony that they did not have or needed to develop at trial in order to support their claim against Gee (Grant, Jr.) or Pirone (Caldwell). *Compare Norse*, 629 F.3d at 971 ("Norse told the district court that he wanted to call attendees of the Council meetings as witnesses to testify about whether Norse actually disrupted them. . . . He explained that he had not been able to prepare deposition testimony or otherwise create a record in time for the hearing but was prepared to call witnesses at trial concerning these issues."). Further, Grant Jr.'s claim against Defendant Gee and Caldwell's claim against Defendant Pirone are both tangential to, and derivative of, Grant Jr.'s and Caldwell's claims against Defendant Mehserle and Domenici, respectively and raise very discrete questions. The Court's order to show cause is not directed at the central questions to either Plaintiffs' case. Finally, the factual questions informing Gee and Pirone's liability are focused, discrete, and confined. In light of these circumstances, the Court finds that the parties had ample time to respond to the order to show cause; they had "reasonable notice and time to respond."[3]

---

[3] In *Predator International, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-cv-00980-PAB-KMT, 2013 WL 1129404 (D. Colo. Mar. 17, 2013), the district court likewise gave the parties six days to respond to an order as to why a claim should not be dismissed. In response to an objection by a party, the Court noted: "At no point did Predator ask for more time to file a response, Furthermore, given that, at the time of the Court's June 5, 2012 order, the trial was approximately a month and a half away, the claim that Predator needed more time to marshal its evidence rings hollow. Thus, the

1    Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252, 106 S.Ct. 2505. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

### 2. There is No Genuine Dispute of Material Fact Regarding Whether Pirone Violated Caldwell's Fourth Amendment Rights

Caldwell argues that is claim against Pirone is viable because Pirone was an "integral participant" in the alleged constitutional violation. Specifically, he contends that Pirone "clearly set into motion the series of acts by Domenici and the other officers on the platform that morning, and a reasonable jury could conclude that Pirone knew or should have known the events that he set in motion would cause others to inflict constitutional injuries such as an unlawful seizure and detention of Caldwell." Docket No. 470, at 4. The Court disagrees.

The "integral participant" doctrine, "extends liability to those actors who were integral participants in the constitutional violation, even if they did not directly engage in the unconstitutional conduct themselves." *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009). This requires "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007). While a defendant's involvement need not rise to the level of a constitutional violation, a defendant's "mere presence" on the scene or his membership in the "group" or "team" that collectively caused the violation is insufficient to find fundamental involvement. *See Boyd v. Benton County*, 374 F.3d 773, 780 (9th

---

Court provided Predator a reasonable time to respond." *Id.* at *3 n.3.

United States District Court
For the Northern District of California

Cir. 2004); *Jones v. Williams*, 297 F.3d 930, 939 (9th Cir. 2002). This Court has previously reviewed in detail the Ninth Circuit authority on the "integral participant" doctrine. *See Johnson v. Bay Area Rapid Transit Dist.*, C09-0901 EMC, 2013 WL 6155266, at *3-4 (N.D. Cal. Nov. 22, 2013). Ultimately, the Court concluded that these cases "combine for the proposition that defendants are 'fundamentally involved in the alleged violation when they provide some affirmative physical support at the scene of the alleged violation and when they are aware of the plan to commit the alleged violation or have reason to know of such a plan, but do not object." *Id.* at *5 (quoting *Monteilh v. County of Los Angeles*, 820 F. Supp. 2d 1081, 1089 (C.D. Cal. 2011)).

Caldwell does not dispute that Pirone had no direct involvement with Caldwell. Nonetheless, he asserts that the following facts demonstrate his "integral participation" in the unlawful seizure and detention:

- There is a genuine dispute of material fact as to whether there was reasonable suspicion to initially detain the Brysons and Reyes. Docket No. 470, at 5.

- Pirone instructed Domenici to guard the Brysons and Reyes while he went and removed Oscar Grant, III and Michael Greer from the train. *Id.*

- At no point did Pirone inform Domenici of any facts that would support a detention of these individuals. *Id.*

- Pirone uses force in removing Greer from the train (throwing him against a wall, pulling him down by his hair) causing train passengers to object and yell such things as "police brutality" and "what the hell are you doing." *Id.*

- Pirone continues to roughly handcuff Greer causing the other detainees to begin objecting. Pirone responds by kicking and punching Grant III. *Id.* This causes the train passengers to become "more agitated and more vocal" including Caldwell. *Id.*

- Pirone goes to investigate the alleged fight which brought the BART police onto the platform and instructs Domenici to continue guarding the detainees. *Id.* At this time, train passengers continue to yell because of Pirone's unlawful actions. *Id.*

- Upon returning, Pirone orders Grant III and Greer arrested without giving any information supporting an arrest. *Id.* The officers comply with this order "including Domenici who continued to act as a cover officer at his direction." *Id.* Domenici thus "assists in [the] illegal arrests by standing

> guard, despite the fact that Pirone had not informed her of the results of his 'investigation.'" *Id.* at 7-8.

In summary, *Caldwell* argues that because the unlawful seizure and detention of Caldwell was Domenici's actions as a "cover officer," and because her role as "cover officer" was set in motion by Pirone's illegal actions with regards to Grant III and the other detainees, Pirone's involvement in Caldwell's unlawful detention could not be "more fundamental." *Id.* at 9.

Caldwell's argument fails. First, there is no evidence that Pirone knew of Domenici's plan to illegally detain Caldwell and his group and failed to prevent it. The undisputed facts show that Caldwell was not part of the group (which included Grant and Greer) that was initially detained and subjected to allegedly unlawful force by Pirone. Rather, Caldwell came off the BART train to observe what was happening and was a distance away from the group of detainees. While Domenici initially stood guard over the group of detainees (not Caldwell) at Pirone's direction, when Pirone returned from speaking with the train operator and ordered Oscar Grant, III arrested, Domenici stepped away to ensure that Caldwell (and perhaps others) did not enter the detention area. Similarly, at the relevant periods in time, the videos demonstrate Pirone was focused on either assisting in the arrest of Grant or responding to the shooting. Finally, Caldwell does not point to any instance of Pirone speaking to or interacting with Caldwell. Thus, there is nothing to suggest that Pirone directed, or even had knowledge of, the subsequent unlawful acts she allegedly took against Caldwell.

Second, Caldwell's "set in motion" theory, premised as it is on Pirone reasonably anticipating that Domenici would unlawfully detain Caldwell after leaving the Grant/Greer group is far too attenuated. While it is perhaps foreseeable that a crowd would vocally and loudly object to an abuse of police power occurring in front of them, Pirone had reason to know or expect that Domenici would then unlawfully detain Caldwell without reasonable suspicion. The record is wholly devoid of any factual finding any proximate causation between Domenici's and Pirone's alleged actions. It is black-letter law that "but for" causation is insufficient for purposes of § 1983 liability. *See, e.g.*, *Harper v. City of Los Angeles*, 533 F.3d 1010 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of

the claimed injury. To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." (citation omitted)).

Third, Caldwell has not explained how Pirone provided any "affirmative physical support" for the detention. *See Monteilh*, 820 F. Supp. 2d at 1089.

The simple fact that Pirone's conduct may have been a remote "but for" cause of a chain of events which eventually ended in Caldwell's unlawful detention by Domenici does not render Pirone an "integral participant" in the unlawful detention. Courts have declined to find integral participation in similar circumstances where an officer arguably "contributed" to the events giving rise to the violation but did not affirmatively provide support to the challenged conduct or have knowledge of the conduct. Thus, in *Torres v. City of Los Angeles*, 548 F.3d 1197 (9th Cir. 2008), the Ninth Circuit found that a detective was not an "integral participant" in the plaintiff's unlawful arrest even though she had participated in the investigation and provided information to the arresting detectives because it was "undisputed that Detective Hickman was not present when Torres was arrested, and there is no evidence that Detective Hickman instructed the other detectives to arrest [plaintiff] or that any of those detectives consulted with her before making the arrest." *Id.* at 1206; *see also Brown v. City & County of San Francisco*, No. C11-02162 LB, 2014 WL 1364931 (N.D. Cal. Apr. 7, 2014) (finding that an officer's participation in an initial struggle with the plaintiff did not make him an integral participation in the subsequent excessive force because he "did not direct the other deputies" and there was no evidence "that he had prior awareness of a decision to use excessive force" on the plaintiff).

For the foregoing reasons, the Court finds there is no genuine dispute of material fact as to whether Pirone was an "integral participant" in the alleged unlawful detention of Plaintiff Caldwell by Domenici. Accordingly, Caldwell's claim against Pirone is **DISMISSED**.

3.   Grant Jr.'s Supervisory Liability Claim Against Defendant Gee Fails

Plaintiff Oscar Grant, Jr. asserts that Defendant Gee is liable under his Fourteenth Amendment Claim under a supervisory liability theory. Docket No. 467. "In a section 1983, claim, 'a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them.'" *Corales v.*

*Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (quoting *Preschooler II v. Clark County Sch. Bd. of Trustees*, 479 F. 3d 1175, 1183 (9th Cir. 2007)). "'The requisite causal connection may be established when an official sets in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional harms.'" *Id.* (quoting *Preschooler II*, 479 F.3d at 1183).

      Grant Jr.'s claim is that Defendant Gee failed to take any action or provide any direction when he heard radio traffic involving the developing incident at Fruitvale Station and other officers began to leave headquarters and head to the scene. Docket No. 467, at 3. Specifically, he claims that Defendant Gee should have been more focused on the radio transmissions at BART headquarters when the situation began to develop. *Id.* He asserts that had Defendant Gee done so, he would have heard that dispatch reported the alleged fight which precipitated the police response did not involve weapons, and thus could have "direct[ed] his subordinate officers to proceed accordingly." Docket No. 467, at 3.

      Grant Jr.'s argument fails for the simple reason that they have not pointed to a single fact showing that Defendant Gee participated in, directed, or was aware of the risk of the shooting and failed to act to prevent it. Further, he has pointed to no facts from which a fact finder could reasonably conclude that Defendant Gee knew, or should have known, that his failure to direct his subordinates at Fruitvale Station would result in a constitutional violation, let alone the shooting of Grant III. Accordingly, Grant Jr.'s claim against Defendant Gee is **DISMISSED**.

///
///
///
///
///
///
///
///
///

### III.   CONCLUSION

For the foregoing reasons, Caldwell's state law claims are **DISMISSED** for failure to comply with the CTCA.  Further, Caldwell's remaining Fourth Amendment claim against Pirone is **DISMISSED**, with prejudice.  Finally, Grant Jr's claim against Defendant Gee is **DISMISSED**, with prejudice.

IT IS SO ORDERED

Dated:  June 5, 2014

_____
EDWARD M. CHEN
United States District Judge